**UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION**

-------------------------------------------------------------------- x
LAURA LOOMER,                          :
                          *Plaintiff*,     :
                                       :     Case No.: 5:24-cv-00625-JSM-PRL
          - against -                  :
                                       :
BILL MAHER and HOME BOX OFFICE,        :
INC.,                                  :
                                       :
                          *Defendants*.    :
-------------------------------------------------------------------- x

<u>**DEFENDANTS BILL MAHER AND HOME BOX OFFICE, INC.'S
MOTIONS TO DISMISS AND MEMORANDUM OF LAW
IN SUPPORT THEREOF**</u>

Defendant Bill Maher moves to dismiss Plaintiff Laura Loomer's Complaint ("Compl.") for improper service of process pursuant to FRCP 12(b)(5), or, in the alternative, for failure to state a claim pursuant to FRCP 12(b)(6), and Defendant Home Box Office, Inc. ("HBO") moves to dismiss with prejudice for failure to state a claim pursuant to FRCP 12(b)(6).

<u>**INTRODUCTION**</u>

A comedian hosting a late-night talk show offers jokey speculation about who President-Elect Donald Trump "may" be sleeping with, based on widespread reporting about a woman traveling with him on his private jet. The studio audience laughs. But Plaintiff Laura Loomer, it seems, can't take a joke.

Ms. Loomer alleges that Bill Maher's bit during his September 13, 2024 show about how "we *may* have our answer" to the question of who Trump is

sleeping with and that he "*think*[s] it *might* be Laura Loomer" (the "Challenged Statement" or the "Statement"), Compl. ¶ 32, is "a statement of objectively verifiable fact" that HBO and Mr. Maher knew was false. On this basis, Ms. Loomer asserts claims of defamation per se, defamation per quod, and defamation by implication against HBO and Mr. Maher, host of the program *Real Time with Bill Maher*, and seeks damages "in excess of 150 Million U.S. Dollars." Compl. at 17. Ms. Loomer has failed, however, to properly serve Mr. Maher, and her claims against him must be dismissed.

Ms. Loomer's claims against HBO also warrant dismissal. First, the Challenged Statement is not an actionable statement of fact. The words complained of make clear that Mr. Maher is merely offering conjecture or speculation: he describes what "might" or "may" be, not what "is," and twice uses the phrase "I think," underscoring that he does not purport to be reporting a fact. That alone dooms Ms. Loomer's claim. In addition, the context in which the Statement was made—the banter of a late-night talk show hosted by a comedian, punctuated by audience laughter—belies the notion that a reasonable viewer would understand Mr. Maher to have been making an objectively verifiable statement of fact. The tone of the Statement, with the use of slang and swearing, is also emblematic of rhetorical hyperbole. And to the extent the Statement implies any facts, those facts were disclosed on the show and widely publicized elsewhere. Mr. Maher's Statement is therefore non-actionable pure opinion.

Second, Ms. Loomer, a public figure, has not plausibly alleged actual

malice. Ms. Loomer must, but has failed to, allege that Defendants knew the Challenged Statement was false or had a high degree of awareness of its probable falsity. But, in light of Ms. Loomer's own statements about her affection for Trump, repeated appearances the two made together in the days leading up to the September 13, 2024 episode, and rumors about their relationship, Mr. Maher had ample reason to believe they "may" be sleeping together.

Third, Ms. Loomer's defamation by implication claim fails because she does not allege as she was required to do any "literally true" statement.

Finally, Ms. Loomer fails to plead any actual pecuniary loss, as required to state a defamation per quod claim.

Ms. Loomer's effort to punish constitutionally protected speech should be rejected, and attorney's fees and costs imposed.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    The Parties

Comedian and political satirist Bill Maher is the host of *Real Time with Bill Maher*, a weekly hour-long television program that airs on HBO. *See* Compl. ¶ 4. Laura Loomer is prominent "conservative," "Republican" "activist" who owns a media company, Illoominate Media, and who ran unsuccessfully for Congress in 2022 to represent Florida's 11th District. *Id.* ¶¶ 13, 15–16.

### II.    The Challenged Statement

During Mr. Maher's opening monologue in the September 13, 2024 episode of *Real Time*, he introduced Trump's relationship to Ms. Loomer, saying "he's

with her everywhere now" and showing a picture of Ms. Loomer standing next to Trump, her arm on his shoulder, both giving a thumb's up sign. *See* Exhibit 1 at 5:02.[1] Later in the episode, Mr. Maher discusses Ms. Loomer with the guests on his show, comedian and former Democratic Senator Al Franken and Republican commentator Kristen Soltis Anderson. Senator Franken noted that Trump "brought her to a 9/11 remembrance." *Id.* at 40:38. Mr. Maher went on to read a quote from Laura Loomer stating that she believed Taylor Swift "is in an arranged relationship with Travis Kelce to influence the 2024 election," and joked: "I think maybe Laura Loomer is in an arranged relationship to affect the election because she's very close to Trump, she's 31, looks like his type." *Id.* The studio audience roared with laughter. *Id.* at 41:40–42:05. Mr. Maher continued: "We did an editorial here a few years ago. . . . It was basically 'who's Trump f***ing?' Because I said, you know, it's not nobody. He's been a dog for too long. And it's not Melania. I think we may have our answer this week. I think it might be Laura Loomer. I'm just saying." *Id.* at 42:05–42:30. The studio audience laughed throughout the bit.

