**IN THE UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF FLORIDA OCALA DIVISION**

LAURA LOOMER

Plaintiff,

v.

BILL MAHER

And

HOME BOX OFFICE, INC.

Defendants.

**Case No: 5:24-cv-00625-JSM-PRL**

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT HOME BOX OFFICE, INC.'S MOTION TO STAY DISCOVERY**

Plaintiff Laura Loomer hereby submits the following in opposition to Defendant Home Box Office, Inc.'s ("HBO") Motion to Stay Discovery. Defendant HBO disingenuously asserts that discovery should be stayed because (1) the motion to dismiss is "likely to be case dispositive," (2) a stay will not prejudice plaintiff, and (3) discovery would prejudice HBO and waste judicial resources. As set forth below, none of these arguments have any merit.

## I. LEGAL STANDARD

Courts have held that "[a] party carries a heavy burden of making a 'strong showing' why discovery should be stayed." *Buckwalter v. Nev. Bd. of Med. Exam'rs*, No. 2:10- cv-02034-KJD-GWF, 2011 U.S. Dist. LEXIS 28515, at *3 (D. Nev.

Mar. 7, 2011) (quoting *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). The movant must show a particular and specific need for a discovery stay. It cannot base its request on stereotyped or conclusory statements. *Id.* "Discovery should be stayed, however, only when there are no factual issues in need of further immediate exploration….." *Hachette Distribution, Inc. v. Hudson Cty. News Co.*, 136 F.R.D. 356, 358 (E.D.N.Y. 1991).

## II. THE LAW

As set forth above, Defendant HBO proposes three separate grounds upon which they claim a stay is warranted. None of these grounds have any merit.

*First*, the Defendants' Motion to Dismiss will clearly not be "dispositive" for the reasons set forth fully and briefed in Plaintiff's Response in Opposition to Motion to Dismiss, which is attached hereto as Exhibit A and incorporated by reference (the "Opposition"). In sum, Ms. Loomer's Complaint far more than sufficiently sets forth and pleads claims for defamation, defamation by implication, and defamation *per se* against the Defendants, who published to the entire world the following false, malicious, and defamatory statement, where they baselessly and without any evidence in support, falsely publish outrageous and unsupported scandalous accusations that Ms. Loomer is "fucking" a married man, President Trump, and committing adultery behind the back of Mr. Trump's wife, Melania Trump:

I think maybe Laura Loomer's in an arranged relationship to affect

> the election because she's very close to Trump. She's 31, looks like his type. **We did an editorial here a few years ago…it was basically, who's Trump fucking?** Because I said, you know, it's not nobody. He's been a dog for too long, and it's not Melania. I think we may have our answer this week. **I think it might be Laura Loomer**. Comp. ¶ 18. (emphasis added).

The Opposition conclusively shows that all of the causes of action are more than sufficiently pled, that the Defendants acted with actual malice, and that despite the Defendants' "clever" but failed efforts to couch their statements as purported "opinion," the use of this tactic has been repeatedly rejected. And, the defamatory statements were clearly not pure opinion. Thus, the Defendants' position that Ms. Loomer's claims are "likely to be dismissed in full" is more than a disingenuous stretch—it is simply false.

*Second*, Defendant HBO will suffer absolutely no prejudice if discovery commences without further delay because, as set forth above, their Motion must be denied because Plaintiff's Complaint more than sufficiently pleads all of the causes of action involved in this matter. This case bears strong parallels to *Trump v. American Broadcasting Companies, Inc. et al*, No. 1:2024cv21050 (S.D. Fla. 2024) ("Trump Case"), where the Chief Judge, Cecilia M. Altonaga found that President Trump had sufficiently pled defamation and allowed discovery in an action brought by President Trump over false published statements that President Trump had been "found liable for rape." Judge Altonaga found that in a case where President Trump was falsely accused of having "raped" instead of "sexually abused" E. Jean Carroll, she could not grant Defendants' motion to

dismiss because "Where a court first determines the statements are susceptible to a defamatory interpretation, factual questions arise that should be resolved by the trier of fact — here, a jury." Exhibit 1. This reasoning is also compelling here, where there is not even any ambiguity involved, because if Judge Altonaga did not dismiss the Trump Case, certainly this case cannot be either. After Chief Judge Altonaga recently ordered the depositions of George Stephanopoulos, who at ABC had defamed President Trump, the Defendants in the Trump Case settled for $15 million dollars and also agreed to pay attorneys fees. Likely not coincidentally, the same firm and lawyers representing Defendants here also represented the Defendants in the Trump case, ABC and George Stephanopoulos. In fact, the allegations in the Trump case are less egregious than the defamation in this instant action, since President Trump had been found liable for sexual abuse. There is no evidence here that Ms. Loomer had sex with and engaged in adultery, that is "fucked" President Trump and committed adultery behind the back of Melania Trump.

Thus, the bottom line is that it simply works no prejudice to Defendants if discovery begins now. However, on the other hand, Ms. Loomer will suffer prejudice if discovery is delayed because it is crucial for Ms. Loomer to depose Defendant Maher as well as Defendant HBO's corporate representative when their memories are fresh given that Defendants have raised actual malice as an alleged issue. Thus, what Defendant Maher and Defendant HBO knew at the time that the defamatory statement was made is essential to Ms. Loomer's

claims. Internal documents and testimony of Defendants HB and Maher will show this.

Lastly, Defendants take an *ad hominem* shot at Ms. Loomer for allegedly having failed to properly serve Defendant Maher with service of process, conveniently hiding the fact that this was only a result of Defendant Maher, a prominent Hollywood figure, having evaded service of process, further evidencing the Defendants' pattern and practice of delay. In any event, this issue is moot because there is now no dispute that Defendant Maher has now been served despite Defendants' obstruction. ECF No. 24. In fact, it is frankly in bad faith that Defendant Maher and his counsel would force Ms. Loomer, a person of much lesser means, at great expense to hunt him down at his residence when counsel could have professionally accepted service of process of Defendant Maher, particularly after Defendant HBO was served through its registered agent.

