UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA, OCALA DIVISION

------------------------------------------------------------------- x
: 
LAURA LOOMER, :
:
                *Plaintiff*, :
:
     - against - :    Case No.: 5:24-cv-00625-JSM-PRL
:
BILL MAHER and HOME BOX OFFICE, :
INC., :
:
                *Defendants*. :
:
------------------------------------------------------------------- x

### DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF MOTION FOR A PROTECTIVE ORDER

In her opposition to Defendant's motion for confidentiality, Plaintiff Laura Loomer admits—nay, boasts—that she does indeed intend not only to distribute portions of the video of Defendant Bill Maher's deposition to the public, but also to fundraise off of it. ECF No. 63 at 10. In fact, Plaintiff has repeatedly linked to her "Lawfare Fund" in social media posts about Mr. Maher's deposition and this confidentiality dispute. Most recently, on April 17, she misleadingly posted:

> Today, @billmaher 's attorney Kate Bolger from the openly anti-Trump law firm Davis Wright Tremaine @DWTLaw sent a correspondence to my lawyer, informing us that they are asking the court to SEAL Bill Maher's video deposition FOREVER.
> They obviously don't want Bill Maher's behavior and the truth to come out or the public to see. Maher's anti-Trump lawyers have been and continue trying to run up the costs, which is why I need your support to cover the cost of this litigation.
> Thank you!
> Support my legal fund here: 👇🏻
> https://givesendgo.com/LoomerLawfare

@LauraLoomer (Apr. 17, 2025),

1

https://x.com/LauraLoomer/status/1912987128004514295. Her "Lawfare Fund" page in turn makes clear that "[t]his isn't just about one case," but about building her "legal war chest" to fund (1) "Legal Fees" "to defend against defamation claims brought against her[1]; (2) "Court Costs" for "these high-stakes battles"; (3) other "Litigation-Related Expenses"; (4) "Hiring skilled private investigators and researchers"; (5) "Research and Discovery . . . to expose the full scope of these Democrat lawfare networks," including through "independent digging and investigative journalism"; and (6) "Public Awareness," i.e., "Amplifying Laura's findings through media, X posts, and articles." Laura Loomer Lawfare Fund, https://www.givesendgo.com/LoomerLawfare. In other words, Plaintiff is exploiting *this* litigation to fund entirely separate litigation against her as well as her day-to-day activities as a social media commentator and purported journalist.

Because, as the Supreme Court has said, the "sole purpose of [discovery is to] assist[] in the preparation and trial . . . of litigated disputes," *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984), Plaintiff's record of discovery abuse is reason alone to grant Defendants' motion.

But that is not the only reason to do so. Plaintiffs' opposition also misstates the law and misrepresents the manner in which both Plaintiff and her counsel, Larry Klayman, conducted themselves in the deposition: They used the

---

[1] *See also* @LauraLoomer (Mar. 19. 2025), https://x.com/elonmusk/status/1902512531320529381 (explaining that she received a legal threat letter from the Hopewell Fund and Sixteen Thirty Fund over her statements about the funding of Tesla protests).

deposition to harass and patronize Mr. Maher and now seek to profit from its distribution. This Court should grant Defendants' motion, designate the video deposition and portions of the transcript as confidential, and direct that the deposition be used only for purposes of the litigation.

*First*, for all Plaintiff's insistence that the deposition video should be made public, she does not appear to dispute Defendants' request that the Court keep confidential those portions of the deposition that 1) reveal Mr. Maher's confidential salary, 2) reveal the identities of Mr. Maher's business and professional managers, 3) discuss unrelated litigation in which Mr. Maher was allegedly involved, or 4) contain irrelevant, intrusive, and harassing questions about Mr. Maher's private life, religious beliefs, and relationships. To the contrary, she represents that she is "open to sealing and/or holding confidential any portions of Defendant Maher's deposition—whether video or transcript—that merit such treatment" and that she "stands by" her prior agreement to keep Mr. Maher's salary confidential. Accordingly, any objection to Defendants' request to keep confidential those specific portions of the deposition highlighted in ECF No. 58 should be deemed forfeited, *see, e.g.*, *Edmunds v. Asurion, LLC*, 2024 WL 620932, at *14 (S.D. Fla. Feb. 14, 2024); *D.N. by Jessica N. v. DeSantis*, 701 F. Supp. 3d 1244, 1268 (S.D. Fla. 2023), and the unredacted transcript and video sealed accordingly.

*Second*, Plaintiff misstates First Amendment right of access law. As the United States Supreme Court has specifically held, there is no public right of

3

access to discovery materials not tethered to any substantive motion. *See Seattle Times Co.*, 467 U.S. at 32-34 (depositions "were not open to the public at common law"); *see also United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) (holding that discovery "is essentially a private process" and discovery materials are "not 'judicial records'" and affirming denial of public access); *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987) (similar); *see also Gannett Co. v. DePasquale*, 433 U.S. 368, 396 (1979) (Burger, C.J., concurring) ("[I]t has never occurred to anyone, so far as I am aware, that a pretrial deposition . . . w[as] other than wholly private to the litigants.").

