UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA, OCALA DIVISION

---------------------------------------------------------x
LAURA LOOMER,

          *Plaintiff*,

    - against -

BILL MAHER and HOME BOX OFFICE, INC.,

          *Defendants*.
---------------------------------------------------------x

Case No.: 5:24-cv-00625-JSM-PRL

### DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL AND FOR ATTORNEY'S FEES AND COSTS AND CROSS-MOTION FOR A PROTECTIVE ORDER

    This Court should deny Plaintiff Laura Loomer's motion to compel and grant Defendants Bill Maher and Home Box Office, Inc.'s motion for a protective order. Defendants have, for over three months, agreed to produce documents once the parties enter into, and this Court so-orders, a confidentiality order providing that 1) documents and information produced by Defendants will be used for litigation purposes only, and 2) the parties can designate particular documents as confidential. Defendants tried to simplify the process by proposing a confidentiality agreement (that, contrary to Plaintiff's representation, contemplates document-by-document rather than blanket designation) and repeatedly inviting comments or edits on that draft. When Plaintiff obstinately refused to propose edits, Defendants invited Plaintiff to make her own proposal. Plaintiff refused that invitation too, preferring—despite all the faux hand-wringing about "bogging the Court down with unnecessary motions"—to file this motion.

1

More concerningly, Plaintiff appears to agree that some measure of confidentiality is required, having stamped certain documents Attorney Eyes Only and asked Defendants to keep them confidential. Plaintiff will nonetheless not agree to Defendants' proposed protective order because she wants the freedom to publicize discovery material. The desire of Plaintiff and her counsel to fundraise off of Defendants' discovery materials is not a legitimate litigation purpose.

This Court should deny Plaintiff's motion to compel and, instead, enter a protective order in the form attached as Exhibit 9 that permits the parties to designate documents as confidential, subject to the other side's ability to challenge such designation, and prohibiting documents from being used for non-litigation purposes.

## BACKGROUND

On January 16, the Court entered a case management and scheduling order setting September 2 as the close of discovery. ECF No. 40. On February 13—before Defendants' responses and objections to Plaintiff's requests for production were due—Plaintiff unilaterally noticed the depositions of Bill Maher and HBO's corporate representative for early March, forcing Defendants to obtain a protective order to reschedule the depositions at a mutually convenient time. *See* ECF No. 48. Bill Maher was ultimately deposed on April 4, and HBO's corporate representative, Nina Rosenstein, was deposed on May 7.

### I. Defendants Propose A Standard Protective Order And Plaintiff Refuses To Discuss It

2

On February 27, well before Mr. Maher's deposition, Defendants sent a proposed confidentiality stipulation governing the use of discovery materials.[1] *See* Ex. 1. Like all standard protective orders, the draft stipulation provides that discovery materials be used for the purposes of this litigation only. *See id*. § 6. In addition, it provides a mechanism to designate certain documents confidential, but is not, as Plaintiff claims, a blanket protective order. Specifically, Section 3 of the draft stipulation provided: "Counsel for any party may designate any Discovery Material, in whole or in part, as Confidential if counsel determines, in good faith, that such designation is necessary to protect the interests of the party in information that is proprietary, personal or otherwise sensitive non-public information, including but not limited to unpublished newsgathering materials." *Id*. In other words, the parties cannot simply designate every document produced as Confidential. Section 4 also provided for designation of any Highly Confidential / Attorney's Eyes Only discovery material, "if counsel determines, in good faith, that such designation is necessary to protect the interests of the client in information that is strategic, proprietary, financial, a trade secret or otherwise commercially sensitive non-public information, or other similar information that

---

[1] Defendants are aware, as Plaintiff's counsel Larry Klayman is so fond of pointing out, that they are represented by a relatively "large law firm[]," while Mr. Klayman is a "smaller practitioner[]." ECF No. 71 at 2. For that reason, Defendants undertook the work and expense of preparing the draft confidentiality stipulation, which the plaintiff to a lawsuit, who after all chose to be in court, would ordinarily be expected to prepare.

