## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF FLORIDA, OCALA DIVISION

----------------------------------------------------------------- x

LAURA LOOMER,

                  *Plaintiff,*

      - against -

BILL MAHER and HOME BOX OFFICE, INC.,

                  *Defendants.*

Case No.: 5:24-cv-00625-JSM-PRL

----------------------------------------------------------------- x

## DEFENDANTS' MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AND RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES

Defendants Home Box Office, Inc. ("HBO") and Bill Maher respectfully move pursuant to Federal Rule of Civil Procedure 37(a) for an Order directing Plaintiff Laura Loomer to produce non-privileged documents responsive to Defendants' requests for production, to respond substantively and under oath to Defendants' interrogatories, and to serve initial disclosures containing a good faith estimate of damages and methods of calculation.

Even after obtaining repeated extensions of the deadline to respond to discovery requests, Plaintiff has failed meaningfully to respond to Defendants' requests. Most notably, she has failed to produce relevant documentation or information concerning her alleged damages, insisting instead that information can be disclosed at a later date as Plaintiff "is currently calculating the financial damages." *See* Exs. A & B. Defendants have repeatedly attempted to resolve this dispute without the intervention of the Court, but have been stonewalled at every

turn. Therefore, Defendants request that this Court enter an order compelling Plaintiff to produce documents in response to Requests for Production Nos. 12, 13, 14, 18, 19, and 20 and Interrogatory Nos. 1, 7, 8, 9, 10, 11, and 13. *See* Exs. C & D.

## BACKGROUND

### I.  Case Background

This action stems from a joke made by comedian Bill Maher on a September 13, 2024 episode of his show *Real Time with Bill Maher*. During the episode, while discussing Plaintiff's increasingly public relationship with the President, Bill Maher made the following joke:

> I think maybe Laura Loomer's in an arranged relationship to affect the election because she's very close to Trump. She's 31, looks like his type. We did an editorial here a few years ago…it was basically, who's Trump fucking? Because I said, you know, it's not nobody. He's been a dog for too long, and it's not Melania. I think we may have our answer this week. I think it might be Laura Loomer.

ECF No. 17-1.

Plaintiff purported to be incensed by this joke, posting to her followers on X the next day, "I should sue Bill Maher @billmaher for Defamation," a development that was picked up and reported on by numerous press outlets. *See, e.g*., Rachel Dobkin, *Laura Loomer Responds to Bill Maher Quip on 'Arranged' Trump Relationship*, Newsweek (Sept. 14, 2024), https://www.newsweek.com/laura-loomer-donald-trump-relationship-bill-maher-1953877. She filed suit a month later, on October 21, 2024, claiming that she suffered damages "in excess of 150 million U.S. Dollars" due to "lost economic opportunities and other harm," which allegedly included the loss of a "position in President Trump's administration."

ECF No. 1 at 17; ECF No. 42 at 13. Since then, and despite providing no documentation or calculation to support this demand, Plaintiff has increased her demand to further include a request for $350 million in punitive damages. *See* ECF No. 42 at 21.

## II.    Plaintiff Delays by Two Months the Production of Documents

On February 13, 2025, Defendants served initial disclosures pursuant to Federal Rule of Civil Procedure 26(e). That same day, Defendants also served interrogatories and requests for production. *See* Ex. C & Ex. D. Accordingly, under Federal Rules of Civil Procedure 33(b)(2) and 34(b)(2)(A), Plaintiff's responses to those discovery requests were due on March 17, 2025.

On the evening of Thursday, March 13, 2025, Plaintiff's counsel, Larry Klayman, asked if Defendants would "agree to 30 day extension to respond to defendants discovery requests." Ex. E. The next morning, on March 14, Defendants said they "will agree to the 30 day extension of time to April 14 provided that you produce documents (rather than just responses and objections) on that date" and asked Plaintiff to "[p]lease confirm." *Id.* That afternoon, Plaintiff assured Defendants "We will produce documents which are not privileged (but have privilege log) and that which is relevant or may lead to relevant evidence, which is the standard" and thanked Defendants "for agreeing to the extension of 30 [sic] to respond to discovery." Ex. F.

