UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA, OCALA DIVISION

---

LAURA LOOMER,

       *Plaintiff*,

- against -

BILL MAHER and HOME BOX OFFICE, INC.,

       *Defendants*.

Case No.: 5:24-cv-00625-JSM-PRL

---

# DEFENDANTS' OPPOSITION TO PLAINTIFF'S CROSS MOTION FOR SANCTIONS

Plaintiff's motion for sanctions is precisely the kind of "bogus motion" about which Plaintiff herself complains. ECF No. 85 at 11. In the motion, Plaintiff repeatedly misrepresents the factual record, launches into irrelevant political tirades about the donations of Defendant Bill Maher and his counsel, and disparages Mr. Maher in a manner plainly inconsistent with this Court's admonition to act in a "spirit of cooperation and civility." ECF No. 48. What the Plaintiff does not do, however, is demonstrate that Defendants have committed any sanctionable action. To the contrary, Defendants have put up with repeated and inappropriate personal attacks by Plaintiff and her counsel, both on social media and in court filings. The motion for sanctions should be denied and Plaintiff should be ordered not to file additional motions for sanctions without leave of the Court.

1

**ARGUMENT**

**I.  Plaintiff Has Not Identified Conduct Warranting Sanctions**

This Court should deny the motion for sanctions because it is meritless. Amidst a fusillade of unprofessional and personal attacks on Mr. Maher and the undersigned, Plaintiff appears to make four arguments in support of sanctions. All of them fail.

*First*, Plaintiff argues that Defendants' counsel's conduct in the deposition of Mr. Maher was somehow sanctionable. Rule 30(d)(2) of the Federal Rules of Civil Procedure allows a court to impose sanctions "on a person who impedes, delays, or frustrates the fair examination of the deponent." *See* Fed. R. Civ. P. 30(d)(2). In evaluating a motion for sanctions for conduct during a deposition, courts in the Middle District of Florida have examined whether the conduct of counsel "rise[s] to the level that [opposing counsel] could not continue with the deposition." *See Sorton v. Eidolon Analytic, Inc.*, 2016 WL 11817755, at *5 (M.D. Fla. Dec. 19, 2016); *see also Berlinger v. Wells Fargo*, 2014 WL 6686276, at *1 (M.D. Fla. Nov. 26, 2014).

As a preliminary matter, Mr. Klayman does not even cite this standard in his brief. And, indeed, he could never meet it because Mr. Klayman was able to take the deposition of Mr. Maher. Indeed, Mr. Klayman questioned Mr. Maher at length (largely through invasive and inappropriate questions on topics irrelevant to the case), and then unilaterally decided to be done for the day, declining Defendants' counsel's invitation to continue to question Mr. Maher. *See* Ex. A, Excerpts of the

2

Deposition of Bill Maher, at 223:22-224:5 ("Ms: Bolger: Mr. Maher is not coming back for [another] deposition. You may ask him any question that you have. . . he is right here. Mr. Klayman: I understand your position, which is the typical position that someone in your position would take. So the deposition is adjourned. I am not concluding the deposition.").

In addition, while Plaintiff titles a section of her brief "Examples of the Sanctionable Conduct," she lists no such examples and does not even take the time to cite a page or a line that she claims are sanctionable. Nor could she. Defendants and their counsel acted appropriately throughout the deposition.

It was Plaintiff's counsel who did not. Plaintiff's counsel used the deposition of Mr. Maher as an opportunity not to question him about any matters relevant to this case, but instead to berate him about intimate details of his private life. Many of those questions were discussed in ECF No. 58, in which Defendants sought a protective order designating the video deposition of Bill Maher confidential, ECF No. 58 at 479-82 (Ex. C at 11-14), and we respectfully refer the court to the sealed motion.