### III.    The Complaint

On October 21, 2024, Ms. Loomer filed this action in the Circuit Court of

---

[1] The September 13, 2024 and September 20, 2024 episodes of *Real Time with Bill Maher*, each discussed extensively in the complaint, are incorporated by reference and have been submitted via USB as Exhibit 1 to this motion. *See, e.g.*, *Swinford v. Santos*, -- F.4th --, 2024 WL 4661097, at *5 (11th Cir. Nov, 4, 2024) (video footage central to the plaintiff's claim incorporated by reference and "properly considered" by the district court ruling on a motion to dismiss).

the Fifth Judicial Circuit in and for Sumter County, Florida through counsel Larry Klayman. The complaint asserts claims of defamation per se, defamation per quod, and defamation by implication against both Mr. Maher and HBO, arising out of the September 13, 2024 episode of "Real Time."

On October 28, 2024, HBO was served with the summons and complaint in this action. Mr. Maher has not yet been properly served. On November 18, 2024, HBO timely removed this action to federal court based on diversity jurisdiction. *See* 28 U.S.C. § 1446(b)(1).

## <u>ARGUMENT</u>

As a threshold matter, Ms. Loomer has failed to properly serve one of the Defendants. Although she purported to serve Mr. Maher via The Corporation Trust Company ("CT Corp."), Mr. Maher never designated CT Corp. as his agent for service, nor could he, since CT Corp. is not an authorized agent for service of process for *any* individuals. *See* Exhibit 2 (Declaration of Defendant Bill Maher). For that reason alone, then, the claims against Mr. Maher should be dismissed.

Ms. Loomer's claims against HBO should all be dismissed for failure to state a claim. To survive a motion to dismiss for failure to state a claim, a complaint must allege facts sufficient to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Plaintiff fails to plausibly allege the existence of any actionable statement of fact, much less one that was knowingly false or uttered with reckless disregard for the truth. Both federal and state courts in Florida routinely dismiss meritless defamation cases at the

pleading stage, recognizing the chilling effect of allowing such claims to proceed. *See, e.g.*, *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016); *Karp v. Miami Herald Publ'g Co.*, 359 So.2d 580, 581 (Fla. 3d DCA 1978). This Court should not hesitate to do the same here.

## I.    Plaintiff Did Not Properly Serve Defendant Bill Maher

Ms. Loomer's claims against Bill Maher warrant dismissal on the basis of improper service. "Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served." *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990). Florida law governs the sufficiency of service of process prior to removal. *See Hines v. Regions Bank*, 782 F. App'x 853, 854 (11th Cir. 2019). Under Florida law, an individual may be served in person or by leaving copies of the complaint at his "usual place of abode with any person residing therein who is 15 years of age or older and informing the person of their contents." Fla. Stat. 48.031(1)(a).

On November 5, Plaintiff filed an affidavit of service purporting to reflect service on both HBO and Bill Maher through CT Corp. While CT Corp. is authorized to accept service on behalf of HBO, it is not authorized to accept service on behalf of Bill Maher; indeed, not only did Mr. Maher never designate CT Corp. as a registered agent for service of process, but CT Corp. is an authorized agent for service only for businesses, not for individuals. *See* Exhibit 2 ¶ 3. Mr. Maher has not been served using either of the two methods permitted under Florida law, *i.e.*, personally or with copies at his "usual place of abode" in

California. *Id*. ¶ 4. The claims against Mr. Maher should therefore be dismissed for insufficient service of process under Rule 12(b)(5).[2]

## II.    Plaintiff Fails To Plead A Claim For Defamation

Ms. Loomer's claims fare no better on the merits. In Florida, a defamation claim has "five elements: (1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). Ms. Loomer's failure to plead an actionable false statement and actual malice each independently compel dismissal of all claims. In addition, Ms. Loomer's failure to allege a technically true statement compels dismissal of her defamation by implication claims, and her failure to allege special damages compels dismissal of her defamation per quod claim.

### a.  The Challenged Statement Is Not An Actionable Statement of Fact

Ms. Loomer fails to plead the most basic element of her claim—a false statement of fact. "A false statement of fact is the *sine qua non* for recovery in a defamation action." *Byrd v. Hustler Magazine, Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983); *accord Keller v. Miami Herald Publ'g Co.*, 778 F.2d 711, 717 (11th Cir. 1985). The challenged statement "must convey to a reasonable reader [or viewer] the impression that it describes actual facts about the plaintiff." *Fortson v.*

---

[2] In the alternative, the claims against Mr. Maher should be dismissed for failure

*Colangelo*, 434 F. Supp. 2d 1369, 1379 (S.D. Fla. 2006) (citing *Ford v. Rowland,* 562 So.2d 731, 735 (Fla. 5th DCA 1990)).