## III.    CONCLUSION

WHEREFORE, for the compelling reasons set forth above, Defendant HBO's Motion must be denied and this matter proceed now to discovery, as this is the established norm, to avoid and further delay and prejudice to Ms. Loomer's rights.

Dated: January 3, 2024                              Respectfully submitted,

*/s/ Larry Klayman*
Larry Klayman, Esq.
**Klayman Law Group P.A.**
7050 W Palmetto Park Rd.
Boca Raton, Florida 33433
Telephone:   (561) 558-5536
Email:  leklayman@gmail.com

Attorney for Plaintiff

# EXHIBIT 1

**3UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-21050-CIV-ALTONAGA/Reid**

**PRESIDENT DONALD J. TRUMP**,

Plaintiff,

v.

**AMERICAN BROADCASTING COMPANIES, INC.**; *et al.*,

Defendants.

_______________________________/

**ORDER**

**THIS CAUSE** came before the Court for a hearing on July 15, 2024, on Defendants, American Broadcasting Companies, Inc. ("ABC"); ABC News, Inc. ("ABC News"); and George Stephanopoulos's Motion to Dismiss [ECF No. 24], filed on May 10, 2024. Plaintiff, President Donald J. Trump, filed a Response [ECF No. 29]; to which Defendants filed a Reply [ECF No. 30]. The Court has carefully considered the record, the parties' written submissions, and applicable law. For the following reasons, the Motion is denied.

**I. BACKGROUND**

This case arises from a series of actions litigated in the Southern District of New York. The undersigned begins by recounting those cases as described by the deciding court and then turns to the events giving rise to this action. *Cf. Tavares v. Fla. Dep't of Transp.*, No. 22-cv-23745, 2023 WL 9510534, at *7 (S.D. Fla. Dec. 4, 2023) ("Courts *routinely* take judicial notice of other dockets." (emphasis in original; collecting cases)), *report and recommendation adopted*, 2024 WL 417112 (S.D. Fla. Feb. 5, 2024).

***Prior litigation.*** In 2019, while Plaintiff was President of the United States, E. Jean Carroll publicly accused him of a sexual assault and rape that occurred three decades before. *See Carroll*

*v. Trump*, 49 F.4th 759, 761 (2d Cir. 2022). "In response to the accusations, [Plaintiff] made a series of public statements, which not only denied the allegations but also questioned Carroll's credibility and assertedly demeaned her personal appearance." *Id.* (alteration added). Following those comments, Carroll filed an action for defamation against Plaintiff in New York state court; the case was removed to federal court. *See id.* That litigation is known as *Carroll I*. *See, e.g.*, *Carroll v. Trump*, No. 20-cv-7311, 2024 WL 97359, at *1 (S.D.N.Y. Jan. 9, 2024) ("This is a defamation case, frequently referred to as *Carroll I*[.]" (alteration added)).

"Carroll brought a second, closely related action against [Plaintiff] ('*Carroll II*') in November 2022 [seeking] damages for sexual assault" and for another defamatory statement Plaintiff made in October 2022. *Id.* (alterations added). Both cases were tried in the Southern District of New York, before Judge Lewis A. Kaplan. *See Carroll v. Trump*, No. 20-cv-7311, 2023 WL 7924698, at *1–2 (S.D.N.Y. Nov. 16, 2023). *Carroll II* was tried first, while a pre-trial issue in *Carroll I* was appealed to the Second Circuit. *See id.* at *1.

In May 2023, the jury in *Carroll II* returned a verdict for Carroll, finding Plaintiff had "sexually abused" and defamed her. *Carroll v. Trump*, 685 F. Supp. 3d 267, 269 (S.D.N.Y. 2023) (quotation marks omitted). The jury also found, however, that Plaintiff had not "raped" Carroll, as the act is defined by New York Penal Law. *Id.* (quotation marks omitted). Because the New York Penal Law limits the definition of rape to penile penetration, "the jury's finding . . . implicitly determined that [Plaintiff] forcibly penetrated [Carroll] digitally[.]" *Id.* (alterations added).

The jury awarded Carroll two million dollars in compensatory damages, which Plaintiff challenged as excessive because the jury did not find him liable for rape. *See Carroll v. Trump*, 683 F. Supp. 3d 302, 307 (S.D.N.Y. 2023). In considering this challenge, Judge Kaplan noted that "the definition of rape in the New York Penal Law is far narrower than the meaning of 'rape' in

common modern parlance, its definition in some dictionaries, in some federal and state criminal statutes, and elsewhere." *Id.* at 306 (footnote call numbers omitted). Judge Kaplan further concluded that "[t]he finding that [] Carroll failed to prove that she was 'raped' within the meaning of the New York Penal Law does not mean that she failed to prove that [Plaintiff] 'raped' her as many people commonly understand the word 'rape.'" *Id.* at 306–07 (alterations added). "Indeed," he wrote, "the jury found that [Plaintiff] in fact did exactly that." *Id.* at 307 (alteration added). Consequently, the court denied Plaintiff's motion. *See id.* at 334.

When *Carroll I* resumed, Plaintiff brought counterclaims against Carroll, claiming she defamed him when — in a television interview after the verdict in *Carroll II* — she maintained Plaintiff had raped her. *See Carroll*, 685 F. Supp. 3d at 271–72. Judge Kaplan dismissed these counterclaims, explaining that "the jury's verdict in *Carroll II* establishe[d], as against [Plaintiff], the fact that [Plaintiff] 'raped' [Carroll], albeit digitally rather than with his penis." *Id.* at 275 (alterations added). Judge Kaplan concluded Plaintiff did not state a defamation claim because "he fail[ed] plausibly to allege that [] Carroll's statements were not true, and [] in the alternative, [] Carroll's allegedly defamatory statements were substantially true as a matter of law." *Id.* at 277–78 (alterations added).