In fact, the very cases Plaintiff cites underscore the "big distinction" between discovery materials like depositions, to which no public right of access attaches, and judicial records, to which the right does attach and as to which sealing must be justified. *United States v. Bradley*, 2007 WL 1703232, at *1 (S.D. Ga. June 11, 2007) (cited in ECF No 63 at 13, 19); *see id.* at *2 (explaining that "there is a principled reason to treat" "[p]rivate discovery," which "is exchanged between parties," "differently than a motion, which typically invokes a court's powers and can precipitate, if not affect, a decision"); *Chi. Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1312 (11th Cir. 2001) (cited in ECF No. 63 at 7) ("no common-law right of access" to discovery materials, which "are neither public documents nor judicial records"); *Clark v. FDS Bank*, 2018 WL 6503583, at *1 (M.D. Fla. Dec. 11, 2018) (cited in ECF No. 63 at 8) (emphasizing that "the parties to a lawsuit 'have protectable privacy interests in confidential

4

information disclosed through discovery'" and explaining that the public's right of access arises only when the document becomes a judicial record); *Boullosa v. Equifax Info. Servs., LLC*, 2024 WL 3673566, at *2 (M.D. Fla. Aug. 6, 2024) (cited in ECF No. 63 at 8, 12-13) (distinguishing between "discovery" and "material [offered] in support of [the parties'] respective dispositive motions," to which the public has a right of access); *Ocasio v. C.R. Bard, Inc.*, 2021 WL 2477259, at *1 (M.D. Fla. June 17, 2021) (cited in ECF No. 63 at 12-13) (distinguishing between information intended to be confidential "through the discovery and pretrial processes" pursuant to a protective order and deposition transcripts intended to be played at trial).[2]

*Third*, Plaintiff did not even address those cases in which courts recognized that videos pose particular risks and warrant special consideration. *See* ECF No. 57 at 20-22. Special consideration is warranted because videos "can be cut and spliced and used as 'sound-bites,'" *Stern v. Cosby*, 529 F. Supp. 2d 417, 422 (S.D.N.Y. 2007), or otherwise exploited for "commercial gain or prurient interest in exposing the details of a celebrity's personal life," *Low v. Trump Univ., LLC*, 2016 WL 4098195, at *6 (S.D. Cal. Aug. 2, 2016). The risks are especially heightened here as (a) the deposition is of a prominent public figure, *see Stern*,

---

[2] Two of Plaintiff's cited cases sealed deposition transcripts that were submitted as evidence in support of dispositive motions—i.e., transcripts that *were* judicial records. *See Harborview Realty, Inc. v. Fifth Third Bank, Nat'l Ass'n*, 2023 WL 7166661, at *1 (M.D. Fla. Oct. 31, 2023) (cited in ECF No. 63 at 7) (deposition transcripts filed as exhibits to motion for summary judgment ordered sealed); *Clark*, 2018 WL 6503583, at *2 (deposition transcript filed in support of "potentially case dispositive" motion to dismiss for lack of prosecution ordered sealed).

5

529 F. Supp. 2d at 422-23; *Paisley Park Enters., Inc. v. Uptown Prods.*, 54 F. Supp. 2d 347, 348-49 (S.D.N.Y. 1999); (b) Plaintiff has admitted she wants to exploit the video for fundraising and other purposes, *see supra*; and (c) many of the questions posed are irrelevant to any claim or defense and simply designed to intimidate and harass.

*Fourth*, Plaintiff's claim that Mr. Klayman engaged in no inappropriate questioning is false. Mr. Klayman asked Mr. Maher about his supposedly "leftist ideology and lifestyle" and "atheist" beliefs, which Plaintiff disparagingly says shows "his complete lack of values," ECF No. 63 at 15-16, as well as highly inappropriate questions of a sexual nature, Tr. at 49:23-25, 139:22-140:6, 174:11-13. Such questions have no bearing on "actual malice," which is a term of art that refers to subjective knowledge of falsity, *contra* ECF No. 63 at 15-16; they were clearly designed to elicit click-bait for Ms. Loomer's supporters. Ms. Loomer openly "laugh[ed] at [Maher]" when he was asked these questions, and commented on the record "It's just funny, you know. You can dish it out, but you can't take it." Tr. at 174:21-175:1. Plaintiff and her counsel should not be rewarded for their harassing questions with social media likes and fundraising contributions.

*Finally*, contrary to Plaintiff's assertion that Defendants seek a "blanket confidentiality agreement," ECF No. 63 at 6, Defendants proposed back in February a standard confidentiality stipulation that would permit both parties to designate certain items as confidential and to challenge the other party's

6

designation of confidentiality. Defendants re-sent the proposed stipulation several times and invited Plaintiff to propose any edits, which Plaintiff has not done. Plaintiff also falsely states that Defendants "failed to identify with the requisite specificity which portions of the deposition involve confidentiality." ECF No. 63 at 13. Exhibit B to Defendants' motion to seal is "a version of the transcript with highlighting indicating proposed redactions." ECF No. 58 at 3.

In short, Plaintiff seeks to exploit and profit off of the harassing and irrelevant questions Maher was asked by essentially selling the video of his deposition. That is not the proper purpose of discovery materials, particularly during the discovery phase of this litigation. This Court should, therefore, grant Defendants' requested protective order, designate the video deposition and portions of the transcript as confidential, and direct that the deposition be used only for purposes of the litigation.

Dated: May 16, 2025

Respectfully submitted,

*/s/ Rachel E. Fugate*

**Davis Wright Tremaine LLP**
Katherine M. Bolger (*pro hac vice*)
Alexandra Perloff-Giles (*pro hac vice*)
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Tel: (212) 489-8230
katebolger@dwt.com
alexandraperloffgiles@dwt.com

**Shullman Fugate PLLC**
Rachel E. Fugate (Bar No. 144029)
100 South Ashley Drive, Suite 600
Tampa, FL 33602
Tel: (813) 935-5098
rfugate@shullmanfugate.com

Yelan Escalona (Bar No. 1031564)
201 S. Biscayne Blvd. 28th Floor
Miami, FL 33131
Tel: (305) 928-2429
yescalona@shullmanfugate.com

*Counsel for Defendants*