3

is substantially likely to cause injury to the commercial, financial, strategic, or business interests of such producing party or its employees, customers, or clients if disclosed." *Id.* And Section 7 discussed procedures in the event of challenges to another party's designation of confidentiality. *Id.*

Counsel for Defendants explained in the cover note accompanying the draft confidentiality stipulation:

> For your convenience and in anticipation of the parties beginning to produce documents, I am attaching here a draft confidentiality stipulation. The terms are pretty standard and of course protect all parties equally so I am hoping we can mutually agree to these terms and avoid motion practice on a protective order, which would only prolong the production of documents. We are of course happy to discuss or to consider any edits you may have.

ECF No. 57-4. In noting that disagreement over the terms of a confidentiality stipulation could "prolong the production of documents," Defendants made clear that they would produce documents only with an agreement in place. Mr. Klayman responded that same day, promising he would "look at the protective order." *Id.*

In the leadup to Mr. Maher's deposition, Defendants pressed Plaintiff for a response on the confidentiality stipulation on March 25, and following up on March 26 to underscore that "Defendants will not produce documents without a confidentiality agreement in place." ECF No. 57-5. On March 28, Defendants tried yet again, informing Plaintiff that "We have a production of documents responsive to your requests ready to be produced to you today." ECF No. 57-6 at 2. Plaintiff still refused to discuss or negotiate about the Protective Order and instead, on March 28, Mr. Klayman informed Defendants that "Ms. Loomer will proceed without the documents at this time." *Id.*

4

Always looking to raise funds off this litigation, that same day Loomer tweeted: "Today, Bill Maher's lawyers contacted my lawyer and begged for my lawyer and I to keep all of their documents pertaining to this lawsuit CONFIDENTIAL. That shows you how scared they are. Guess what? I'm not agreeing to keep the documents confidential because this is about a public defamation lawsuit." @LauraLoomer, X (Mar. 26, 2025), https://x.com/LauraLoomer/status/1905088636292333611. Plaintiff's counsel chose to forego the Defendants' documents, and Mr. Maher's deposition thus took place as planned on April 4.

At the end of the deposition, Mr. Klayman said he would "adjourn the deposition" and "reserve all the time that I haven't" ECF No. 58-1 ("Maher Depo. Tr.") at 222:3-12. Counsel for Defendants responded: "[Y]ou may ask Mr. Maher any question. He is here. I have not instructed him to not answer a question on the basis of confidentiality. . . . This is your time. . . . We're not producing Mr. Maher again. This is the time you have now with Mr. Maher. Please ask him any questions you have and he will answer them. But we are here today and this is the only time we will be here with Mr. Maher. He is right here." *Id.* at 222:13-25; *see also id.* at 223:22-24 ("Mr. Maher is not coming back for a deposition. You may ask him any question you have."); *id.* at 224:1 ("He is right here.").

## II. Subsequent Efforts To Negotiate A Confidentiality Agreement

After the deposition, Plaintiff made no further requests for HBO documents until May 1, when Mr. Klayman emailed for the first time, "demand[ing] that

5

documents be produced . . . by cob tomorrow"—notwithstanding that Plaintiff had herself not produced a single document and had blown past the many extensions Defendants had agreed to. Ex. 2.

In response, Defendants again sent the draft confidentiality stipulation and reiterated what "ha[d] been clear since February 27 – Defendants will not produce documents until after the entry of a Protective Order limiting the use of those documents to this litigation and placing additional limits on the use of documents designated confidential." *Id.* The parties met and conferred the following day, on May 2. On that call, Defendants again invited comments on the draft stipulation or invited Plaintiff to propose her own. Plaintiff's counsel asked Defendants to send the draft again, which Defendants did that same day, inviting Plaintiff to "let me know your comments, if any." Ex. 3. In that same email, Defendants asked Plaintiff to confirm that she would keep the deposition transcript and video of HBO's 30(b)(6) witness "confidential pending a decision on Defendants' motion for a protective order regarding the deposition of Bill Maher, consistent with the court's provisional order on that motion, *see* ECF No. 59, and then subject to the terms of any final order on that motion." *Id*. Defendants concluded:

> Finally, and also for the avoidance of doubt, because we have told you since February that Defendants will not produce documents absent a protective order and you refused to negotiate with us regarding its scope (and, in fact, specifically told me that you would continue to with Mr. Maher's deposition without documents), I need to reiterate that neither Mr. Maher nor any representative of HBO (should you choose to proceed without documents) will appear for more than one deposition, nor are you entitled to leave any depositions "open" as you have previously suggested. You already elected to proceed with Mr. Maher without documents so that deposition is over. If you

would prefer to postpone the HBO witness deposition currently scheduled for next week until after the document issue is resolved, we are fine with that; otherwise if you prefer to proceed as scheduled without documents that is your prerogative, but you will not get a second bite at the apple with that witness.

*Id.* Plaintiff did not send comments on the draft confidentiality stipulation and did not confirm that the deposition transcript and video of HBO's 30(b)(6) witness would be kept confidential and not used for non-litigation purposes, consistent with the Court's provisional order relating to Mr. Maher's deposition. Plaintiff proceeded with the deposition of Nina Rosenstein, HBO's corporate representative designated to testify on Topics #1-8 of Plaintiff's 30(b)(6) notice, on May 7. *Id.*

On May 15, Plaintiff made her first production of a small number of documents in response to Defendants' February 13 requests for production. That production consisted almost entirely of (1) Plaintiff's publicly available posts on X and (2) publicly available news articles from the New York Post, Newsweek, the Daily Mail, and other outlets. The only non-public documents included in that production were Ms. Loomer's CV, a cover letter, and an email from her expressing interest in a role in the Trump Administration. (The conspicuous deficiencies with Plaintiff's production are the subject of a separate motion.) Plaintiff's letter accompanying her document production stated:

> Plaintiff is providing documents while Defendants have provided none to date. There is no reason . . . that you cannot provide them to us in confidence to Plaintiff [sic] subject to Defendants' Motion for Protective Order, which is currently being litigated. We will keep them confidential subject to a dispositive ruling, and will adhere to any court order, subject to any appeal. Please therefore provide the Defendants' documents to us and we will honor any designation of confidentiality, subject to either a mutually agreeable negotiated solution or court intervention should this prove necessary.

7

> Hopefully Court intervention will not prove necessary, as we should try not to waste and overload the Court's time and resources with motions practice.

The letter also stated that Plaintiff would be producing her tax returns in the next few days and claimed confidentiality in those returns. Ex. 4.

Optimistic that Plaintiff now saw the virtues of a mutually agreed confidentiality order and was prepared to enter into one, Defendants responded the next day, on May 16:

> We were pleased to read that you are now open to "honor[ing] any designation of confidentiality, subject to either a mutually agreeable negotiated solution or court intervention should this prove necessary." As you suggest by your request that we keep Ms. Loomer's tax returns confidential (which we agree to do), a confidentiality agreement is in the mutual interest of both parties.
>
> I am therefore attaching again here the confidentiality stipulation that we initially proposed on February 27 and that I asked for your comments on, including by email March 25 and March 26 and when we conferred by phone on May 2. My clients are happy to consider any redlines you may have so that we can hopefully reach agreement.

Ex. 5. Plaintiff responded that Defendants' "proposed stipulation is too broad and unnecessary and calculated only to run up the cost in time and expense to Ms. Loomer and burden the court with a deluge of discovery motions." *Id.*

On the morning of May 19, Defendants tried yet again, reattaching the proposed confidentiality stipulation and noting that "[t]o date, you have rejected our proposal but have made no counter proposal." Ex. 6. Defendants "ask[ed] that [Plaintiff] make a proposal for us to evaluate" and stated that any agreement "must contain four important components: 1. The agreement must state that all documents and testimony are to be used for the purpose of this litigation only and provide for destruction of all discovery materials after the end of this litigation. 2.