On Friday, April 11, the last business day before the documents and responses were due per the agreed extension, Mr. Klayman wrote Defendants,

seeking yet another extension. He explained: "I had a tragic death in the family which has set me back for time. As a result will you agree to another 10 days from April 14, 2024 to respond to defendants' discovery." Ex. G. Counsel for Defendants responded that afternoon: "Of course. My condolences on your loss." *Id.* On April 21, 2025, Mr. Klayman sought a third extension of time: "In light of your motions [i.e., Defendants' motion for a protective order and motion to seal, *see* ECF Nos. 57 & 58], and the need to address them quickly, we will [sic] another week to respond to your discovery or by April 28, 2025. Given that Ms. Loomer's deposition is on June 2, 2025, this leaves plenty of time. Thank you for your consent." Ex. H.

Over the next few days, the parties exchanged emails about pushing back the date for the HBO 30(b)(6) corporate representative by approximately one week because of a scheduling conflict, and Defendants offered that they would agree to Plaintiff's requested extension to April 28 to respond to the discovery requests if Plaintiff agreed to postpone the 30(b)(6) deposition to May 7. Plaintiff pressed for a yet additional extension, saying "Will agree to May 7 if you consent to May 9 to respond to ur discovery." Ex. I. Defendants said they could not agree to extend the deadline for responses to discovery requests to May 9—less than a month before the scheduled deposition of Ms. Loomer—and said either Defendants would agree to April 28 if the deposition was moved to May 7, or Defendants would proceed with an HBO 30(b)(6) representative on the previously agreed deposition date (April 30) and would expect the discovery responses on April 24. *Id.* Plaintiff agreed to serve her responses by April 28 and to hold the deposition on May 7. *Id.*

On the evening of Monday, April 28, Mr. Klayman served Plaintiff's Response to Defendants' First Set of Requests for Production of Documents and Plaintiff's Response to Defendants' First Set of Request [sic] for Interrogatories. *See* Exs. A & B. Despite Plaintiff's previous assurance, when seeking an extension, that she would produce documents with her responses, Plaintiff produced no documents. Finally, on May 15, Plaintiff produced only 158 pages of documents in response to twenty-five requests for production.

To date, Plaintiff still has not served initial disclosures as required by Rule 26(a)(1) of the Federal Rules of Civil Procedure.

### III.    Plaintiff's Insufficient Responses

Plaintiff's belated interrogatory responses and document production are wholly insufficient. Plaintiff's interrogatory responses failed to answer even basic questions about the harm she purportedly suffered. For example, in response to Interrogatory 1, which sought "a computation of each category of damages that You allege in this action," Plaintiff responded: "While damages for defamation per se, which the Court has already found in denying Defendants' motion to dismiss, are presumed, I am currently calculating the financial damages, which are increasing daily. In addition, damages to me include, but are not limited to: loss of reputation, goodwill, standing in the community, humiliation and emotional distress, which the jury will determine based upon evidence presented at trial." *See* Ex. A.[1] Plaintiff

---

[1] Plaintiff further refused to answer other basic questions concerning her alleged damages, including the circumstances surrounding her failed attempt to obtain a position in the Trump Administration. *See* Ex. A at Responses 7, 8, 9, 10, 13, 14.

also refused to answer interrogatories related to her relationship with President Trump. *See, e.g.*, Ex. A, at Responses 2, 6, 7.

Plaintiff's document production was also egregiously deficient. Despite touting her production of "one hundred and fifty eight pages of responsive documents" in her motion to compel, Plaintiff's document production consisted of 15 pages of publicly available screenshots from X.com, 72 pages of publicly available news articles, two emails between herself and the Trump transition team , Plaintiff's resume and cover letter, and her tax returns from 2020 to 2023, well before the September 13, 2024 *Real Time* episode at issue. Plaintiff failed to produce her communications with Donald Trump or senior members of Donald Trump's staff, business records showing any alleged decrease in revenue or other damages that she has allegedly suffered, or correspondence showing the basis for her rejection for a position in the Trump administration.

Defendants' counsel met and conferred with Plaintiff's counsel on May 7, 2025 to discuss Plaintiff's discovery deficiencies. The meeting was left unfinished after Plaintiff's counsel stormed off. Later that day, Defendants sent an email to Plaintiff's counsel memorializing the discussion and Defendants' positions. Despite repeated requests, Plaintiff never substantively responded. *See* Ex. J. Because of Plaintiff's refusal to engage, Defendants' counsel sought to meet and confer with Plaintiffs' counsel on June 3, 2025. Plaintiffs' counsel agreed to meet and confer after Plaintiff's deposition which took place on June 4, 2025, but the meeting ultimately did not occur.