To the extent that Plaintiff's counsel seeks sanctions because Defendants' counsel objected to Plaintiff's onslaught of inappropriate questions and extremely disrespectful manner, that request should be rejected. Defendants' objections were a direct result of Plaintiffs' harassing, invasive, and deliberately embarrassing questions. Counsel for Defendants did not "feed answers" to Mr. Maher, and Mr. Klayman's faux outrage over the "use of speaking objections" is belied by his

3

repeated use of speaking objections during the deposition of his own client, in which he ranted about "ultra-leftist" newspapers,[1] attacked Defendant's counsel repeatedly, including calling her a "vicious, nasty person," made unnecessary interruptions,[2] and instructed Plaintiff not to answer clearly relevant questions.[3]

---

[1] *See, e.g.*, Ex. B, Excerpt of the Deposition of Laura Loomer, at 272:21-273:6 (Q: Okay. Then [the article] says "She once described Islam as a cancer, and tweeted under the hashtag" -- MR. KLAYMAN: Objection. Well, I want to understand. This is irrelevant. What is the point of repeating words by ultra-leftist haters of Trump, hater of -- Maggie Haberman has no credibility, neither does Jonathan Swan -- a bunch of leftist hacks) ; *see also id.* at 285:5-21 ("Q: Okay. And it says "Trump has a long history of elevating and associating with people who trade in falsehoods and conspiracy theories"; you see that? MR. KLAYMAN: Objection. What's the relevancy of this? It's written by Associated Press; BY MS. BOLGER: Q: Do you see that? A: Yep. Q: Okay. MR. KLAYMAN: Yeah. It's written by Associated Press – MS. BOLGER: And then you can put that away. MR. KLAYMAN: -- a Trump-hating organization, which the Israelis even had to bomb their building in Gaza because they were supporting Hamas"); *see id.* at 292:11-17) (MS. BOLGER: I'm going to ask you to mark, as Exhibit 20, a document published by The Guardian. . . . MR. KLAYMAN: All leftist publications, I might add -- leftist Trump-hating publications.").

[2] *See id.* at 404:9-13 (MS. BOLGER: Mr. Klayman, the question is – MR. KLAYMAN: One more question like this – MS. BOLGER: I'm going to ask the question one more time, and I'm going to hope you revisit this. MR. KLAYMAN: You are a vicious, nasty person."); *see also id.* at 234:4-15 ("Q: Wait. So my question was, can you name a single human being on Planet Earth who believes what Bill Maher said is true? MR. KLAYMAN: Calls for speculation. THE WITNESS: It's just -- it's like just kind of a ridiculous question because the reality is -- is it doesn't matter. The fact -- what matters is that he said it. He said it, and so there are people that believe it is true. BY MS. BOLGER: Q: Name one. MR. KLAYMAN: Why don't you name one?").

[3] *See, e.g.*, *id.* at 398:14-399:16 ("Q: Put all those tweets aside. Put all those tweets aside. I'm not asking you about any of those tweets. You pick them up and put them to your side, please. Pick up the tweet -- the documents and put them to the side. MR. KLAYMAN: All right. This is enough. I'm instructing her not to go answer any more questions. BY MS. BOLGER: Q: And now, let's ask this question. MR. KLAYMAN: Do not answer any more questions. This is badgering. You're going to be MS. BOLGER: Mr. Klayman, I haven't even asked the question. MR.

Despite Plaintiff's personal and vitriolic attacks, Bill Maher sat for the entirety of his deposition and answered all relevant questions. There was no inappropriate behavior by Defendants' counsel.

Lest there be any doubt that the unprofessional and inappropriate behavior has been by Plaintiff, and not Defendants, Plaintiff's counsel deploys the same tactics in the instant motion for sanctions. In the filing, he refers to Mr. Maher as a "low class . . . sexist, misogynist, and anti-Judeo Christian hating atheist who despises people of faith" and a "female hater who disrespects any woman in general" and states that it is "understandabl[e]" he "never married." *See* ECF No. 85 at 4-5, 10. He baselessly calls Mr. Maher a "low class epitome of … a Trump hater" and says he is "more akin to Batman character than a serious political pundit." *Id.* at 5, 10. Mr. Klayman likewise calls the undersigned a "mercenary hatchet woman" with a "no holds bar [sic] practice of spewing forth untruths." *Id.* at 6, 8. Mr. Klayman also needlessly attached records reflecting political campaign contributions of *both* Mr. Maher *and* counsel for Defendants, despite their complete irrelevance to the claims at bar.[4] In short, it is Mr. Klayman's own