In contrast to statements of fact, "statements of pure opinion are protected from defamation actions by the First Amendment," *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018), as are "[c]ommentary or opinion based on facts that are set forth in the [broadcast] or which are otherwise known or available to the [viewer]," *Rasmussen v. Collier Cnty. Pub. Co.*, 946 So.2d 567, 571 (Fla. 2d DCA 2006); *see also From v. Tallahassee Democrat, Inc.*, 400 So.2d 52, 57 (Fla. 1st DCA 1981) ("Pure opinion occurs when the defendant makes a comment or opinion based on facts which are set forth in the article or which are otherwise known or available to the reader or listener as a member of the public."). "[E]ven if the statements are defamatory by implication, a defendant is still protected from suit if his statements qualify as an opinion." *Turner*, 879 F.3d at 1269.

Whether a statement is one of fact or opinion is a question of law for the courts. *Id.* at 1262–63. In making that determination, "context is paramount":

> [T]he test to be applied in determining whether an allegedly defamatory statement constitutes an actionable statement of fact requires that the court examine the statement in its totality and the context in which it was uttered or published. The court must consider all the words used, not merely a particular phrase or sentence. In addition, the court must give weight to cautionary terms used by the person publishing the statement. Finally, the court must consider all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published.

*Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1379 (S.D. Fla. 2006) (quoting

---

to state a claim for the same reasons as the claims against HBO.

*From*, 400 So.2d at 57); *see also Horsley v. Rivera*, 292 F.3d 695, 702 (11th Cir. 2002) (courts "must consider the circumstances in which the statement was expressed"); *Reed v. Chamblee*, 2023 WL 6292578, at *9 (M.D. Fla. Sept. 27, 2023) (courts "must construe the statement in its totality, examining not merely a particular phrase or sentence, but all the words used in the publication") (quoting *Hay v. Indep. Newspapers, Inc.*, 450 So.2d 293, 295 (Fla. 2d DCA 1984)).

Ms. Loomer's claims fail out of the gate because she does not allege any statement that a reasonable viewer would understand to convey "actual facts about the plaintiff." *Fortson*, 434 F. Supp. 2d at 1379. To the contrary, the Challenged Statement is entirely "speculative in nature." *Akai Custom Guns, LLC v. KKM Precision, Inc.*, 707 F. Supp. 3d 1273, 1295 (S.D. Fla. Dec. 6, 2023). Where "the defendant's statements . . . are readily understood as conjecture, hypothesis, or speculation," the reader or viewer understands "that what is said is opinion, and not fact." *Levin v. McPhee*, 119 F.3d 189, 197 (2d Cir. 1997); *see also Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993) ("[I]f it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable."); *Marshall v. Planz*, 13 F. Supp. 2d 1246, 1257– 58 (M.D. Ala. 1998) ("speculation or conjecture . . . presents or implies no truly objectively verifiable facts that would infuse it with defamatory content"). Here, Mr. Maher discussed what "might be," not what "is." No

reasonable viewer would understand his joking conjecture that "*I think maybe Laura Loomer is in an arranged relationship*" with Trump, that "we *may* have our answer" to the question of "who's Trump f***ing?," and that "I *think*" the answer "*might* be Laura Loomer" to be a statement of fact about Laura Loomer. *E.g.*, Compl. ¶ 32 (emphases added). For that reason alone, Ms. Loomer's claim fails.

Of course, the context in which the Challenged Statement was made underscores to the viewer that it is opinion, not fact. Maher is a comedian and political satirist who hosts a late-night talk show. The very format of the show, therefore, makes it "even more likely that his [viewers] would expect his [show] to be laced with opinion." *Fortson*, 434 F. Supp. 2d at 1381 n.16; *see id.* ("Because the challenged statements were made through a medium that . . . routinely uses figurative or hyperbolic language, a reasonable reader is more likely to regard its content as opinion and/or rhetorical hyperbole."). Courts around the country have held statements made by comedians or satirists like Bill Maher to be protected opinion. *See Pierce v. Warner Bros. Entm't, Inc.*, 237 F. Supp. 3d 1375, 1380 (M.D. Ga. 2017) (noting that Ellen DeGeneres is "a comedian" and that "no person watching the Ellen DeGeneres show could reasonably have believed anything DeGeneres said to be stating actual facts"); *Lapine v. Seinfeld*, 31 Misc. 3d 736, 754 (Sup. Ct. N.Y. Cnty. 2011) (statements made by "well-known comedian" on "a late-night entertainment program" that were "repeatedly punctuated by laughter from the audience" were protected opinion); *Riley v. Moyed*, 529 A.2d 248, 252–53 (Del. 1987) (statements made by "well-known

professional provocateur who relie[d] on heavy sarcasm to create controversy or convey a message" were protected opinion). If readers understand letters to the editor in a newspaper to likely contain opinion or rhetorical hyperbole, *see Colodny v. Iverson, Yoakum, Papiano & Hatch*, 936 F. Supp. 917, 924 (M.D. Fla. 1996); *Hay*, 450 So.2d at 295, viewers of a late night show hosted by a comedian unquestionably do too.