In January 2024, a jury awarded Carroll $83.3 million on her defamation claim against Plaintiff. *See Carroll v. Trump*, No. 20-cv-7311, 2024 WL 475140, at *1 (S.D.N.Y. Feb. 7, 2024).

***Present litigation.*** This action arises from news coverage of the just-described litigation. On March 10, 2024, Stephanopoulos interviewed United States Representative Nancy Mace; ABC and ABC News broadcast the interview as part of the show *This Week with George Stephanopoulos*. (*See* Compl. [ECF No. 1] ¶¶ 6–8, 37). In the interview, Stephanopoulos asked Mace about her endorsement of Plaintiff despite the fact he was "found liable for rape." (*Id.* ¶ 39

(quotation marks omitted)). He repeated the phrase ten times during the interview, at one point stating "[j]udges and two separate juries have found him liable for rape," and "[t]he Judge affirmed that it was, in fact, rape." (*Id.* ¶ 42 (alterations added; quotation marks omitted)). A screenshot of a newspaper headline stating that "Judge clarifies: Yes, Trump was found to have raped E. Jean Carroll[.]" *Voters have 'moved beyond' Jan. 6: Rep. Nancy Mace* ("Segment"), ABC News (Mar. 10, 2024), https://abcnews.go.com/ThisWeek/video/voters-moved-jan-6-rep-nancy-mace-107976891, at 6:20–6:29 (alteration added), was shown near the end of the broadcast.

The exchange was subsequently publicized on social media. (*See* Compl. ¶¶ 57–76). In other interviews and in other coverage by ABC News, the verdict was described as "[s]exual [a]buse[,]" and the jury's finding that Plaintiff did not "rape" Carroll under New York law was also discussed. (*Id.* ¶¶ 46–49 (alterations added; emphasis and quotation marks omitted)).

Plaintiff now alleges defamation *per se* and defamation *per quod*. (*See id.* ¶¶ 77–97). Defendants move for dismissal, arguing Plaintiff's claims are foreclosed by the New York court's findings. (*See generally* Mot.). Plaintiff disagrees, and, in the alternative, moves the Court for leave to amend his Complaint. (*See generally* Resp.).

## II.  LEGAL STANDARDS

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading withstands a motion to dismiss if it alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-

defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)).

## III. DISCUSSION

Defendants raise three grounds for dismissal. (*See generally* Mot.; Reply). First, they argue the claims are barred by collateral estoppel. (*See* Mot. 11–13). Second, Defendants argue Stephanopoulos's statements were "substantially true." (*Id.* 13–16). Third, Defendants assert Stephanopoulos is shielded by the fair report privilege available to him under Florida law. (*See id.* 16–18). Plaintiff disagrees on each front. (*See generally* Resp.). The Court addresses Defendants' arguments in turn, agreeing with Plaintiff's position on each.

### A. Collateral Estoppel

"The doctrine of collateral estoppel precludes a party from relitigating an issue which has previously been decided against him in a proceeding in which he had a fair opportunity to fully litigate the point." *Kaufman v. Eli Lilly & Co.*, 482 N.E.2d 63, 67 (N.Y. 1985) (quotation marks and citations omitted). The Court first addresses two threshold questions and then considers the parties' collateral estoppel arguments.

#### *1. Timing*

Plaintiff argues collateral estoppel is an affirmative defense that cannot be raised at the motion-to-dismiss stage. (*See* Resp. 7–9). Defendants insist collateral estoppel can be raised at this stage of the proceedings because the defense relies on court records, of which the Court may take judicial notice. (*See* Reply 2–3). On this point, the Court agrees with Defendants.

Curiously, Plaintiff makes his argument "[u]nder New York law" but cites exclusively to federal cases from federal district courts in New York and the Second Circuit. (Resp. 7–8 (alteration added; footnote call number omitted)). Although those cases were tried and decided in New York, their holdings are, for the most part, applications and explanations of federal law and the Federal Rules of Civil Procedure. *See, e.g.*, *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74–75 (2d Cir. 1998).

Defendants correctly brief the issue under Eleventh Circuit precedent. (*See* Reply 2–3). "In diversity of citizenship actions, state law defines the nature of defenses, but the Federal Rules of Civil Procedure provide the manner and time in which defenses are raised[.]" *Smith v. R.J. Reynolds Tobacco Co.*, 880 F.3d 1272, 1280–81 (11th Cir. 2018) (alteration added; citation, footnote call number, and quotation marks omitted); *cf. Springer v. Wal-Mart Assocs.' Grp. Health Plan*, 908 F.2d 897, 900 n.1 (11th Cir. 1990) ("We need hardly add that even if there *were* a relevant circuit split [regarding the existence of an exhaustion requirement], the district court is bound by controlling *Eleventh Circuit* precedent." (alteration added; emphases in original)).[1]

In any event, the Eleventh Circuit follows the same framework that Plaintiff describes. Under Federal Rule of Civil Procedure 12(d), a motion to dismiss "must be treated as one for summary judgment" if it presents "matters outside the pleadings[.]" *Id.* (alteration added). Consequently, an affirmative defense like collateral estoppel is more typically raised under Rule 8(c)(1). *See Harrell v. Bank of Am*, 813 F. App'x 397, 400 (11th Cir. 2020) (citing *Concordia v. Bendekovic*, 693 F.2d 1073, 1075 (11th Cir. 1982)).

---

[1] The outcome under New York state law would be the same — and even more easily reached. New York's civil rules expressly entitle parties to raise issue preclusion on a motion to dismiss. *See* N.Y. C.P.L.R. 3211(a)(5) (Consol. 2024).