The agreement must allow parties to designate their documents as confidential and provide a mechanism for the non-producing party to challenge those designations. 3. The agreement must have an attorneys-eyes only clause confidentiality designation for financial and subscriber information.; and 4. the agreement must be So Ordered." Plaintiff did not make any such proposal.

On May 20, Plaintiff's counsel sent a letter asking for confirmation that Defendants would treat Ms. Loomer's tax returns as confidential and again stating that Plaintiff would "honor any designation of confidentiality, subject to either a mutually agreeable negotiated solution or court intervention should this prove necessary." Ex. 7. After Defendants agreed to treat Plaintiff's tax returns as confidential, Plaintiff produced the returns, which were stamped at the top CONFIDENTIAL – ATTORNEY EYES ONLY.

> On the morning of May 21, Defendants wrote to Plaintiff's counsel stating:
>
> Defendants will accept a slightly modified version of your proposal. We propose that the parties agree to keep confidential documents designated confidential and to use those documents for this litigation only.
>
> If one party contests the confidentiality designation, they will notify the party in writing of the objection and the producing party will have 15 business days to move for a protective order.
>
> The parties also agree that when discovery is over, the parties will destroy those documents not filed on the public docket.

When Plaintiff's counsel rejected that proposal as "too broad," Defendant's counsel asked: "Can you explain to me in what way it is too broad? It is consistent with the proposal in your letter." In response, Mr. Klayman responded: "I'm done playing games. Produce the documents today which even you don't find

9

confidential." Ex. 8. On May 22, Plaintiff moved to compel. That same day, Defendants served a production of 50 non-confidential documents, totaling over 1,000 pages.

## ARGUMENT

### I. Plaintiff's Motion To Compel The Production Of Documents Absent A Confidentiality Agreement Should Be Denied

This Court should deny Plaintiff's request to compel Defendants to produce documents without a protective order. While such an order is routine in litigations in this and other districts, the need is particularly acute here where Plaintiff and her counsel have announced their intention to distribute Defendants' documents and even profit off of them.

As the Supreme Court has made clear, "[l]iberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984). "Society in general, and the courts specifically, has a substantial interest in preventing abuse of judicially compelled discovery." *Palm Beach Newspapers, Inc. v. Burk*, 504 So. 2d 378, 382 (Fla. 1987). "Transforming the discovery rules into a major vehicle for obtaining information to be" made public "would subvert the purpose of discovery and result in the tail wagging the dog." *Id.* at 384. Confidentiality agreements thus "serve[] a useful purpose," *Gualtieri v. TD Bank, Nat'l Ass'n*, 2011 WL 13302504, at *1 (M.D. Fla. Feb. 17, 2011), and "ha[ve] become commonplace," *Chicago Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1307 (11th Cir. 2001).

"[A] court may enter a protective order when it is necessary to expedite the flow of discovery material, promote prompt resolution of disputes over confidentiality, or facilitate the preservation of material arguably worthy of protection." *Howard v. Hartford Life & Acc. Ins. Co.*, 275 F.R.D. 649, 652 (M.D. Fla. 2011). Florida courts routinely issue protective orders to prevent a party from releasing discovery to the public or using discovery materials for non-litigation purposes. *See McCarthy v. Barnett Bank of Polk Cnty.*, 876 F.2d 89, 90-91 (11th Cir. 1989) (affirming protective order "that prevents the parties from using any confidential information obtained during discovery except as part of the litigation"); *Gunson v. BMO Harris Bank, N.A.*, 300 F.R.D. 581, 584 (S.D. Fla. 2014) (granting protective order that would "confine the[] use" of defendants' confidential documents "to the instant litigation"); *Tillman v. C.R. Bard, Inc.*, 297 F.R.D. 660, 662-63 (M.D. Fla. 2014) (noting that "to the extent Plaintiff is claiming that she has some right to use documents produced in discovery for purposes outside the litigation, it is not clear that such a right exists" and holding that good cause exists to issue a protective order preventing plaintiff from disclosing documents to the public); *Woodward v. Berkery*, 714 So.2d 1027, 1033, 1037-38 (Fla. 4th DCA 1998) (reversing trial court's denial of protective order for confidentiality where the party seeking discovery "made clear her purpose to release to the press . . . information she acquires . . . during discovery" and emphasizing that "the instruments of the civil justice system of the State of Florida

11

should [not] be used simply to assist in the disclosure and publication" of discovery material to the public).