## **ARGUMENT**

This Court should grant Defendants' motion to compel Plaintiff to produce (1) initial disclosures, (2) documents in response to Requests for Production Nos. 12, 13, 14, 18, 19, and 20, and (3) substantive responses to interrogatories 1, 7, 8, 9, 10, 11, and 13. Exs. A & B. Plaintiff filed a lawsuit over a joke told on a late night television show that she claims caused her damages "in excess of 150 Million U.S. Dollars," but has steadfastly refused to meaningfully identify damages. This Court should compel her to do so.

## I.    **This Court Should Compel Plaintiff To Serve Initial Disclosures**

Rule 26 requires all parties, "without awaiting a discovery request," to provide to the other parties (i) the name and contact information of all individuals likely to have discoverable information, (ii) a description of all documents that the disclosing party has in its possession and may use to support its claims or defenses, and (iii) a computation of each category of damages claimed by the disclosing party. Fed. R. Civ. P. 26(a)(1)(A).

Plaintiff, apparently deeming it unnecessary to comply with the basic tenets of the Federal Rules of Civil Procedure, has not served initial disclosures and has not attempted to quantify her damages (allegedly totaling "in excess of 150 Million U.S. Dollars" in compensatory damages). Under Rule 26, Plaintiff "must, without awaiting a discovery request, provide . . . a computation of each category of damages claimed," and make available the "evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of

injuries suffered." Fed. R. Civ. P. 26(a)(1)(A)(iii) (emphasis added); *LeBlanc v. Unifund CCR Partners, G.P.*, 2007 WL 2446900, at *1 (M.D. Fla. Aug. 23, 2007) ("Plaintiff should be able to make a good faith estimate of damages and methods of calculations based on the information available at this stage of the litigation while reserving the right to amend [her] calculation."). That obligation is compulsory in civil litigation. Plaintiff has not complied. This Court should compel her to serve initial disclosures.

## II.    This Court Should Compel Plaintiff To Respond to Defendants' Discovery Requests

This Court should also order Plaintiff to produce substantive responses to Document Request Nos. 12, 13, 14, 18, 19, and 20 and Interrogatory Nos. 1, 7, 8, 9, 10, 11, and 13. Exs. A and B. Rule 26 provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Courts interpret relevancy 'broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Coach, Inc. v. Visitors Flea Market, LLC*, 2013 WL 5770598, at *1 (M.D. Fla. Oct. 24, 2013) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see also, e.g.*, *Grayson v. No Labels, Inc.*, 2021 WL 8199894, at *3 (M.D. Fla. Nov. 17, 2021) ("Discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought has no possibly bearing on the claims and defenses of the parties or otherwise on the subject matter of the action.") (quoting *Jeld-Wn, Inc. v. Nebula Glass Int'l, Inc.*, 2007 WL

8

1526649, at *1 (S.D. Fla. May 22, 2007)). "The party resisting production of information bears the burden of establishing lack of relevancy or undue burden in supplying the requested information." *Gober v. City of Leesburg*, 197 F.R.D. 519, 521 (M.D. Fla. 2000); *accord, e.g.*, *Rossbach v. Rundle*, 128 F. Supp. 2d 1348, 1354 (S.D. Fla. 2000). Here, the requested discovery relates to damages and is unquestionably relevant.

Despite Plaintiff's incorrect recitation of law in her interrogatory and document production responses that "damages for defamation per se . . . are presumed," in Florida, actual damages are a required element of any defamation claim against a media entity. *See, e.g.*, *Edelstein v. WFTV, Inc.*, 798 So. 2d 797, 798 (Fla. 4th DCA 2001) ("The court's decision in *Boyles* makes clear that since *Gertz* a plaintiff suing a media defendant must nevertheless plead and prove actual injury"); *Mid-Florida Television Co. v. Boyles*, 467 So. 2d 282 (Fla. 1985) ("At common law, before *Gertz*, we said '[w]ords amounting to a libel per se necessarily import damage and malice in legal contemplation, so these elements need not be pleaded or proved, as they are conclusively presumed as a matter of law.' This statement is no longer accurate regarding a libel action against the media.") (citation omitted).