---

KLAYMAN: You will have a motion for sanctions. Do not answer any more questions here. MS. BOLGER: Isn't it – MR. KLAYMAN: You're just being harassed. That's all. Stop. BY MS. BOLGER: Q: Doesn't the First Amendment – MR. KLAYMAN: She's not answering more questions here. Do not answer any questions.").

[4] These ad hominem attacks likely violate Rule 4.8.4(d) of the Rules Regulating the Florida Bar ("A lawyer shall not . . . engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly, or through callous indifference, disparage, humiliate, or discriminate

5

conduct—including but not limited to his conduct at Mr. Maher's deposition—that demands accountability, not the conduct of Defendants or their counsel.[5]

*Second,* Plaintiff appears to seek sanctions because Plaintiff contends that Defendants' counsel "has falsely suggested on the record that Ms. Loomer has released Defendants testimony and produced documents to 'fundraise,'" and calls that statement "categorically and objectively false" and "sanctionable in and of itself." ECF No. 84 at 8-9 (emphasis added).[6] But the very passage Plaintiff cites

---

against litigants, jurors, witnesses, court personnel, or other lawyers on any basis, including, but not limited to, on account of race, ethnicity, gender, religion, national origin, disability, marital status, sexual orientation, age, socioeconomic status, employment, or physical characteristic."). *See Florida Bar v. Martocci*, 791 So. 2d 1074, 1075 (Fla. 2001) (imposing a two-year probation on attorney for ethical violations for making "unethical, disparaging, and profane remarks to belittle and humiliate the opposing party . . . and her attorney").

[5] Mr. Klayman's conduct in this case is not an anomaly. He is currently serving a suspension from the DC Bar, and the Board of Professional Responsibility in Washington D.C. has recommended that he be suspended from the DC Bar for a further 18 months. *See In the Matter of: Larry E. Klayman*, 2017-D051, Report and Recommendation of the Board of Professional Responsibility (July 30, 2024), https://www.dcbar.org/ServeFile/GetDisciplinaryActionFile?fileName=LarryEKlayman18BD070.pdf. This recommendation, which is not a final ruling, is based on findings that Mr. Klayman "violated the rules by making repeated false statements to Courts," including "materially incomplete statements to courts" regarding the status of his disciplinary proceedings, "knowingly false" statements regarding another attorney's experience litigating criminal cases, and "knowing[ly] mischaracteriz[ing]" a dissenting opinion that he cited by removing appropriate context. Mr. Klayman's continued ability to practice law in Florida, meanwhile, is the subject of a pending matter before the Supreme Court of Florida. *Id.* at 37-42; *see The Florida Bar v. Larry Elliot Klayman*, SC2023-1219 (Fla. 2025).

[6] The lack of specificity in Plaintiff's motion is also fatal. *See Elie v. Pacific Land Ltd.*, 2012 WL 13005814, at *3 (S.D. Fla July 5, 2012) (denying a motion for sanctions when a party failed to "provide notice to the [p]laintiff regarding his purported sanctionable conduct" as the motion "fails to meet the 'specific conduct'

demonstrates that Plaintiff is simply incorrect. In fact, the undersigned stated:

> We're concerned about that in case this case, for very good reason, which is that both you and your client *have gone --made public statements that you intend to distribute documents publicly. And in fact, your client fundraises off of her promise to release her documents publicly.* And for those reasons, we're not going to produce documents unless there's a court order that protects their confidentiality....

*See* ECF No. 84 at 8 (emphasis added). Defendants' counsel clearly did not state that Ms. Loomer had already disseminated confidential information.