The specific language used in the Challenged Statement also highlights that it is protected rhetorical hyperbole, not fact. "[L]oose, figurative, or hyperbolic language" is the hallmark of rhetorical hyperbole. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990). "Exaggeration" and "non-literal figurative language," as one finds in a television talk show, form "an integral part of social discourse" and are protected opinion. *Horsley*, 292 F.3d at 702. The Challenged Statement uses just such loose and non-literal language. Mr. Maher curses (e.g., "who's Trump f***ing?") and describes Trump as "a dog"—a slang term that refers to someone who lusts or chases after multiple people. No reasonable viewer would believe Mr. Maher was actually calling Trump a dog; they would understand that he is using figurative language for effect. That is the very essence of opinion.

Finally, Mr. Maher's Statement is non-actionable pure opinion, not mixed opinion, because the facts on which it was based were all disclosed or otherwise known to viewers. *See Hay*, 450 So.2d at 295. In fact, they were all mentioned in the September 13 episode. Mr. Maher and HBO noted the factual predicates—Ms. Loomer's age and physical resemblance to other women Trump has been with

("She's 31, looks like his type"), Trump's history of romantic affairs ("He's been a dog for too long"), and the "very close" relationship between the two, such that Trump was "with her everywhere now," including at a "9/11 remembrance." Ms. Loomer does not dispute any of those facts. Mr. Maher's Statement does not imply that he is privy to other, undisclosed facts informing his opinion.

*Morse v. Ripken*, 707 So.2d 921 (Fla. 4th DCA 1998), is illustrative. In that case, a magazine article quoted a baseball player's wife stating that the plaintiff was "planning to spend the night" with the baseball player, and the plaintiff sued for defamation. The court held that the statement was "pure opinion" because "[a]ll of the facts upon which [the wife] based her opinion"—*i.e.*, "fans mob [the player] wherever he goes; fans want to kiss him;" and the plaintiff "failed to vacate" the player's home that she had been leasing—were conveyed to the reader of the article," and "[t]here was no implication in [the wife's] reported statements that there were undisclosed facts which also formed the basis of her opinion." *Id.* at 923; *see also, e.g.*, *Lassiter v. Lassiter,* 456 F. Supp. 2d 876, 882 (E.D. Ky. 2006) (wife's statement that husband was committing adultery deemed non-actionable opinion when her book "disclose[d] the facts on which the opinion was based" and the reader was "in as good a position as the author to judge whether the conclusion she reached—that adultery had been committed—was correct"). So too, here, the facts upon which Mr. Maher's speculation was based were fully disclosed, leaving viewers to weigh the hypothesis for themselves.

Moreover, even if Mr. Maher had not disclosed any of the facts supporting

his speculation about Ms. Loomer and Trump, those facts were "otherwise known or available to the [viewer] as a member of the public." *Fortson*, 434 F. Supp. 2d at 1378 (citation omitted). In the days before the September 13 show aired, most major news outlets[3] covered the story that Ms. Loomer had traveled on Trump's private plane and that the two had appeared together at a 9/11 memorial event.[4] The facts underlying speculation about Trump and Ms. Loomer's close relationship were "well publicized." *Keller*, 778 F.2d at 718; *see From*, 400 So.2d at 57 (statements made in a tennis column were "privileged pure opinion" and "thus not actionable" where facts underlying the statements—even though not disclosed in the column—could be assumed to be known to readers based on the plaintiff's "performance and position in the Tallahassee tennis community"). Viewers of *Real Time* therefore understood that Mr. Maher was offering joking commentary on that news story, and would not have expected him (or HBO) to be privy to additional "concealed or undisclosed" information about the nature of the relationship between Ms. Loomer and Trump. *Hay*, 450 So.2d at 295.

---

[3] "[C]ourts may take judicial notice of documents such as the newspaper articles at issue here for the limited purpose of determining which statements the documents contain (but not for determining the truth of those statements)." *United States ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015); *accord, e.g.*, *Turner*, 879 F.3d at 1272 n.5 (citation omitted) (taking judicial notice of the existence of news articles in defamation action).

[4] *See, e.g.*, Ken Bensinger, *Who Is Laura Loomer, the Far-Right Activist Who Traveled With Trump?*, N.Y. Times (Sept. 13, 2024), https://tinyurl.com/2zpe2dck; Patrick Svitek, *Trump's Time with Loomer, a Far-Right Activist, Upsets His GOP Allies*, Wash. Post (Sept. 12, 2024), https://tinyurl.com/38cf683a; Vivian Salama, *Trump Embrace of Laura Loomer*

In short, no reasonable viewer watching Mr. Maher's joking commentary on the news of the day would think he was offering a statement of fact about Ms. Loomer. His Statement is protected as rhetorical hyperbole and as pure opinion based on disclosed facts.