Yet, collateral estoppel may be raised on a Rule 12(b)(6) motion like the one Defendants have filed if the defense "can be judged on the face of the complaint." *Harrell*, 813 F. App'x at 400 (quotation marks omitted; quoting *Concordia*, 693 F.2d at 1075).[2] "In making this determination, [courts] may . . . take judicial notice of state and federal court records of prior proceedings." *Id.* (alterations added; citing *United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811–12 & n.4 (11th Cir. 2015)). The Court is therefore free to consider Judge Kaplan's opinions in *Carroll I* and *Carroll II*.

Indeed, as Defendants note, "Plaintiff does not (and cannot) object to th[e] Court considering Judge Kaplan's . . . published opinions[.]" (Reply 2 n.1 (alterations added)). Here, those opinions are sufficient to permit Defendants to raise a collateral estoppel defense on a motion to dismiss. *See Harrell*, 813 F. App'x at 402 (affirming dismissal of claims where defendants properly "raise[d] the defense of res judicata in their motions to dismiss because its applicability was apparent from . . . the documents the district court was allowed to consider" and attached state court documents (alterations added; citation omitted)).

*2. Choice of Law*

Having determined that Defendants properly raise their collateral estoppel defense, the Court next considers what law governs its analysis. Defendants state that, "[b]ecause the *Carroll* cases were litigated in New York, New York law determines their preclusive effect in this case." (Mot. 11 (alteration added; citations omitted)). Plaintiff apparently agrees and briefs the issue "[u]nder New York law[.]" (Resp. 7 (alterations added; footnote call number omitted); *see also id.* 9, 11).

[2] *Harrell* discussed the applicability of res judicata, but the Eleventh Circuit has explained that "[r]es judicata comes in two forms[,]" one of which is collateral estoppel. *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1263 (11th Cir. 2011 (alterations added; citation omitted).

The parties are only partially correct. Defendants' cited cases hold that state collateral estoppel rules apply when the rendering federal court exercised *diversity jurisdiction*. (*See* Mot. 11 (citing *CSX Transp., Inc. v. Gen. Mills, Inc.*, 846 F.3d 1333, 1340 (11th Cir. 2017); *Sellers v. Nationwide Mut. Fire Ins. Co.*, 968 F.3d 1267, 1269 (11th Cir. 2020))). Here, Defendants argue Plaintiff is estopped by *Carroll II*, which was in federal court based on diversity jurisdiction. (*See* Mot. 12; *Carroll v. Trump*, No. 22-cv-10016, Complaint [ECF No. 1] ¶ 15 filed on November 24, 2022 (S.D.N.Y. 2023)). Defendants also argue, however, that Plaintiff is estopped by *Carroll I*, which was in federal court under *federal question jurisdiction*. (*See* Mot. 11–12; *Carroll v. Trump*, No. 20-cv-07311, Notice of Removal [ECF No. 6] ¶¶ 3–4 filed September 9, 2020 (S.D.N.Y. 2024)). In such cases, federal — not state — preclusion principles generally apply. *See Federer v. Zurich Am. Ins. Co.*, 701 F. App'x 835, 840 n.4 (11th Cir. 2017) (collecting cases).

Nonetheless, the parties proceed solely under New York law, and the Court follows suit; it is "well-settled in this and other circuits that . . . a party may, through its briefing (or otherwise) waive its choice-of-law arguments implicitly[.]" *Goodnight v. Boston Sci. Corp.*, 548 F. Supp. 3d 1325, 1335–36 (S.D. Fla. 2020) (alterations added; citations omitted). Thus, "in our adversarial system, a straightforward application of the waiver doctrine . . . sometimes determines what the 'correct law' is." *Id.* at 1336 (alteration added; citation omitted). Here, all parties expressly structure their arguments under New York's collateral estoppel rules and affirmatively cite case law they believe mandates the application of New York law. (*See* Mot. 11–13; Resp. 6–13). Because the parties have reached their own consensus, the Court will not disturb their choice. *See Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1342 (11th Cir. 2012) ("If the parties litigate the case under the assumption that a certain law applies, we will assume that that law applies." (citation omitted)).

*3. Collateral Estoppel Under New York Law*

With that, the Court turns to the question at hand. "Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 988 F.3d 634, 642 (2d Cir. 2021) (citation and quotation marks omitted). "[T]he burden of showing that the issue was identical and necessarily decided rests upon the moving party." *Schwartz v. Pub. Adm'r of Bronx Cnty.*, 246 N.E.2d 725, 730 (N.Y. 1969) (alteration added).

At the outset, it bears noting that Defendants have not satisfied their burden to show that under New York law the issues raised by the pleading here are necessary and identical to the ones Judge Kaplan decided. Although Defendants cite cases that they insist share similar facts, Defendants neither lay out the legal standards for necessity and identicality under New York law; nor do they apply those standards to the alleged facts of this case. (*See* Mot. 11–13; Reply 4–5). Certainly, after reading the briefs and hearing the parties' oral arguments, the Court is left uncertain on the issue of necessity.

Defendants argue Plaintiff is estopped by either or both of Judge Kaplan's findings in *Carroll I* and *Carroll II*. (*See generally* Mot.; Reply).[3] According to Defendants, "*Carroll I* necessarily decided that [Plaintiff] cannot state a claim for defamation . . . because it is substantially true that he raped [] Carroll." (Mot. 12 (alterations added)). Yet, as they also note, Judge Kaplan's substantial truth finding was made "in the alternative" to a separate finding.

[3] Defendants do not argue that estoppel arises directly from the jury's verdict. (*See generally* Mot.; Reply). Nor could they because, on its face, the jury's verdict found Plaintiff liable for sexual abuse and not rape, under New York Penal Law. The additional interpretation of this verdict as signifying that Plaintiff committed rape arises from Judge Kaplan's subsequent findings.