Here, all parties appear to agree that some measure of confidentiality would be appropriate here. Based on the statements in her motion to compel, as well as to Defendants in the correspondence accompanying Plaintiff's document productions, it appears that Plaintiff is amenable to documents being designated as confidential on a document-by-document basis. *See* ECF No. 71 at 3, 6. In fact, based on her designation of her tax returns as "ATTORNEY EYES ONLY," Plaintiff appears to want two tiers of confidentiality, with a higher degree of confidentiality for certain particularly sensitive financial documents. It appears, therefore, that— while Plaintiff or her counsel may not have ever read Defendants' proposed protective order—they agree to paragraphs 1-5 and 7-10.

All that Plaintiff seems to contest is Defendants' request that documents produced in this litigation be used only for the purpose of this litigation. *See* Ex.1 § 6 (providing that confidential discovery material be used "solely . . . in connection with the action"). Plaintiff's effort to force Defendants to produce documents without this most basic limitation should be denied.

That limitation is standard in any litigation but is especially justified here. As set forth more fully in Defendants' motion for a protective order regarding the deposition video and transcript of Bill Maher and reply in further support thereof, *see* ECF Nos. 57 & 70, Plaintiff and Mr. Klayman have both repeatedly stated their intention to publicly disclose and fundraise off of discovery materials in this case.

For example, in a March 26 post on X, Plaintiff noted Defendants' request for confidentiality, said "I'm not agreeing to keep the documents confidential," and asked her followers to donate money to the Laura Loomer Lawfare Fund linked to in the same post. @LauraLoomer, X (Mar. 26, 2025), https://x.com/LauraLoomer/status/1905088636292333611. The Lawfare Fund page in turn makes clear that it is funding activities entirely unrelated to this lawsuit, such as Loomer's defense of defamation claims threatened against her. *See* Laura Loomer Lawfare Fund, https://www.givesendgo.com/LoomerLawfare; *see also* ECF No. 57-8. Likewise, on April 6, Mr. Klayman stated his intention to publicly "release" the deposition of Bill Maher and, in the same video, asked for money to support his litigation efforts (again, not limited to this case). *See* Larry Klayman's Freedom Watch, *Update on the Bill Maher Deposition #2 MAHER DEPOSITION IN LOOMER CASE SPELLS DISASTER FOR HIM & HBO!* (Apr. 6, 2025) ("Deposition Update #2"), https://larryklayman.substack.com/p/update-on-the-bill-maher-deposition-e2b, at 0:57, 4:47. *See* ECF No. 57-13. Fundraising for unrelated purposes is not an appropriate use of discovery materials.

## II. This Court Should Grant Defendants' Cross-Motion For A Protective Order

As set forth above, protective orders allowing documents to be designated as confidential, subject to the other party's right to challenge that designation, are both standard and essential to prevent abuses of the discovery process. Here, despite Plaintiff's claims, there is good cause to designate some materials as confidential. Responsive documents include unpublished draft scripts and

13

communications showing the process of developing and creating episodes of *Real Time*. Disclosure of these documents could cause competitive harm by revealing unpublished scripted materials that the show may still want to go back to in the future. *See, e.g.*, *Smart Commc'ns Holding, Inc. v. Correct Sols., LLC*, 2020 WL 10498681, at *3 (M.D. Fla. Dec. 2, 2020) (granting protective order where documents at issue could "contain competitively sensitive information"); *see also Sharkey v. Food & Drug Admin.*, 250 F. App'x 284, 287-90 (11th Cir. 2007) (affirming denial of FOIA records where public disclosure "would cause substantial competitive harm"). Moreover, compelling public disclosure of a media company's internal records and story development process could set a dangerous precedent. *Cf. Loadholtz v. Fields*, 389 F. Supp. 1299, 1303 (M.D. Fla. 1975) (rejecting request to compel disclosure of "a reporter's resource materials" and holding that the reporter's privilege is not limited to "confidential informants"); *Hatch v. Marsh*, 134 F.R.D. 300, 301 (M.D. Fla. 1990) (granting motion to quash subpoena even for broadcast material, as disclosure could lead to disclosure of nonbroadcast material or "prompt reporters or editors to purge" unpublished information).