As a result, Defendants are entitled to broad discovery into Plaintiff's alleged damages, including the quantification of those damages and the evidence upon which that quantification is based, as well as any efforts to mitigate any such damages. *See, e.g.*, *Condit v. Dunne*, 225 F.R.D. 100, 110 (S.D.N.Y. 2004) (allowing

discovery on plaintiff's other "sexual relationships" as relevant to mitigation of damages in defamation claim); *Marcone v. Penthouse Int'l Mag. for Men*, 754 F.2d 1072, 1079 (3d Cir. 1985) ("Evidence of a tarnished reputation is admissible and should be considered as a factor to mitigate the level of compensatory damages."); *see Davis v. McKenzie*, 2017 WL 8809359, at *18, (S.D. Fla. Nov. 3, 2017) (finding that Plaintiff's reputation was "so thoroughly damaged" based on his previous history of violence that any "any incremental harm to his reputation" could, at best, result in recovery of nominal damages), *report and recommendation adopted*, 2018 WL 1813897 (S.D. Fla. Jan. 19, 2018). Among other things, Defendants are entitled to take discovery on unrelated matters that may have impacted Plaintiff's reputation or professional standing, because such evidence goes to what, if any, harm is attributable to Defendants as opposed to third parties.

In this case, Ms. Loomer has alleged that she suffered "lost economic opportunities and other harm as a direct and proximate result of Defendant Maher's defamatory statements, including but not limited to the fact that she had been a strong and likely candidate for a position in President Trump's administration – and certainly would have been part of it – but after Defendant Maher widely published the defamatory statements representing that Ms. Loomer was having an adulterous sexual relationship with President Trump, . . . she did not receive a position in President Trump's administration, causing a loss of substantial financial compensation and other harm." ECF No. 42 ("Am. Compl.") ¶¶ 44, 53, 63, 74, 83, 93. She further alleged that she was "severely harmed and

damaged . . . financially and in other ways in her profession and business as an investigative journalist," and that she suffered "severe emotional damage." *Id*. ¶¶ 43, 52, 62, 73, 82, 92.

Defendants served Requests for Production and Interrogatories intended to elicit answers and documents supporting Plaintiff's alleged damages. Exs. A and B. Because Plaintiff failed to serve initial disclosures containing that information, Defendants requested in an interrogatory "a computation of each category of damages that You allege in this action." *See* Ex. C at Interrogatory No. 1. Plaintiff's response that she is "currently calculating the financial damages," and that her damages "include, but are not limited to: loss of reputation, goodwill, standing in the community, humiliation and emotional distress," falls far short of complying with her obligations under Rule 33(b)(3) to respond "fully" to interrogatories. *See* Ex. A at Response No. 1 .

Plaintiff's responses to other specific interrogatories concerning damages are also lacking. For instance, in response to Interrogatory Number 9, which stated "[i]dentify all business opportunities You contend You lost as a result of, or were otherwise impacted by, the September 13, 2024 Episode," Plaintiff responded: "While damages for defamation per se, which the Court has already found in denying Defendants' motion to dismiss, are presumed, I am currently calculating the financial damages, which are increasing daily. In addition, damages to me include, but are not limited to: loss of reputation, goodwill, standing in the community, humiliation and emotional distress, which the jury will determine

based upon evidence presented at trial." *See* Exs. A & C.. This, as discussed above, is not only an incorrect statement of law, but is plainly insufficient to support Plaintiff's fantastical claim of $150 million in compensatory damages. Defendants are entitled to probe the veracity of Plaintiff's alleged harm.

Plaintiff has also refused to produce documentation concerning her alleged financial and reputational damages. Defendants requested the production of documents concerning (i) any meeting with President Trump's Chief of Staff, Susie Wiles, Ex. B. at Request No. 7, (ii) all revenues that Plaintiff earned as a result of her work as an investigative journalist, *id.* at Request No. 8, and (iii) all business and social opportunities that Plaintiff allegedly lost as a result of Defendants' alleged defamation, *id.* at Request No. 9 and 10. To date, the only documents relating to revenues that Plaintiff has produced are her personal tax returns, which do not even cover the year the alleged defamatory statement was made. *See Shock v. Aerospace Integration Corp.*, 2009 WL 595923, at *4 (N.D. Fla. Mar. 6, 2009) ("Rule 26(a) requires more than providing—without any explanation—undifferentiated financial statements; it requires a 'computation,' supported by documents."). Plaintiff has also not produced tax returns or any other documents relating to her business, Illoominate Media, despite Defendants' Request for Documents showing any "lost business opportunities and/or lost business income as a result of the September 13, 2024 Episode." *See* Ex. C. at Request No. 14. Plaintiff's production is far from sufficient. And if she is not claiming any damages relating to Illoominate Media, she should so aver in her Interrogatory responses.