And as this Court recognized, *see* ECF No. 88 at 1, Ms. Loomer herself *has* repeatedly posted about her intent to make Mr. Maher's deposition public and specifically tied her efforts to publicly release Mr. Maher's deposition to her fundraising activities. *See, e.g.* @LauraLoomer, https://x.com/LauraLoomer/status/1912987128004514295 (Apr. 17, 2025) ("Today, @billmaher 's attorney Kate Bolger from the openly anti-Trump law firm Davis Wright Tremaine @DWTLaw sent a correspondence to my lawyer, informing us that they are asking the court to SEAL Bill Maher's video deposition FOREVER. They obviously don't want Bill Maher's behavior and the truth to come out for the public to see. Maher's anti-Trump lawyers have been and continue trying to run up the costs, which is why I need your support to cover the cost of this litigation. Thank you! Support my legal fund here: 👇🏻

---

requirements for Rule 11"), *report and recommendation adopted*, 2012 WL 13005815 (S.D. Fla. July 31, 2012).

https://givesendgo.com/LoomerLawfare"); *see also* ECF No. 58 at 475-79 (Ex. C at 7-11) (describing Plaintiff's publicity campaign). Plaintiff's counsel issued a press release on the day of Mr. Maher's deposition stating "TRUMP AND LOOMER HATER BILL MAHER TO BE DEPOSED TODAY" and inviting people to contact him for "more information." Thus, contrary to Plaintiff's assertion, Defendant's statement that Plaintiff intends to release the records of this proceeding publicly and for profit is true.[7]

*Third*, Plaintiff wrongly suggests that Defendants violated this Court's local rules by filing motions "without the required meet and confer conferences," as she contends "occurred with this most recent motion concerning Ms. Loomer's deposition." ECF No. 85 at 12. In reality, as required by Local Rule 3.01(g), Defendants attempted repeatedly in good faith to meet and confer with Plaintiff

---

[7] Plaintiff asserts that it is "none of Ms. Bolger's and her clients' business that Ms. Loomer has spoken publicly about this case in tweets and otherwise." ECF No. 85 at 7. Defendants have no response to this strange claim other than to note that Plaintiff has repeatedly posted personal and vitriolic attacks on her X account about Mr. Maher and his counsel while seeking to fundraise. *See, e.g.*, ECF No. 82 at 3-5; @LauraLoomer, https://x.com/LauraLoomer/status/1930258020723781686 (June 4, 2025) ("By the way, the lawyer deposing me today in my defamation lawsuit against Bill Maher and HBO is named Katherine "Kate" Bolger. She despises President Trump @realDonaldTrump, she despises me, and she despises my lawyer @LarryEKlayman, since we are pro-Trump conservatives. She is also a donor to the Democrat Party, according to FEC records. Davis Wright Tremaine @DWTLaw brags about how anti-Trump they are. Here's a @THR Hollywood Reporter article from 2019 in which they call themselves "Trump's least favorite firm". No wonder why Trump hater @billmaher and his enabler @HBO hired an anti-Trump law firm. 👇"). This behavior would seem to specifically make Plaintiff's posting the Defendants' "business."

regarding their motion to prevent the use of her deposition testimony for non-litigation purposes; Plaintiff simply refused to do so.

On June 12, 2025, Defendants' counsel wrote to Mr. Klayman asking to "Please confirm that you will only use Ms. Loomer's deposition transcript and video for litigation purposes. If this is not the case, we will need to move to file a motion to compel to you to do so." Mr. Klayman responded the same day, saying that "We can meet and confer on this and our upcoming motion for sanctions" and suggesting Monday, June 16, 2025 as he was traveling. Defendants' counsel responded that she was traveling internationally and therefore would not be available on Monday. Plaintiff's counsel replied: "You can participate from Rome. It's not a third world city and we can talk by WhatsApp. You are on thin ice already having harassed and browbeaten Ms. Loomer at her deposition not withstanding your dishonesty in general." Defendants' counsel offered other times that she was available to speak and, again, sought Mr. Klayman's position by email: "In any event, mine is a yes or no question. Do you agree that the video and transcript of the deposition of Laura Loomer will be used for the purposes of this litigation and this litigation only? You have answered no to that same question about the depositions of Maher and Rosenstein. Please let me know by the end of the day today whether you have changed your mind and will agree now." Mr. Klayman did not respond to the question, instead writing "All motions, both yours and mine, need to be subject to meet and confer. Wednesday will work. Give me a time and I will accom[m]odate you." In an effort to reach a mutually agreeable compromise,