### b. Plaintiff Fails To Plausibly Allege Actual Malice

Ms. Loomer's claims also fail in their entirety because she does not plausibly allege actual malice. Plaintiff admits she is a public figure. *See* Compl. ¶ 12 (describing Ms. Loomer as "well-known"); *see also id.* ¶¶ 10, 23–28, 41, 53, 68, 80 (acknowledging actual malice standard applies). "The standard for actual malice . . . is a rather daunting one for public-figure plaintiffs." *Klayman v. City Pages*, 2015 WL 1546173, at *13–14 (M.D. Fla. Apr. 3, 2015), *aff'd* 650 F. App'x 744 (11th Cir. 2016). Public-figure defamation plaintiffs must "allege facts sufficient to give rise to a reasonable inference that the false statement was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Michel*, 816 F.3d at 702 (quoting *N.Y. Times v. Sullivan*, 376 U.S. 254, 280 (1964)); *see Nodar v. Galbreath*, 462 So.2d 803, 806 (Fla. 1984).[5] "[P]urely conclusory" allegations "that the defendants were 'reckless'" . . . are insufficient to support a cause of action." *Michel*, 816 F.3d at 704; *accord Turner*, 879 F.3d at 1273. Florida courts frequently dismiss for failure to plead actual malice. *See, e.g.*,

---

*Adds New Figure to Controversial Entourage*, Wall St. J. (Sept. 13, 2024), https://tinyurl.com/5yjysevx.

*Michel*, 816 F.3d at 702.

Plaintiff falls far short of meeting her heavy pleading burden. Ms. Loomer largely relies on impermissibly conclusory statements that Defendants knew the Statement was "false and misleading, and/or at a minimum acted and published with a reckless disregard for the truth." Compl. ¶ 10; *see id.* ¶¶ 22, 35, 45, 53, 62, 72, 80; *Turner*, 879 F. 3d at 1273. Equally conclusory are Ms. Loomer's allegations that "due diligence or investigation would have shown that these statements are simply not true," that Mr. Maher's Statement was "likely orchestrated by the Democrat [sic] party and the Harris presidential campaign," or that Defendants and counsel "loathe Donald Trump and those who are associated with him, including Ms. Loomer." Compl. ¶¶ 23(a), (c), (e). Such conclusory allegations are insufficient as a matter of law.

To the extent Ms. Loomer offers any specific factual allegations, they too are insufficient.[6] First, Ms. Loomer alleges that Defendants "refus[ed]" to seek comment from her before the broadcast and declined to extend her "the courtesy of appearing on a future episode of 'Real Time' to deny the published statements in person." Compl. ¶ 23(b). These allegations fail as a matter of law. Late night talk show hosts do not generally call the subjects of their jokes for comment.

---

[5] "All three types of defamation"—defamation per se, defamation per quod, and defamation by implication—"require a plaintiff to plead and prove actual malice if he is a public figure." *Reed*, 2023 WL 6292578, at *9.
[6] The Complaint cites a Florida Bar Journal article discussing 24 "badges" of malice, Compl. ¶ 23, but no court anywhere has ever cited that article or adopted its "badges of malice" theory.

Even if they did, "[f]ailure to investigate and poor journalistic standards are insufficient to establish actual malice." *Klayman*, 650 F. App'x at 750–51; *see also Berisha v. Lawson*, 973 F.3d 1304, 1312 (11th Cir. 2020) ("Even an 'extreme departure from professional [broadcasting] standards' does not necessarily rise to the level of actual malice.") (quoting *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 665 (1989)). As to Ms. Loomer's desire to appear on the show to issue a denial, not only does the "failure to print [plaintiff's] denials . . . not constitute actual malice," *Dockery v. Fla. Democratic Party*, 799 So.2d 291, 296 (Fla. 2nd DCA 2001), but Defendants' choice of whom to invite onto *Real Time* is wholly within their First Amendment-protected "editorial control and judgment," *Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 258 (1974).

Second, Ms. Loomer seeks to establish actual malice as to the Challenged Statement by pointing to the segment in the following week's episode entitled "24 Things You Don't Know About Laura Loomer" to claim Mr. Maher made subsequent defamatory statements. Compl ¶¶ 23(i), 25. As a matter of law, actual malice requires proof that statements were known "to be false *at the time they were made*" or that the defendant "disregarded the truth or falsity of these statements *at the time they were made*," *Dockery*, 799 So.2d at 294 (emphasis added); *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 498 (1984) (emphasis added). What Maher did or did not say days later does not inform the analysis.