*Carroll*, 685 F. Supp. 3d at 277; (*see* Mot. 12). Defendants do not brief the preclusive effect of alternative findings under New York law — which, as it turns out, is a rather complicated question. *See, e.g.*, *Tydings v. Greenfield, Stein & Senior, LLP*, 11 N.Y.3d 195, 199–200 (N.Y. 2008).

Similarly, Defendants argue that Judge Kaplan's *Carroll II* findings estop Plaintiff because "Judge Kaplan specifically found that 'the finding that [Plaintiff] digitally raped [] Carroll was necessary to support the judgment in *Carroll II*." (Mot. 12 (alterations adopted; other alterations added; quoting *Carroll*, 685 F. Supp. 3d at 277)). In his analysis, however, Judge Kaplan was discussing substantial truth, not collateral estoppel. *See Carroll*, 685 F. Supp. 3d at 277. As Defendants also recognize, Judge Kaplan made his findings in "his denial of post-trial motions" related to damages; the conclusions did not disturb the jury's liability findings. (Mot. 12). On the issue of whether findings related to a damages award are "necessary" to the outcome of a case, Defendants offer neither briefing nor argument. (*See generally id.*; Reply).[4]

In any event, regardless of whether the "formal prerequisites" for collateral estoppel are met, the doctrine is not to be "applied automatically[.]" *People v. Fagan*, 66 N.Y.2d 815, 816 (N.Y. 1985) (alteration added; citation omitted); *see also Gilberg v. Barbieri*, 53 N.Y.2d 285, 292 (N.Y. 1981) (explaining that, as a matter of history and necessity, collateral estoppel "can never be rigidly or mechanically applied" (collecting cases)). As the New York Court of Appeals has cautioned:

> The doctrine . . . is a flexible one, and the enumeration of these elements is intended merely as a framework, not a substitute, for case-by-case analysis of the facts and realities. In the end, the fundamental inquiry is whether relitigation should be permitted in a particular case in light of fairness to the parties, conservation of the resources of the court and the litigants, and the societal interests in consistent and

[4] By contrast, Plaintiff ambitiously argues that estoppel can only arise from findings necessary to support "the jury's express findings[.]" (Resp. 11 (alteration added)). He cites no case law suggesting the necessity inquiry is limited to the jury's verdict form, and the Court is not persuaded that it is. (*See generally id.*). Nonetheless, it is Defendants' burden to show that the post-trial findings here were necessary to the case's outcome, and they have not done so.

> accurate results. No rigid rules are possible, because even these factors may vary in relative importance depending on the nature of the proceedings[.]

*Buechel v. Bain*, 766 N.E.2d 914, 919 (N.Y. 2001) (alterations added; quotation marks and citation omitted).

At bottom, collateral estoppel is an "equitable doctrine[.]" *Id.* (alteration added). "The point of the inquiry . . . is not to decide whether the prior determination should be vacated but to decide whether it should be given conclusive effect beyond the case in which it was made[.]" *Gilberg*, 53 N.Y.2d at 292 (alterations added; citation omitted).

With these principles in mind, the Court is not persuaded to bar this action on a collateral estoppel defense. Admittedly, a finding's preclusive effect is not always tied to the finding's factual underpinnings. *See Paramount Pictures Corp. v. Allianz Risk Transfer AG*, 96 N.E.3d 737, 743 (N.Y. 2018) (explaining that collateral estoppel applies "even if [an essential issue] recurs in the context of a different claim" (alteration added; citation omitted)). Nevertheless, in considering Judge Kaplan's findings, the Court is doubly aware that context is key — both because the Court is being asked to apply collateral estoppel, *see Buechel*, 766 N.E.2d at 919 (emphasizing "case-by-case analysis" and "the nature of the proceedings" (quotation marks and citation omitted)); and because it is comparing two different defamation claims, *see Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 705 (Fla. 3d DCA 1999) ("To determine whether a statement is defamatory, it must be considered in the context of the publication." (collecting cases)).

Here, the "facts and realities" of the prior litigation show that Judge Kaplan's findings, however broadly they were phrased, arose while considering a meaningfully distinct context from the "facts and realities" presented in this case given Plaintiff's allegations. *Buechel*, 766 N.E.2d at 919. In *Carroll II*, Judge Kaplan was reviewing a jury's damages award. *See* 683 F. Supp. 3d at 327–28. His analysis necessarily focused on what Carroll had and had not proved at trial, as

well as the harm Carroll experienced from Plaintiff's abuse. *See id.* There was no discussion of how to accurately report on the jury's findings. *See generally id.*

In *Carroll I*, of course, Judge Kaplan confronted a defamation claim. *See* 685 F. Supp. 3d at 275–78. But that defamation claim involved an entirely different set of statements by an entirely different party. *See id.* In his analysis, Judge Kaplan focused on "the substantial truth of [] Carroll's 'rape' accusations"; whether Plaintiff "plausibly [] allege[d] that [] Carroll's statements were not true"; and whether "Carroll's allegedly defamatory statements were substantially true[.]" *Id.* at 277–78 (alterations added).

By contrast, Plaintiff's defamation claims in this case arise from Stephanopoulos's statements, which were not the same as, or even similar to Carroll's. Where Carroll reiterated and relayed her own experience, Stephanopoulos represented that he was describing the jury's verdict (or verdicts). *Compare id.* at 268–70 (describing Carroll's allegedly defamatory statements), *with* (Segment).[5] Judge Kaplan's findings on one set of allegedly defamatory statements "do[] not for all time and in all circumstances insulate [different statements] from similar claims." *Bansbach v. Zinn*, 1 N.Y.3d 1, 11 (N.Y. 2003) (alterations added).