     Defendants' concern is compounded by Plaintiffs' stated intention to publicly release discovery materials. It is one thing to have to produce records to an opposing party in litigation.[2] But Plaintiff and her attorney should not be

---

[2] Plaintiff's suggestion that she has produced everything and Defendants nothing, *see* ECF No. 71 at 1-2, is simply untrue. As set forth more fully in Defendants' motion to compel, Plaintiff has not produced documents in response to large

14

permitted to use this litigation as a pretext to glean information such as who Bill Maher communicates with, how *Real Time* is put together, or what jokes got axed and then sell that information to third-parties or use it for other improper purposes. Defendants stand ready to produce additional responsive documents as soon as a protective order is entered providing that those documents will be kept confidential and not exploited for non-litigation purposes.

### III. Plaintiff's Motion To Reopen Depositions Should Be Denied

This Court should also deny Plaintiff's request to reopen the depositions. As Plaintiff herself acknowledges, a deposition is presumptively "limited to *one day* of 7 hours." Fed. R. Civ. P. 30(d)(1) (emphasis added); *see* ECF No. 71 at 5. The Advisory Committee Notes to Rule 30 provide that "[t]he party seeking a court order to extend [a deposition] . . . is expected to show good cause to justify such an order." Fed. R. Civ. P. 30 Advisory Committee Notes, 2000 Amendment, subdiv. (d). Plaintiff has not shown good cause to subject Mr. Maher "to cumulative and

---

numbers of Defendants' clearly relevant requests, including any documents or communications regarding her visits to Mar-a-Lago or to the White House, any correspondence with President Trump, or any correspondence with third parties regarding her meetings or relationship with President Trump. Plaintiff also has not produced a damages calculation or any documents supporting her alleged reputational injury.

Defendants, for their part, each timely served responses and objections to Plaintiff's requests for production on March 3, 2025 (more than two months before Plaintiff served her long-extended, still-late responses and objections). *Contra* ECF No. 71 at 1 (Plaintiff falsely representing that "Defendants have failed to submit responses to Plaintiff's Document Requests"). And on May 22, within a week of Plaintiff's first production, Defendants produced a production consisting of similarly publicly available news articles and other non-confidential documents such as the as-aired transcripts.

15

burdensome re-examination." *Kimera Labs, Inc. v. Jayashankar*, 346 F.R.D. 146, 150 (S.D. Fla. 2024); *see also, e.g.*, *Scudder v. Equifax Info. Servs., LLC*, 2022 WL 11771107, at *1 (M.D. Fla. Oct. 20, 2022) (holding that the plaintiff had failed to show adequate justification for reopening a deposition); *Delices v. Lowery*, 2021 WL 11691023, at *3 (N.D. Fla. July 20, 2021) (denying motion to re-open discovery for failure to show good cause).

Plaintiff aggressively sought Maher and Rosenstein's deposition—and, at least in the case of Maher, expressly stated that he wanted to do so without documents. If, as Plaintiff now contends, she is "severe[ly] prejudice[d]" by having taken Mr. Maher and Ms. Rosenstein's depositions without Defendants' documents, ECF No. 71 at 5, that is "a crisis of [her] own making," *In re Neves*, 563 B.R. 66, 68, 76 (Bankr. S.D. Fla. 2014): she refused to agree to Defendants' confidentiality stipulation or to propose her own, she chose to schedule the depositions early in the discovery process, she said in writing that she would forego documents and proceed with the deposition of Mr. Maher in their absence, and she waited until *after* both depositions to move to compel the production of documents.