Plaintiff's vague responses to Interrogatory Nos. 11 and 13 are similarly deficient. To Interrogatory 11, which asked Plaintiff to "Identify any persons who You contend were led to mistakenly believe, based on the September 13, 2024 Episode, that You and President Trump had engaged in a sexual relationship," Plaintiff responded "Objection as overly broad, vague, and ambiguous, vexatious, and harassing. Subject to and without waiving these objections, obviously, viewers of Bill Maher and Real Time who did not know me personally were led to mistakenly believe that President Trump and I engaged in a sexual relationship in addition to committing adultery behind the back of Melania Trump. This is textbook defamation per se as found by the Court in its order of denying the Defendants' motion to dismiss." *See* Ex. A at Response No. 11. Vaguely pointing to an unidentified amalgamation of people who were "mistakenly misled," without providing the name of even a single witness for Defendants to question, is not a substantive response to the interrogatory. Plaintiff's response to Interrogatory 13, which asked her to "Identify all persons with knowledge of Your alleged damages," is similarly deficient. Plaintiff responded: "Myself, and those heard and/or learned of the defamation per se and other forms of defamation of the Defendants." *See* Ex. A at Response No. 13. If Plaintiff is unaware of the identity of a single person, other than [my]self" who can support her claim for over $150 million dollars in damages based on the alleged defamation, she should say so.

Plaintiff's boilerplate response that she "will be deposed by the Defendants' counsel on June 2, 2025" and "any non privileged, not harassing and relevant

questions will be answered at that time" does not excuse her failure to respond substantively to Defendants' interrogatories and document requests. *See* Ex. A. To the contrary, that argument has been specifically rejected time and again. *See, e.g.*, *Israel v. John Craine, Inc.*, 601 F. Supp. 3d 1259, 1271 (M.D. Fla. 2022); *Delaware Valley Floral Group, Inc. v. Shaw Rose Nets, LLC*, 2008 WL 11333085, at *2 (S.D. Fla. Dec. 10, 2008); *see also Advanced Polymer Technology Corp. v. Textile Mgmt. Assocs., Inc.,* 2010 WL 11506590, at *10 (N.D. Ga. July 7, 2020) (rejecting "contention that the deposition testimony is sufficient to satisfy" the obligation to provide damages calculations "or eliminates the need to supplement" discovery responses—much less not even produce any documents from which Defendants can "piece together a damages theory"). Plaintiff's deposition occurred on June 4, 2025. Her vague answers and speculative theory of damages only confirm the need for adequate documentary discovery and interrogatory responses.

## CONCLUSION

For the foregoing reasons, Plaintiff should be compelled to produce documents responsive to Requests for Production 12, 13, 14, 18, 19, and 20, and Interrogatories 1, 7, 8, 9, 10, 11, and 13.

## LOCAL RULE 3.01(g) CERTIFICATION

Counsel for Defendants certifies that Defendants have conferred via email with counsel for Plaintiff, who not only opposes the relief sought in this motion but has threatened to cross-move for attorneys' fees, costs, and other sanctions.

Dated: June 10, 2025

Respectfully submitted,

*/s/ Rachel E. Fugate*
**Shullman Fugate PLLC**
Rachel E. Fugate (Bar No. 144029)
100 South Ashley Drive, Suite 600
Tampa, FL 33602
Tel: (813) 935-5098
rfugate@shullmanfugate.com

Yelan Escalona (Bar No. 1031564)
201 S. Biscayne Blvd. 28th Floor
Miami, FL 33131
Tel: (305) 928-2429
yescalona@shullmanfugate.com

*Counsel for Defendants*

**Davis Wright Tremaine LLP**
Katherine M. Bolger (*pro hac vice*)
Alexandra Perloff-Giles (*pro hac vice*)
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Tel: (212) 489-8230
katebolger@dwt.com
alexandraperloffgiles@dwt.com