9

Defendants' counsel wrote Mr. Klayman on June 13, 2025: "We will meet and confer on Wednesday provided that you agree that no portion of Ms. Loomer's deposition (if either the video or transcript become available before then) will be used for non-litigation purposes until after we have conferred. If that is not the case, the harm that this motion is meant to correct is imminent and we will have no choice but to file the motion. Please confirm by noon on Friday, June 13, that you will agree to use Ms. Loomer's deposition video and transcript only for the purposes of this litigation until after we have had the meet and confer." *See* Ex. C. Mr. Klayman did not confirm his agreement.

In his motion for sanctions, Mr. Klayman deliberately omitted that email exchange, citing only his refusal to agree to that restriction on the use of the deposition. As Defendants explained in their motion, they were forced to move for a protective order, as the court reporter's release of the transcript was imminent. There was no avoidance of the meet and confer requirement.

*Finally*, it is unclear if Plaintiff additionally seeks sanctions for what she describes as Defendants' "incessant" and "frivolous" motions related to Plaintiff's attempts to use deposition testimony for non-litigation purposes. ECF No. 85 at 5, 7, 9, 11. Those motions, which were *granted*, were obviously not frivolous, much less made "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). Indeed, they were necessitated solely by Plaintiff and her counsel's continuous and obstinate refusals to conduct themselves in accordance with standard rules of discovery

practice. *See generally Cohen v. World Omni Fin. Corp.*, 457 F. App'x 882, 828 (11th Cir. 2012) ("Generally, where a plaintiff introduces sufficient evidence to support his claims, a finding of frivolity will not be upheld."). No sanctions are appropriate.

## II. Defendants Respect the Court's Right To Manage Its Own Docket

In response to Plaintiff's unusual request that discovery issues be "referred back" to Judge Moody, Defendants see no reason for such an outcome but defer to the judgment of this Court. District court judges, of course, routinely refer discovery disputes to magistrate judges, in this District and elsewhere. *See* Local R. 1.02 ("A United States magistrate judge in the Middle District can exercise the maximum authority and perform any duty permitted by the Constitution and other laws of the United States."). Far from "delay[ing] the case," as Plaintiff claims, this practice expedites resolution of discovery motions. Indeed, Magistrate Judge Lammens has ruled promptly on the motions to date, including several time-sensitive motions. And Plaintiff has offered no support for her bizarre suggestion that the Court ought to be "held accountable," or that Magistrate Judge Lammens cannot be. ECF No. 85 at 9.

It is no coincidence that Plaintiff and her counsel are seeking to have discovery issues transferred away from Judge Lammens. As one judge in this District put it, when Mr. Klayman "receives unfavorable rulings, he often plunges into a tirade against whomever he feels has wronged him," *Klayman v. City Pages,* 2015 WL 1546173, at *17 (M.D. Fla. Apr. 3, 2015), *aff'd*, 650 F. App'x 744 (11th Cir.

11

2016), and seeks to exclude—and in some cases even sue—judges whose decisions he dislikes, *see, e.g.*, *Klayman v. Kollar-Kotelly*, 892 F. Supp. 2d 261, 263 (D.D.C. 2012) (granting judges' motion to dismiss), *aff'd*, 2013 WL 2395909 (D.C. Cir. May 20, 2013); *Klayman v. Woods,* Case No. 2024-021610-CA-01 (Fla. 11th Jud. Cir. 2024) (voluntarily withdrawn).[8]

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for sanctions should be denied.