In any event, the complained-of statements from the September 20

segment are not false and defamatory. They are, like the Challenged Statement, statements of opinion. For example, Ms. Loomer complains of one-liners on the satirical 24 Things list like "My biggest fear is immigrants taking my job as a right-wing hatemonger" or "I don't hate all brown people, just the brown ones"—but characterizing Loomer as "a right-wing hatemonger" who "hate[s] . . brown people" is classic opinion or rhetorical hyperbole. And, again like the Challenged Statement, a sketch in a late-night comedy show with the salacious title "24 Things You Don't Know About Laura Loomer"—a play on the *US Weekly* magazine's celebrity gossip counterpart—signals to viewers that they are about to hear opinion or commentary, not facts. Moreover, Mr. Maher regularly includes similar satirical lists at the midpoint of his show: The September 13 episode, for example, featured a list of made-up songs in "a new genre" "mixing country and rap" (e.g., "To All the Grills I've Loved Before," "I Twerk the Line," "I Like Big Buckles"). Exhibit 1 at 30:06–31:37. The *Real Time* audience expects jokes in such list segments, not facts. Thus, even if the September 20 statements were relevant to the actual malice inquiry—and they are not—Ms. Loomer plainly has not plausibly alleged any "subsequent defamatory statements." Compl. ¶ 23(i).

Third, Ms. Loomer alleges that the September 20, 2024 episode of *Real Time* is evidence of "repetitive media attacks on the plaintiff" and "ill will toward the plaintiff." Compl. ¶¶ 23(f), (g), (i). "[I]ll will is different from actual malice." *Klayman*, 2015 WL 1546173, at *13. As the Supreme Court has explained, "[t]he phrase 'actual malice' is unfortunately confusing in that it has nothing to do with

bad motive or ill will." *Harte-Hanks Commc'ns*, 491 U.S. at 666 n.7. And Ms. Loomer's lawyer should know better as a court in this district already cautioned him that he "does not fully cognize the difference between constitutional actual malice and 'ill will' or 'hatred.'" *Klayman*, 2015 WL 1546173, at *13; *see id.* ("Subjective ill-will does not establish actual malice, nor does a malevolent motive for publication."); *Don King Prods., Inc. v. Walt Disney Co.*, 40 So. 3d 40, 45 (Fla. 4th DCA 2010) ("an intention to portray [her] in a negative light . . . motivated by ill will or evil intent" is "not sufficient to show actual malice") (citing *Garrison v. Louisiana*, 379 U.S. 64, 73 (1964)). Finally, the fact that a public figure who has generated significant media attention is referenced in two consecutive episodes of a political satire show is not evidence of "ill will"—rather of newsworthiness. At bottom, all parties agree that Mr. Maher was mocking Ms. Loomer on his comedy show. But making fun of someone is not actual malice.

Finally, Ms. Loomer alleges that Defendants declined to issue a retraction when asked. Compl. ¶ 23(h). But the law is "clear the failure to retract or correct a falsehood does not prove actual malice." *Hunt v. Liberty Lobby*, 720 F.2d 631, 643 n.19 (11th Cir. 1983); *accord Klayman*, 650 F. App'x at 751 ("mere refusal to correct a publication" falls short of evidencing actual malice).

None of Ms. Loomer's factual allegations or "badges" is sufficient to establish actual malice. The only question is whether Defendants had reason to believe the Challenged Statement was false. Ms. Loomer has not offered any non-conclusory factual basis to conclude they did. In fact, social media posts and

reporting by other media outlets gave Defendants ample reason to believe the Statement that Trump and Laura Loomer "may" be sleeping together to be true. Ms. Loomer herself publicized her closeness with Trump. On August 13, 2023, she shared video of her and Trump in his private box at the Trump National Golf Club in Bedminster.[7] She ended her video by telling him "I love you"—and then captioned the post "Best president ever. I love him so much." In a separate post, she wrote: "He wanted me to sit next to him all day, and it was the best day ever. . . . I really love him with all of my heart. ❤️ ❤️."[8] Ms. Loomer also gave an interview in which she said that she ended a relationship with a former boyfriend because Trump was her "number-one priority"; Trump shared an excerpt of the interview on Truth Social in December 2023, writing "Thanks Laura!"[9]

Ms. Loomer's relationship to Trump drew greater attention in the days immediately before the September 13 *Real Time* episode. On September 10, 2024, Ms. Loomer was seen disembarking from Trump's private jet in Philadelphia.[10] The following day, Ms. Loomer accompanied him to a memorial marking the anniversary of the 9/11 attacks. *Id.* Media outlets across the political

---

[7] *See* https://tinyurl.com/2ra3b5rn (Aug. 13, 2023).
[8] https://x.com/LauraLoomer/status/1690874231096020992 (Aug. 13, 2023).
[9] https://truthsocial.com/@realDonaldTrump/posts/111509003872214992 (Dec. 1, 2023).
[10] Ken Bensinger, *Laura Loomer, a Social-Media Instigator, Is Back at Trump's Side*, N.Y. Times (Sept. 12, 2024), https://tinyurl.com/4eedj76a.