Thus, the Court is not persuaded Judge Kaplan's findings "should be given conclusive effect beyond the case[s] in which [they were] made[.]" *Gilberg*, 53 N.Y.2d at 292 (alterations added; citation omitted). Moreover, "considerations of fairness and efficiency" do not justify the application of collateral estoppel on the basis of findings made in response to a different set of

[5] Defendants insist this is a meaningless distinction, arguing that it is "mere rhetorical sophistry" because "one could just as readily flip that description to characterize this case as being about what [] Stephanopoulos 'believed' the jury had found and the other to be about what [] Carroll said actually happened." (Reply 4 (alterations added)). This is unpersuasive. Again, context is key in defamation cases, *see Cuban Am. Nat'l Found.*, 731 So. 2d at 705–06, and Stephanopoulos gave no indication that he was expressing an opinion or belief about the jury's verdict on his news program (*see generally* Segment).

statements entirely. *Bansbach*, 1 N.Y.3d at 10. Fairness requires that Plaintiff be given the opportunity of pressing a set of substantively different claims.

To be clear, the Court is not reaching the merits of Plaintiff's claims. Defendants may very well convince a reasonable factfinder to follow Judge Kaplan's reasoning or to adopt other reasoning leading to the conclusion that Stephanopoulos's statements were not defamatory. That is not the issue before the Court now. At this stage, the Court only decides that Defendants have not satisfied their burden to show collateral estoppel should apply, and that collateral estoppel would not be fairly applied in these circumstances.

**B. Substantial Truth**

Defendants' next argument is that Plaintiff's claims can be dismissed because Stephanopoulos's statements were "substantially true." (Mot. 13–16). Plaintiff disagrees, arguing that this determination should not be made on a motion to dismiss. (*See* Resp. 13–16).

"Under the substantial truth doctrine, a statement does not have to be perfectly accurate if the 'gist' or the 'sting' of the statement is true." *Klayman v. Jud. Watch, Inc.*, 22 F. Supp. 3d 1240, 1253 (S.D. Fla. 2014) (quotation marks omitted; quoting *Cuban Am. Nat'l Found.*, 731 So. 2d at 706–07). The initial inquiry under the doctrine is "[w]hether particular statements may have a defamatory meaning"; this raises "an issue of law for the court." *Clark v. Clark*, No. 93-47, 1993 WL 528464, at *3 (Fla. 4th Cir. Ct. June 22, 1993) (alterations added; quotation marks and citations omitted).

In determining whether a statement may have a defamatory meaning, "the court must examine it in the context in which it was published." *Fidelity Warranty Servs., Inc. v. Firstate Ins. Holdings, Inc.*, 74 So. 3d 506, 515 (Fla. 4th DCA 2011) (quotation marks and citation omitted). Similarly, "the court should consider all of the circumstances surrounding the statement[.]" *Id.*

(alteration added; quotation marks and citation omitted).  If the statement is revealed to be "confusing or ambiguous, raising the question of whether readers might have read it in a defamatory way[,]" a jury question is presented.  *Clark*, 1993 WL 528464, at *3 (alteration added; citation omitted).

Plaintiff argues the "gist" and "sting" of a statement raise factual issues inappropriate for resolution on a motion to dismiss.  (*See* Resp. 13–16).  To this, Defendants cite several cases in which courts dismissed claims precisely because an initial review revealed the statements at issue were true or substantially true.  *See, e.g.*, *Clark*, 1993 WL 528464, at *2–3; *Moore v. Lowe*, 591 F. Supp. 3d 1087, 1109 (N.D. Ala. 2022); *Nanji v. Nat'l Geographic Soc'y*, 403 F. Supp. 2d 425, 431 (D. Md. 2005).

But Defendants' cited cases stand only for the proposition that a court *can* dismiss a complaint based on substantial truth if no factual questions are present.  Where a court first determines the statements are susceptible to a defamatory interpretation, factual questions arise that should be resolved by the trier of fact — here, a jury.  *See, e.g.*, *Turner v. Wells*, 879 F.3d 1254, 1269 (11th Cir. 2018) ("Whether [a] publication is defamatory becomes an issue of fact for the jury only where the publication is susceptible of two reasonable interpretations, one of which is defamatory." (alteration added; citations omitted)); *Keller v. Miami Herald Pub. Co.*, 778 F.2d 711, 714–15 (11th Cir. 1985) ("Florida law requires as part of a successful libel suit that the statement at issue be reasonably capable of a defamatory interpretation; this determination is to be made by the trial judge in the first instance, prior to the jury's evaluation of whether the statement was in fact understood as defamatory." (citations and footnote call number omitted)).[6]

---

[6]  (*See also* Resp. 14 (citing *Maletta v. Woodle*, No. 20-cv-1004, 2022 WL 2818108, at *3 (M.D. Fla. July 19, 2022) ("*Where a communication is ambiguous and reasonably susceptible to defamatory meaning,* it is for the trier of fact to decide whether the communication was understood in the defamatory sense." (emphasis added; quotation marks and citation omitted)); *Pep Boys v. New World Communications of*

In determining whether Stephanopoulos's statements are susceptible to a defamatory interpretation, the Court is mindful of the specific setting in which the statements were made. *See Fidelity Warranty Servs., Inc.*, 74 So. 3d at 515 (requiring a reviewing court to consider a statement's "context" and "circumstances" (quotation marks and citations omitted)). Here, Stephanopoulos was not describing Plaintiff's actions or Carroll's testimony against him; he was describing the jury's verdict.[7]

This distinguishes several of the cases Defendants cite. (*See* Mot. 14). In those cases, courts concluded it is substantially true for publications to describe forced sexual contact as rape when reporting on the events themselves. *See, e.g.*, *Moore*, 591 F. Supp. 3d at 1108–09 (concluding that it was substantially true to report that the plaintiff was accused of attempted rape, even if the statement would lead readers to believe he was accused of "forced vaginal sex rather than forced oral sex"); *Nanji*, 403 F. Supp. 2d at 431–32 (concluding it was not inaccurate to "use [] the term 'rape' as shorthand for sexual misconduct" when recounting "the abundance of sexual misconduct evidence in the public records" (alteration added)).