"Courts have not looked favorably on the entreaties of parties trying to escape the consequences of their own counseled and knowledgeable decisions." *McCarthy v. Consulate Health Care*, 2016 WL 1729604, at *3 (N.D. Fla. Mar. 29, 2016) (internal alterations, quotations, and citation omitted), *report and recommendation adopted*, 2016 WL 1732743 (N.D. Fla. Apr. 28, 2016);

16

*Armstrong v. Sec'y Dep't of Corr.*, 2017 WL 1251053, at *2 (N.D. Fla. Mar. 1, 2017), *report and recommendation adopted*, 2017 WL 1234142 (N.D. Fla. Apr. 3, 2017) (same). Mr. Maher and Ms. Rosenstein have busy schedules. They should not suffer the "adverse consequences" of having to sit for a second deposition "to relieve [Plaintiff] from the consequences of poor planning or bad tactical decisions." *In re Neves*, 563 B.R. at 76.

Moreover, Plaintiff has not identified any questions that she did not have an opportunity to ask of either Mr. Maher or Ms. Rosenstein or new topics that she wants to address with them. As Plaintiff concedes, she had plenty of time left during her deposition day, *see* ECF No. 71 at 5, and Defendants repeatedly invited her lawyer to "Please ask [Mr. Maher] any questions you have and he will answer them." Maher Depo. Tr. at 222:23-24; *see id.* at 223:23-24 ("You may ask him any question you have."). If she did not ask questions then, she "must live with the strategy [she] chose to employ in [her] examination" of defendants' witnesses. *Kimera Labs*, 346 F.R.D. at 149.

### IV.  Plaintiff Should Not Be Awarded Fees And Costs

Even if the Court were to grant the motion to compel, an award of fees and costs is not appropriate under Federal Rule of Civil Procedure 37(a)(5)(A). Plaintiff filed the motion before attempting in good faith to obtain the discovery without court action; for over three months, she has refused either to mark up Defendants' proposed confidentiality stipulation or to propose her own—and even to explain what specific provisions in Defendants' draft she objects to. *See* Fed. R. Civ. P.

17

37(a)(5)(A)(i). Defendants' unwillingness to turn over documents without assurance that Plaintiff would not plaster the documents all over her social media was substantially justified. *See* Fed. R. Civ. P. 37(a)(5)(A)(ii). And the circumstances as a whole—including the significant deficiencies in Plaintiff's own production, which came just days before Plaintiff filed this motion to compel—would render an award of expenses unjust. *See* Fed. R. Civ. P. 37(a)(5)(A)(iii). Indeed, if anyone has needlessly driven up attorney's fees as it relates to this motion, it is Plaintiff, with her inexplicable refusal to engage in any way on the contents of a confidentiality agreement, despite her own desire to keep some of her own documents confidential.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's motion to compel and request for fees and costs. Defendants further request that the Court grant Plaintiffs' cross-motion for a protective order and direct that documents exchanged in discovery not be used for purposes other than this litigation and that the parties be permitted to designate documents as confidential, subject to an ability for the opposing party to challenge that designation.

Dated: June 5, 2025

Respectfully submitted,

*/s/ Rachel E. Fugate*

**Shullman Fugate PLLC**
Rachel E. Fugate (Bar No. 144029)
100 South Ashley Drive, Suite 600
Tampa, FL 33602
Tel: (813) 935-5098
rfugate@shullmanfugate.com

Yelan Escalona (Bar No. 1031564)
201 S. Biscayne Blvd. 28th Floor
Miami, FL 33131
Tel: (305) 928-2429
yescalona@shullmanfugate.com

*Counsel for Defendants*

**Davis Wright Tremaine LLP**
Katherine M. Bolger (*pro hac vice*)
Alexandra Perloff-Giles (*pro hac vice*)
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Tel: (212) 489-8230
katebolger@dwt.com
alexandraperloffgiles@dwt.com