---

[8] *See also Klayman v. Porter*, Case No. 20-cv-03109-RBW (D.D.C. Sept. 28, 2023); *Reed v. Chamblee,* Case No. 3-22-cv-01181-TJC-PDB, ECF No. 93 (M.D. Fla. Oct. 23, 2023); *Klayman v. Rao*, 49 F.4th 550, 554 (D.C. Cir. 2022); *Klayman v. Fitton*, 2022 WL 14224268, at *2 (D.C. Cir. Oct. 25, 2022); *Klayman v. Judicial Watch, Inc.*, 6 F.4th 1301, 1319 (D.C. Cir. 2021), *cert. denied,* 142 S. Ct. 2731 (2022), *reh'g denied,* 143 S. Ct. 57 (2022); *Klayman v. Lim*, 2019 WL 3752774, at *1-*2 (D.D.C. Aug. 8, 2019), *aff'd* 830 F. App'x 660, 663 (D.C. Cir. 2020); *Klayman v. Fox*, 2019 WL 3752773, at *1-*2 (D.D.C. Aug. 8, 2019), *aff'd*, 830 F. App'x 660, 663 (D.C. Cir. 2020); *Moore v. Cohen*, 2019 WL 2396264, at *1-*2 (D.D.C. June 5, 2019); *Freedom Watch, Inc. v. Sessions*, 729 F. App'x 7 (Mem) (D.C. Cir. 2018); *Robles v. In the Name of Humanity, We Refuse to Accept a Fascist Am.*, 2018 WL 2329728, at *5 (N.D. Cal. May 23, 2018), *aff'd sub nom. Robles v. City of Berkeley*, 820 F. App'x 529 (9th Cir. 2020); *Klayman v. Judicial Watch, Inc.*, 278 F. Supp. 3d 252, 255 (D.D.C. 2017); *Pennie v. Obama*, 255 F. Supp. 3d 648, 673 & n.6 (N.D. Tex. 2017); *Klayman v. City Pages*, 650 F. App'x 744, 749 (11th Cir. 2016); *Strange v. Islamic Republic of Iran*, 46 F. Supp. 3d 78, 85 (D.D.C. 2014); *Klayman v. Luck*, 2012 WL 3040043, at *4 (Oh. Ct. App. July 26, 2012); *Klayman v. Luck*, 2012 WL 3040043, at *4 (Oh. Ct. App. July 26, 2012); *Klayman v. Judicial Watch, Inc.*, 744 F. Supp. 2d 264, 275-78 (D.D.C. 2010); *Sataki v. Broad. Bd. of Governors*, 733 F. Supp. 2d 54, 65 (D.D.C. 2010); *United States v. Judicial Watch, Inc.*, 266 F. Supp. 2d 1, 8 n.11 (D.D.C. 2002); *Judicial Watch, Inc. v. Carroll*, 801 So. 2d 110 (Mem) (Fla. 4th DCA 2001); *Meng v. Schwartz*, 97 F. Supp. 2d 56, 58-59 (D.D.C. 2000); *Jones v. Clinton*, 206 F.3d 811, 811-12 (8th Cir. 2000); *MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 157 F.3d 956, 963 (2d Cir. 1998); *Baldwin Hardware Corp. v. FrankSu Enter. Corp.*, 78 F.3d 550, 555 (Fed. Cir. 1996), *as amended on denial of reh'g and reh'g in banc.*

Dated: June 30, 2025

Respectfully submitted,

*/s/ Rachel E. Fugate*

**Shullman Fugate PLLC**
Rachel E. Fugate (Bar No. 144029)
100 South Ashley Drive, Suite 600
Tampa, FL 33602
Tel: (813) 935-5098
rfugate@shullmanfugate.com

Yelan Escalona (Bar No. 1031564)
201 S. Biscayne Blvd. 28th Floor
Miami, FL 33131
Tel: (305) 928-2429
yescalona@shullmanfugate.com

*Counsel for Defendants*

**Davis Wright Tremaine LLP**
Katherine M. Bolger (*pro hac vice*)
Alexandra Perloff-Giles (*pro hac vice*)
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Tel: (212) 489-8230
katebolger@dwt.com
alexandraperloffgiles@dwt.com