spectrum took note of their appearances together,[11] and speculation began to fly. On September 12, 2024, a video was posted to X of Donald Trump putting his arm around Ms. Loomer and patting her on the back as they kissed each other on the cheek; the poster wrote: "Watch them with their hands all over each other at Mar-a-Lago. Note: He's married."[12] A September 13, 2024 article in the Miami New Times, titled *Laura Loomer and Trump Sitting in a Tree, K-I-S-S-I-N-G*, noted that Loomer "has been spending quite a bit of time with Trump, leading some to speculate that they're a romantic item."[13] OK! Magazine reported the same day that "Former President Donald Trump has been accused of having an affair with controversial conspiracy theorist Laura Loomer."[14]

Against this backdrop, Mr. Maher's comment was not "inherently improbable, or obviously worthy of doubt." *Readon v. WPLG, LLC*, 317 So.3d 1229, 1236 (Fla. 3rd DCA 2021). Ms. Loomer's failure to plausibly allege actual malice compels dismissal of all her claims.

### c.  Plaintiff Fails To Plead The Elements of Defamation By Implication

---

[11] *See, e.g.*, *'She's a free spirit!': Trump Defends Relationship With Far-Right Racist Laura Loomer*, MSNBC (Sept. 13, 2024), https://tinyurl.com/2cvvw6ba; Jessica Chasmar, *Trump Fawns Over 'Very Special' Laura Loomer Despite House Ally Calling Her 'Mentally Unstable'*, Fox News (Aug. 14, 2023), https://tinyurl.com/y6vf23zy.

[12] https://tinyurl.com/3aabakhx.

[13] Naomi Feinstein, *Laura Loomer and Trump Sitting in a Tree, K-I-S-S-I-N-G*, Miami New Times (Sept. 13, 2024), https://tinyurl.com/523adxaf.

[14] Joshua Wilburn, *Donald Trump Accused of Having an Affair with MAGA Conspiracy Theorist Laura Loomer as Wife Melania Remains MIA*, OK! Magazine (Sept. 13, 2024 5:45 p.m. ET), https://tinyurl.com/37aj626n.

Even if Ms. Loomer's other defamation claims had any merit (which they do not), Ms. Loomer does not state a claim for defamation by implication. As Ms. Loomer's own cited case explains, "defamation by implication applies in circumstances where literally true statements are conveyed in such a way as to create a false impression." *Rapp*, 997 So.2d at 1108 (cited in Compl. ¶¶ 54, 81). The plaintiff must therefore allege that the statements are "literally true." *Id.*; *see Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1124 (S.D. Fla. 2021) ("The Complaint pleads only that [a journalist's] accusations were false—not that they were true and gave a false implication—which requires dismissal."); *Block v. Matesic*, 2023 WL 8527670, at *9 (S.D. Fla. Dec. 8, 2023) ("[Counterclaim-Plaintiff] hasn't adequately pled a claim for defamation by implication because he hasn't sufficiently identified the 'literally true facts.'"). Ms. Loomer does just the opposite: her claims for defamation by implication repeatedly allege that the Challenged Statement is "false." Compl. ¶¶ 48, 50–53, 55, 75, 77–80, 82. Ms. Loomer's failure to plead a literally true statement compels dismissal of her defamation by implication claim.

Moreover, even if Ms. Loomer had satisfied the basic requirements for a defamation by implication claim, she cannot have it both ways: either the Challenged Statements are false, as required to state a claim for defamation per se or defamation per quod, or the Statements are literally true but create a false impression, as required to state a claim for defamation by implication. *See, e.g.*, *Jacoby v. CNN,* 537 F. Supp. 3d 1303, 1313 (M.D. Fla. 2021) ("The Court cannot

accept as true Plaintiff's allegation in Count I that this statement is false, while also accepting as true Plaintiff's allegation in Count II that this same statement is true."), *aff'd*, 2021 WL 5858569 (11th Cir. Dec. 10, 2021). Because Ms. Loomer's defamation by implication claim is both insufficiently pled and inconsistent with the allegations underlying her other claims, it must be dismissed.

### d. Plaintiff Fails To Plead Special Damages As Required To State A Claim for Defamation Per Quod

To state a claim for defamation per quod, a plaintiff must allege special damages—"actual, out of pocket losses which must be proven by specific evidence as to the time, cause and amount."[15] *Falic v. Legg Mason Wood Walker, Inc.*, 347 F. Supp. 2d 1260, 1268 (S.D. Fla. 2004); *accord, e.g.*, *Open Sea Distribution Corp. v. Artemis Distribution, LLC*, 692 F. Supp. 3d 1151, 1202 (M.D. Fla. Sept. 19, 2023) (defamation per quod plaintiff "must specially plead and prove special damages proximately resulting from the defamation"); *Anderson v. Smith*, 2020 WL 10058207, at *3 (M.D. Fla. Mar. 24, 2020) (requiring allegations of "a realized or liquidated loss"); *Daniels v. HSN, Inc.*, 2020 WL 533927, at *3 (M.D. Fla. Feb. 3, 2020) (same); *Flynn I*, 2023 WL 5985193, at *5 (same).