More to the point, Defendants also cite cases finding substantial truth can arise when describing charges of forced sexual contact as charges for rape. (*See* Mot. 14). Yet, these cases all involved underlying law that seemingly did not distinguish between rape and other forced sex crimes. *See, e.g.*, *Simonson v. United Press Int'l, Inc.*, 654 F.2d 478, 481 (7th Cir. 1981) (noting "that 'rape' as defined by common usage is incorporated into second-degree sexual assault under

---

*Tampa, Inc.*, 711 So. 2d 1325, 1328 (Fla. 2d DCA 1998) (Questions of falsity and interpretation "should be left for a jury to determine *where the communication is ambiguous and is reasonably susceptible of a defamatory meaning*." (emphasis added; citations omitted)).

[7] Some of Defendants' briefing on the substantial truth issue includes arguments concerning the fair report privilege. (*See, e.g.*, Mot. 14; Reply 7). The Court takes up those arguments next and separately.

Wisconsin law" (footnote call number omitted)); *Hovey v. Iowa State Daily Pub. Bd., Inc.*, 372 N.W.2d 253, 256 (Iowa 1985) (citing *Simonson* and noting that "[t]he definition of the crime of rape provided by the criminal law of Iowa was subsumed into the crime of sexual abuse with the adoption of the new Iowa Criminal Code" (alteration added)); *Moore*, 591 F. Supp. 3d at 1108–09 (noting, without addressing, the defendant's argument that forced oral sex constituted rape under Alabama law).

Here, of course, New York *has* opted to separate out a crime of rape; and Stephanopoulos's statements dealt not with the public's usage of that term, but the jury's consideration of it during a formal legal proceeding. Thus, while Defendants' cited cases are compelling, they are not directly responsive to the issue of whether it is substantially true to say a jury (or juries) found Plaintiff liable for rape by a jury *despite* the jury's verdict expressly finding he was *not* liable for rape under New York Penal Law.

To the contrary, one of Defendants' cited cases suggests Florida courts do not consider legal definitions to be mere formalities in this context. *See Clark*, 1993 WL 528464, at *3 (determining that use of the term "rape" to describe an arrest for sexual battery "*in the absence of formal legal charges* is [] not defamatory" (alteration and emphasis added)). The Court thus cannot definitively say it was substantially true to report on the (single) jury's verdict in *Carroll II* — which did not find Plaintiff liable for rape as that term is defined under New York law — as finding Plaintiff liable for rape.

Certainly, Defendants' theory has one credible supporter: Judge Kaplan, who repeatedly determined that the jury's verdict — regardless of its finding that no rape as defined by New York's Penal Law had occurred — amounted to a finding of liability for rape as rape is commonly understood. *See Carroll*, 683 F. Supp. 3d at 306–07; *Carroll*, 685 F. Supp. 3d at 275; *Carroll*,

2024 WL 97359, at *6 (recounting the jury's verdict and concluding that "the fact that [Plaintiff] sexually abused — indeed, raped — [] Carroll has been conclusively established" (alterations added)). As explained, however, Judge Kaplan's findings do not have preclusive effect here. The Court is thus only persuaded that substantial truth would arise if the jury's verdict of "No" (Compl. 7) was presented in combination with Judge Kaplan's additional findings. The Court considers that aspect of Defendants' arguments now, considering the allegedly defamatory segment in its entirety and in context, from the perspective of a reasonable viewer. *See Keller*, 778 F.2d at 715–16 (assessing an allegedly defamatory cartoon from the perspective of "how a reasonable individual would have interpreted it" and "in the light of all the surrounding circumstances"); *Turner*, 879 F.3d at 1263 ("When [assessing whether a statement is defamatory], a court should construe statements in their totality, with attention given to any cautionary terms used by the publisher in qualifying the statement." (alteration added; citing *Keller*, 778 F.2d at 717)).

Under that standard, a reasonable jury could interpret Stephanopoulos's statements as defamatory. Stephanopoulos's exchange with Mace lasted about ten minutes, during which Stephanopoulos *stated ten times that a jury — or juries — had found Plaintiff liable for rape*. (*See generally* Segment). In fact, of course, the *Carroll II* jury did not find Plaintiff liable for rape under New York Penal Law; it was Judge Kaplan who determined that the jury's verdict amounted to liability for rape. Yet, none of these particularities make it into the segment such that a reasonable viewer would have indisputably understood what Defendants now brief in detail. (*See generally id.*).

Instead, at one point, Stephanopoulos asked to display a screenshot of a newspaper article about Judge Kaplan's findings and stated that "the Judge affirmed that it was, in fact, rape."[8] (*Id.*

[8] Plaintiff argues that the Court cannot rely on the newspaper article because it is outside the Complaint and, in any event, hearsay. (*See* Resp. 5–6). The Court does not rely on the article for the truth of its

at 6:20–6:29). This ostensible "clarification" occurred late in the segment and did not include any further explanation; viewers were simply treated to a ten-second glimpse of a headline and partially blurred text, with no mention of Judge Kaplan by name or any description of why his description of the verdict differed from the jury's actual verdict as recounted by Mace. (*See id.*). On this record, the Court finds that the segment is, at least, "confusing or ambiguous" and susceptible to defamatory interpretation. *Clark*, 1993 WL 528464, at *3 (citation omitted).