Failure to sufficiently allege special damages compels dismissal. For

---

[15] Though Ms. Loomer does not use the phrase "defamation per quod," that is what she means when she asserts claims for "defamation" alongside her claims for "defamation per se." "Under Florida law, a claim for defamation may be categorized in one of two ways: defamation *per quod* or defamation *per se*." *Flynn v. Cable News Network, Inc.*, 2023 WL 5985193, at *4 (M.D. Fla. Feb. 22, 2023) ("*Flynn I*") (citation omitted).

example, in *Anderson*, the court dismissed a defamation claim where the plaintiff did not identify her "present professional vocation or endeavors" and did not allege "an actual loss of employment, or a realized loss attributable to her diminished stature in the community." *Anderson*, 2020 WL 10058207, at *4. Likewise, in *Flynn I*, the court dismissed a defamation claim in which the plaintiff made conclusory allegations of injuries including "insult, pain, embarrassment, humiliation, emotional suffering, injury to her reputation, lost future earnings, and diminished earning capacity, cost and other out-of-pocket expenses" unsupported by any specific factual allegations. *Flynn*, 2023 WL 5985193, at *5. And in *Flynn v. Cable News Network, Inc.*, the court dismissed the defamation claim even where the plaintiff alleged that her credit cards were cancelled and she had to change her phone number as a result of the publication: even those specific allegations, the court held, fell short of alleging any actual pecuniary loss. 2023 WL 5985196, at *6 (M.D. Fla. Mar. 17, 2023).

Ms. Loomer's complaint does not point to any specific identifiable losses. She names no lost profits, lost customers, lost referrals, future economic losses, or expenses for remediating reputational harm caused by the defamation. Her allegation that the Statement at issue "severely harmed and damaged [her] financially and in other ways in her profession and business as an investigative journalist," Compl. ¶¶ 46, 55, 65, 82, is wholly conclusory and unsupported by any specific allegation of pecuniary loss. Because Ms. Loomer fails to adequately plead special damages, her claim for defamation per quod fails.

## III.      Plaintiff's Complaint Violates Florida's Anti-SLAPP Statute

Florida's anti-SLAPP statute prohibits any person in the state from filing a lawsuit "against another person or entity without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue . . . , as protected by the First Amendment to the United States Constitution and s. 5, Art. I of the State Constitution." Fla. Stat. § 768.295(3). The statute expressly extends to statements made in "television program[s]." *Id.* § 768.295(2)(a). Under the statute, attorney's fees must be awarded to the prevailing defendant in a SLAPP suit. *Id.* § 768.295(4). Federal courts sitting in diversity and applying Florida law routinely award fees under the anti-SLAPP law, *see Parekh v. CBS Corp.*, 820 F. App'x 827, 836 (11th Cir. 2020); *Corsi*, 519 F. Supp. 3d at 1128; *Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1261–62 (S.D. Fla. 2021); *Bongino v. Daily Beast Co.*, 477 F. Supp. 3d 1310, 1322–24 (S.D. Fla. 2020); *Vibe Ener v. Duckenfield*, 2020 WL 6373419, at *5 (S.D. Fla. Sept. 29, 2020)—including in defamation cases "without merit" brought by Mr. Klayman, *Reed v. Chamblee*, 2024 WL 69570, at *6 (M.D. Fla. Jan. 5, 2024).

Defendants are entitled to an award of fees and costs under the statute. First, for the reasons set forth above, Ms. Loomer's claims are "without merit." Fla. Stat. § 768.295(3); *see Bongino*, 477 F. Supp. 3d at 1322 ("Because Plaintiff's suit fails to state a claim for defamation, it was without merit under Florida Statute § 768.295(3)."). Second, Defendants' commentary on a self-described

"conservative . . . activist," Compl. ¶ 13, being "very close" to Trump, in the middle of his campaign for reelection as President of the United States, is indisputably speech "in connection with a public issue." *Id.* This Court should, therefore, award HBO fees for bringing this motion.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Ms. Loomer's claims with prejudice and award Defendants attorney's fees and costs.

## LOCAL RULE 3.01(g) CERTIFICATION

Counsel for Defendants certify that they have conferred with counsel for Plaintiff on November 21, 2024. Counsel for Plaintiff said that Plaintiff intends to oppose the motion in full.

Respectfully submitted,

*/s/ Rachel E. Fugate*

Rachel E. Fugate (Florida Bar No. 144029)
Yelan Escalona (Florida Bar No. 1031564)
Shullman Fugate PLLC
100 South Ashley Drive, Suite 600
Tampa, FL 33602
Tel: (813) 935-5098
rfugate@shullmanfugate.com
yescalona@shullmanfugate.com

Katherine M. Bolger (*pro hac vice* pending)
Alexandra Perloff-Giles (*pro hac vice* pending)
Davis Wright Tremaine LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Tel: (212) 489-8230
katebolger@dwt.com
alexandraperloffgiles@dwt.com

*Counsel for Defendants Bill Maher and Home Box Office, Inc.*