Once again, the Court does not find that a reasonable jury must — or even is likely to — conclude Stephanopoulos's statements were defamatory. A jury may, upon viewing the segment, find there was sufficient context. A jury may also conclude Plaintiff fails to establish other elements of his claim. *See Readon v. WPLG, LLC*, 317 So. 3d 1229, 1235 (Fla. 3d DCA 2021) ("The First Amendment safeguards publishers from defamation suits brought by public figures unless the publisher acts with actual malice." (citations omitted)). But a reasonable jury *could* conclude Plaintiff was defamed and, as a result, dismissal is inappropriate.

**C. Fair Report Privilege**

Defendants' final argument is that they are protected by Florida's fair report privilege. (*See* Mot. 16–18; Reply 7–9). Florida's fair report privilege grants news organizations a "qualified privilege 'to report accurately on information received from government officials.'" *Larreal v. Telemundo of Fla., LLC*, 489 F. Supp. 3d 1309, 1318 (S.D. Fla. 2020) (quoting *Rasmussen v. Collier Cnty. Publ'g Co.*, 946 So. 2d 567, 570–71 (Fla. 2d DCA 2006)). "This qualification simply requires the publication or broadcast be a substantially correct account of information contained in public records or from a government source." *Id.* at 1319 (emphasis omitted; collecting cases).

---

contents; nor does the Court consider the article independently. Rather, the Court simply takes note of the fact that the video — which Plaintiff concedes can be considered — provided viewers the headline of the article for context. (*See id.*).

Relevant here, reporters "need not describe legal proceedings in technically precise language." *Rasmussen*, 946 So. 2d at 570 (citations omitted).

Against this backdrop, Defendants argue Stephanopoulos's statements both "accurately describe Judge Kaplan's . . . Order and the jury verdict in the *Carroll* [l]itigations." (Mot. 17 (alterations and emphasis added)). Plaintiff insists the statements were "plainly incorrect and misleading" because of "substantial inaccuracies and omissions[.]" (Resp. 18 (alteration added)). The Court is not persuaded that the privilege applies.

Defendants are correct that the privilege presents a low bar, and it may be considered on a motion to dismiss. (*See* Mot. 17); *cf. Huszar v. Gross*, 468 So. 2d 512, 516 (Fla. 1st DCA 1985) ("[N]umerous cases . . . confirm that trial courts, upon motions to dismiss, routinely make decisions as to whether a privilege applies to protect an allegedly defamatory statement." (alterations added; collecting cases)). They are also correct, however, that the privilege is "[m]uch like the doctrine of substantial truth" (Mot. 17 (alteration added)), and they share similar legal standards (*see* Reply 7). For the fair report privilege to apply, a report must have been "substantially correct[.]" *Larreal*, 489 F. Supp. 3d at 1319 (alteration added; emphasis omitted). Unsurprisingly, the same flaws in Defendants' substantial truth arguments undermine their fair report privilege arguments.

First, Defendants argue Stephanopoulos's statements "were *literally* accurate" because they, "in essence, merely repeat[ed] what Judge Kaplan had twice determined was the outcome of the *Carroll II* trial." (Reply 8 (alteration added; emphasis in original; footnote call number omitted)). As explained, it is not clear from the broadcast itself that Stephanopoulos was, in fact, reporting on Judge Kaplan's findings, rather than the jury's (or juries') verdict(s). The Court is

thus not persuaded that Stephanopoulos's statements can be described as a "substantially correct" account of those proceedings.

Undeterred, Defendants next assert that Stephanopoulos's statements were also a "substantially correct" recounting of the jury's verdict itself. (*See* Mot. 18). For this, they rely broadly on their previous argument that "mere technical distinctions — like that between sexual assault and rape (both felonies in New York) — cannot defeat the privilege." (*Id.* (citation omitted)). Again, the Court is not persuaded that such broad latitude exists under Florida law. Certainly, as here, public accounts of sexual assault may align with the commonly used definition of rape. But Stephanopoulos was not reporting on statements by Carroll or other commentators; rather, he was discussing the outcome of a legal proceeding in which the jury expressly rejected a charge of rape as defined by New York Penal Law.

True, the fair report privilege absolves the media of the burden to be "technically precise" in their descriptions of legal proceedings. *Rasmussen*, 946 So. 2d at 570 (citations omitted). It also relieves the media of the obligation "to include additional information that would portray the Plaintiff in a more favorable light." *Larreal*, 489 F. Supp. 3d at 1320 (quotation marks and citation omitted). But the privilege does not protect media where the omission of important context renders a report misleading. *See Dershowitz v. Cable News Network, Inc.*, 541 F. Supp. 3d 1354, 1365 (S.D. Fla. 2021) (rejecting the application of the fair report privilege, where playing a partial video clip, as opposed to the full video, "presented an official proceeding in a misleading manner"). Here, a reasonable viewer — especially one who was aware that Plaintiff had been charged with rape under New York Penal Law — could have been misled by Stephanopoulos's statements, which did not include the jury's original findings and only fleetingly referenced the interpretation Judge Kaplan later offered.

At bottom, Defendants have not met their burden of proving the fair report privilege applies. *See Kieffer v. Atheists of Fla., Inc.*, 269 So. 3d 656, 660 (Fla. 2d DCA 2019) ("Qualified privilege is an affirmative defense, and the burden of proving it rests with the defendant." (citation omitted)). Any remaining questions as to the reasonableness of Stephanopoulos's statements are not for resolution on a motion to dismiss. *See Dershowitz*, 541 F. Supp. 3d at 1366 (considering an argument that the defendant had a "reasonable . . . belief" that its report was accurate and explaining that this "is an argument that [it] may present to a jury[,]" rather than one justifying application of the fair report privilege (alterations added)).

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendants, American Broadcasting Companies, Inc.; ABC News, Inc.; and George Stephanopoulos's Motion to Dismiss **[ECF No. 24]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 24th day of July, 2024.

Cecilia M. Altonaga

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc: counsel of record