IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

LAURA LOOMER

Plaintiff,

v.

BILL MAHER et al

Defendants.

Case No: 5:24-cv-00625-JSM-PRL

**PLAINTIFF'S OBJECTIONS ORDER OF MAGISTRATE JUDGE PHILIP R. LAMMENS**

Plaintiff Laura Loomer ("Plaintiff") hereby objects to the June 18, 2025 Order (the "Order") of Magistrate Judge Philip R. Lammens ("Magistrate Lammens"). The Order finds that (1) the entire deposition of Plaintiff Laura Loomer must be used for litigation purposes only, (2) the deposition of Defendant Home Box Office's ("HBO") corporate representative must be used for litigation purposes only, and (3) the entire video deposition of Defendant Bill Maher is confidential, along with specific designated portions of the transcript. As shown herein, Magistrate Lammens' Order is, respectfully, not an accurate representation of the facts and law at issue.

**I.    Plaintiff Laura Loomer's Deposition Must Be Publicly Available**

Magistrate Lammens' Order finds that both the video and the transcript of Plaintiff's own deposition must be used "solely for the purposes of the litigation." Magistrate Lammens' apparent justification for this is that Fed. R. Civ. P. 26(c) "states that the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Order at 5.

1

Notwithstanding the "good cause" requirement written into Rule 26(c), which Defendants have not come close to meeting, the fact of the matter is that Plaintiff is personally in favor of having her deposition video and transcript publicly available. Thus, the purported justifications of "protecting [Plaintiff] from annoyance, embarrassment, or oppression…" simply do make any sense with regard to the Plaintiff, who would not be annoyed, embarrassed, or oppressed should her deposition be publicly available[1].

To the contrary, making Plaintiff's deposition publicly available would only serve to deflect from the harm caused to her by Defendants malicious defamation,, particularly since Defendant Maher has refused to allow Plaintiff on Real Time to publicly deny her relationship with President Trump after receiving notice pursuant to Fla. Stat. § 770.01 of his defamatory statements. Am. Comp. ¶ 33.  It is highly disingenuous if not outrageous  for the Defendants to publish the following false, malicious, defamatory, and highly damaging, low class and disgusting statement concerning Plaintiff to literally millions of people, but then now insist that this case be litigated in secret:

> **I think maybe Laura Loomer's in an arranged relationship to affect the election because she's very close to Trump. She's 31, looks like his type. We did an editorial here a few years ago…it was basically, who's Trump fucking? Because I said, you know, it's not nobody. He's been a dog for too long, and it's not Melania. I think we may have our answer this week. I think it might be Laura Loomer**. Comp. ¶ 18. (the "Defamatory Statement").

---

[1] Plaintiff filed a Motion for Clarification in order to determine what justification Magistrate Lammens had for finding that Plaintiff's deposition should be used solely for the purpose of this litigation, but Magistrate Lammens denied this motion and stated only that the Order "speaks for itself."

Plaintiff has been severely harmed by this defamatory statement, particularly in her trade and profession as a young, female investigative journalist. This has had an extremely detrimental effect on her professional reputation by creating the false impression that she has achieved her success through unscrupulous means, that is sleeping her way to the top, other than through her hard work and aptitude in her profession.  This has resulted in a very significant loss of earnings, which has required her to fundraise from her supporters in order to pay for the significant costs of this litigation—which again, was necessitated only by the Defendants' misconduct. There is nothing wrong with Plaintiff's fundraising, contrary to how the Defendants have dishonestly and disingenuously tried to portray this.

Finally, if Magistrate Lammens' Order in this regard is an attempt to shield counsel for Defendants from "annoyance, embarrassment, or oppression," this would not be a proper justification, as Defendants have provided no authority - and Magistrate Lammens cites to none  - that attorneys have any type of protection under Rule 26(c). Defendants' counsel may face embarrassment from their vexatious and harassing treatment of Plaintiff at her deposition, which dovetails with how their clients have treated Plaintiff, but they are not entitled to any type of protection in this regard.

Accordingly, where Plaintiff herself has made it known that she would suffer no "annoyance, embarrassment, or oppression," from her deposition being made publicly available, Magistrate Lammens had no possible justification for

finding that her deposition video and transcript be "used solely for the purposes of this litigation."

## II. The Cases Cited By Defendants and Adopted By Magistrate Lammens Do Not Apply

This instant case is an extremely simple and straightforward case where Defendant Maher, using his Florida, domestic and world-wide platform provided by Defendant HBO, published the following false, malicious, and defamatory statement of and concerning Ms. Loomer:

> **I think maybe Laura Loomer's in an arranged relationship to affect the election because she's very close to Trump. She's 31, looks like his type. We did an editorial here a few years ago…it was basically, who's Trump fucking? Because I said, you know, it's not nobody. He's been a dog for too long, and it's not Melania. I think we may have our answer this week. I think it might be Laura Loomer**. Comp. ¶ 18. (the "Defamatory Statement").

To the contrary, the cases cited by the Defendants and which were adopted by Magistrate Lammens for the proposition that "discovery should be used for the purposes of litigating a case and not for public dissemination" do not compare to the simple facts of this case.

*In re Alexander Grant & Co. Litigation*, 820 F.2d 352  (11th Cir. 1987) was an extremely complex case that was the result of approximately twenty (20) cases being consolidated against Defendant Alexander Grant & Company involving violations of the Securities Exchange Act of 1934. The Eleventh Circuit specifically cited to the complexity of *Alexander* in their reasoning:

> We conclude that **in complex litigation where document-by-document review of discovery materials would be unpracticable**, and when the parties consent to an umbrella order restricting access to sensitive information in order to encourage maximum

participation in the discovery process, conserve judicial resources and prevent the abuses of annoyance, oppression and embarrassment, a district court may find good cause and issue a protective order pursuant to Rule 26(c). *Id*. at 357 (emphasis added).

Similarly, *U.S. v. Anderson*, 799 F.2d 1438 (11th Cir. 1986) is another highly complex case involving an indictment against thirty criminal defendants- who were members of the Board of County Commissioners of Hillsborough County, Florida, under the Racketeer Influenced and Corrupt Organizations Act. Thus, this is another highly complex and sensitive case that raises implications that simply are not at issue here.

To the contrary, this is not a complex case. This is not a case, like *Alexander*, where document-by-document review would be "unpracticable." This is a simple defamation case. Discovery is highly limited and by the very nature of the case, not worthy of any confidentiality.

Finally, *Seattle Times Co. v. Rhinehart*, 467 U.S. 20  (1984) is equally unavailing because the Court in Seattle Times was rendering its analysis under a framework where there was an actual need for confidentiality where  documents at issue could cause physical harm and threats to members of Rhinehart's organizations if made public. Id. at 27. This concern does not exist here in a standard defamation case where there are no health and safety concerns involved and any alleged harm to Defendant Maher or Defendant HBO.

Accordingly, the binding cases cited by Defendants and adopted by the Magistrate Judge simply do not apply to such a simple, straight-forward defamation case that does not implicate the health or safety of any of the litigants

involved. Nor is this a tax, security, or business litigation case where there is a perceived need to keep confidential business information under wraps.

## III. There Has Been No Showing of Good Cause Required To Defeat The Presumption of Public Access to Judicial Records

"The common-law right of access to judicial proceedings, an essential component of our system of justice, is instrumental in securing the integrity of the process." *Chi. Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001). "Beyond establishing a general presumption that criminal and civil actions should be conducted publicly, the common-law right of access includes the right to inspect and copy public records and documents." *Id*. Importantly, this Court has found that when deciding whether a deposition should be sealed from public access, the Court must act under a presumption of public access. "A court has discretion to determine which parts of the record should be sealed, but its discretion is guided by the presumption of public access." *Harborview Realty, Inc. v. Fifth Third Bank, Nat'l Ass'n*, 2023 U.S. Dist. LEXIS 194679, at *2 (M.D. Fla. Oct. 31, 2023).

"Public disclosure of discovery material is subject to the discretion of the trial court and the federal rules that circumscribe that discretion." *Id*. at 1310. "Where discovery materials are concerned, the constitutional right of access standard is identical to that of Rule 26(c) of the Federal Rules of Civil Procedure." *Id*. Accordingly, the party seeking protection must make a showing of "good cause" as to why the materials should be excluded from the constitutional right of access. *Id*. ""[C]onclusory statements . . . do not establish good

cause…..Rather, the good cause requirement "contemplates a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Boullosa v. Equifax Info. Servs., LLC*, 2024 U.S. Dist. LEXIS 138916, at *4 (M.D. Fla. Aug. 6, 2024) (internal citations omitted).

Here, there has been zero showing as to why Defendant Maher's video deposition should be confidential, and why the depositions of Nina Rosenstein and Plaintiff must be used for the purposes of this litigation only. Defendants have failed to  identify a with specificity a single example of something that Defendant Maher said during the deposition that would harm his "legitimate privacy interests" if disclosed to the public, and Magistrate Lammens' Order is similar devoid of this. Similarly, there is absolutely nothing in the testimony of Nina Rosenstein or Plaintiff that implicates any "legitimate privacy interests," which is particularly true where Plaintiff has taken the position that her deposition should be publicly available.

Merely being "embarrassing" is not an adequate showing of good cause. Merely because something might not be "flattering" is not an adequate showing of good cause, as found by the Honorable Luis Delgado in a case styled *Klayman v. PGA Tour et al*, 50-2022-CA-006587-XXXX-MB (15th Jud. Cir. Fla.), when discussing whether documents produced by a party in discovery should be publicly available:

> While I think that most of the documentation perhaps is not relevant, but perhaps most of it might be not something that's flattering, **I think, generally speaking, it ought to be released.** Exhibit 1.

Furthermore, there is case law that states that it is not true that that a video deposition or other discovery <u>must</u> be attached to a substantive motion before it can be accessibly placed on the public record of this honorable Court. This principle is set forth *Condit v. Dunne*, 225 F.R.D. 113 (S.D.N.Y. 2004), which aligns perfectly with the facts of this case. *Condit* involved a motion for protective order brought by the Defendant, Dominick Dunne, a famous writer, journalist and producer who had made public comments about the "propriety of [Plaintiff Gary] Condit's service as a United States Congressman." *Id*. at 119. Dunne moved to keep his deposition video confidential, which the Court rejected despite the fact that the videotaped deposition was not attached to a substantive motion and thus not even a judicial record at the time. *Id*. at 118. In doing so, the *Condit* Court reasoned that the public should have access to Dunne's videotaped deposition before it was even attached to a substantive motion because (1) Dunne had publicly accused counsel for Plaintiff of "bullying" him during his deposition, and (2) that the "substantive issues in the litigation were of public concern." *Id*. at 119.

Importantly the reasoning of the *Condit* Court should be applied perfectly to the facts here. Like *Condit*, counsel for Defendants has, in public filings which are on the public docket, not just sought to validate and justify their defamation per se of Ms. Loomer, but also, to add insult to injury, falsely accused Plaintiff and her counsel of "harassing," and "attacking" Defendant Maher during his deposition, ECF No. 57 at 3, 12, and 14. Just as the *Condit* court reasoned that "…the videotape is of concern to "those monitoring the federal courts" because,

coupled with the affidavit assertions, it implicates the reliability of discovery and seemliness of lawyers' deposition tactics," *id*. at 119, the same reasoning must be applied here. Defendants cannot publicly accuse the Plaintiff and her counsel of "harassing" conduct in Defendant Maher's deposition and then try to hide evidence of the falsity of their statement, particularly when the video of the deposition will show the opposite; namely that Ms. Loomer and her counsel were treated with disrespect and harassed repeatedly by Defendants' counsel Ms. Katherine Bolger, who also used speaking objections, insults and other tactics to interfere in and obstruct the deposition at nearly every turn, signaling answers to Defendant Maher. Then,  when called out, she often lodged more insults and became hostile. Neither she nor her clients are entitled to protection from public scrutiny.

Furthermore, this case is one where "the substantive issues in this litigation are also of public concern." *Id*. In *Condit*, the Defendant made "public statements regarding a then-sitting public official. Those statements directly addressed the propriety of Condit's service as a United States Congressman." *Id*. The same applies here, where Defendants cynically, at the height of the 2024 presidential election, used Ms. Loomer as a tool to attack President Trump by falsely stating that President Trump had committed adultery by "fucking" Ms. Loomer and committing adultery behind the back of First Lady Melania Trump, who Defendants implied he no longer has sleeps or had sex with. This is outrageous, disgusting and sick. Thus, just like in *Condit*, the substance of this case involves the public's interest and therefore must be accessible by the public.

And, in any event, even if the Defendants' statement of law was correct—which it clearly is not—the video of Defendant Maher's deposition is highly relevant to pretrial discovery motions and other pleadings. As the old proverb goes, "a picture is worth a thousand words."

## IV. There is No Binding Precedent That Videos Are To Be Afforded Any Special Treatment

Magistrate Lammens adopts wholesale the U.S. District Court for the Southern District of New York cases presented to him by the Defendants for the supposed proposition that "[t]he risks that these deposition materials will be exploited for improper purpose are heightened with respect to the deposition video." Curiously, however, Magistrate Lammens rejects *Condit*, which is from the same Court, as not being binding on his decision. Order at fn. 3.

In any event, *Stern v. Cosby*, 529 F. Supp. 2d 417 (S.D.N.Y. 2007) is a case from the U.S. District Court for the Southern District of New York where the judge specifically stated that he was applying "the Second Circuit's three-part analysis to the instant case." *Id*. at 421.  Indeed, where there is not much, if any at all, confidential information disclosed in the deposition, as already conceded by the Defendants, then there should be no difference between whether the public has access to a deposition transcript or a deposition video, and in fact, the video actually gives a much more realistic and accurate portrayal of the testimony of the at issue.

## <u>CONCLUSION</u>

The bottom line here is simple. Defendant Maher, while perhaps revered in leftist anti-Trump and anti-Loomer Hollywood circles, is afforded no special protected status under the eyes of the law. He is to be treated the same as any other litigant. Defendant Maher is a party to this case. He is not an outside witness. Indeed, if even discovery and deposition testimony from President Clinton in the Monica Lewinsky affair [*Jones v. Clinton*, 990 F. Supp. 657 (E.D. Ark. 1998)] and now President Donald Trump [*Carroll v. Trump*, 22-cv-10016, (S.D. Ny 2023)] can be and indeed was made public, so too can Defendant Maher – who is simply a political pundit.

And, importantly there is absolutely no rational justification to absurdly shield Ms. Loomer's own deposition from public view, both in transcript and video format. She does not claim and does not want any confidential designation and should be free to make it publicly available to deflect from the severe harm that has been caused to her, as it explains in her own words what occurred. To order otherwise would be an abuse of discretion and raise concerns about turning this case into a virtual star chamber proceeding.

Here, counsel for Plaintiff has been approached by media who want access to this case, which is has garnered public attention through no fault of Plaintiff. Again, it is Defendants who very publicly – to their audience of millions - dragged Plaintiffs' name and reputation through the mud. For them to now insist that this extremely straightforward and simple case be litigated in a secret "star chamber" not only flies in the face of the well-establish right of the public to

access judicial records, but also is contrary to the interests of justice and fundamental fairness.

This honorable Court cannot and should not be party to this, particularly since an aggrieved woman, cynically and viciously defamed in anti-female outrageously and disgusting disrespectful sexist tropes by Defendant Maher to achieve his political objective to influence the presidential election of 2024, is simply trying to reclaim her good name. She is not a prostitute that would have sex to further her career and she should not be denied the right to convey this to the public to deflect from the huge damage Defendants maliciously and intentionally did to her reputation, good will and financial condition.

Dated:      July 2, 2025                    Respectfully Submitted,

                                            By:/s/ Larry Klayman
                                            Larry Klayman, Esq.
                                            Klayman Law Group P.A.
                                            7050 W. Palmetto Park Rd
                                            Boca Raton, FL, 33433
                                            leklayman@gmail.com

                                            *Counsel for Plaintiff*

EXHIBIT 1

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT

IN AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO.:  50-2022-CA-006587


LARRY KLAYMAN,

          Plaintiff,

v.

PGA TOUR, et al.,

          Defendants.
_____/



TRANSCRIPT OF PROCEEDINGS

HELD VIA VIDEOCONFERENCE

BEFORE THE HONORABLE LUIS DELGADO


(Pages 1 to 10)


DATE:  Tuesday, October 22, 2024
TIME:  9:50 a.m. to 9:55 a.m.



Held remotely via videoconference



Reported By:  Gail Hmielewski,
              Court Stenographer

```
 1    ALL PARTIES APPEARED VIA VIDEOCONFERENCE:

 2
      Appeared for the Plaintiff:
 3
      LARRY E. KLAYMAN, ESQUIRE, PRO SE
 4    FREEDOM WATCH, INC.
      7050 West Palmetto Park Road, #15-287
 5    Boca Raton, Florida  33433
      561-558-5336
 6    leklayman@gmail.com

 7
      Appeared for Defendants PGA Tour and
 8    Joseph William Monahan, IV:

 9    LAWRENCE D. SILVERMAN, ESQUIRE
      SIDLEY AUSTIN LLP
10    1001 Brickell Bay Drive, Suite 900
      Miami, Florida  33131
11    305-391-5100
      lawrence.silverman@sidley.com

12

13    Appeared for Nonparties Tiger Woods, Rory McIlroy, and
      Davis Love:
14
      MICHAEL FERRARA, ESQUIRE
15    KAPLAN HECKER & FINK LLP
      350 Fifth Avenue, 63rd Floor
16    New York, New York  10118
      212-763-0883
17    mferrara@kaplanhecker.com

18
      ALSO PRESENT:
19
      Asher Anderson, Legal Assistant
20

21

22

23

24

25
```

1                    INDEX OF PROCEEDINGS

2

3                                                    PAGE

4

    PROCEEDINGS                                      4

5

    CERTIFICATE OF REPORTER                          10

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

```
 1                        PROCEEDINGS
 2            THE COURT:  Larry Klayman vs. PGA Tour.
 3            MR. KLAYMAN:  Good morning, Your Honor, Larry
 4      Klayman, Pro Se.
 5            MR. SILVERMAN:  Good morning, Your Honor,
 6      Larry Silverman for the PGA Tour and
 7      Commissioner Monahan.
 8            MR. KLAYMAN:  Your Honor, we noticed this to
 9      get a status report from you where we stand with
10      regard to declassifying the documents that are at
11      issue.  It's been outstanding now for many, many
12      months.
13            These documents show anticompetitive conduct.
14      They're not financial information, they're not tax
15      information, they're not corporate information.
16      They need to be released.  We've briefed it before
17      in our various motions.
18            THE COURT:  While I think that most of the
19      documentation perhaps is not relevant, but perhaps
20      most of it might be not something that's
21      flattering, I think, generally speaking, it ought
22      to be released.
23            MR. FERRARA:  Your Honor, may we be heard?
24            THE COURT:  Yes.
25            MR. FERRARA:  This is Michael Ferrara for
```

1        nonparties.

2             Your Honor, it should not be released, and if

3        Your Honor is leaning that way, we'd ask you stay

4        the order so that we can appeal it.  The Court has

5        no subject matter jurisdiction and Mr. Klayman was

6        never properly in possession of these documents.

7             If you think about it, Your Honor, the case

8        should never have been brought.  It took some time

9        to get that right, but he brought a case in which

10       he had a putative class, but that was

11       inappropriate, as Your Honor already ruled.  He

12       could not be both pro se and represent the class,

13       and once the class was out, as Your Honor correctly

14       ruled, there's no subject matter jurisdiction, so

15       he never should have had them.

16            So the idea that a plaintiff can come in and

17       file an improper lawsuit that does not have subject

18       matter jurisdiction, get discovery and release that

19       discovery publicly, even though it has nothing to

20       do with anything, because there's no case, cannot

21       be the law.  It is a violation of the privacy of

22       nonparties.

23            So, Your Honor, we think the Court does not

24       have jurisdiction to decide it and, even if it did,

25       this result, there is - under the protective order,

6

```
 1        there is no proper purpose whatsoever because it

 2        can only be used for the case and there's no case.

 3             MR. KLAYMAN:  Your Honor --

 4             MR. FERRARA:  If you're leaning this way, we'd

 5        ask that you stay this order, because once they're

 6        released, the appeal would be moot, so we'd ask

 7        that you reconsider and deny the motion, but at the

 8        very least give us time to appeal this.

 9             MR. KLAYMAN:  Your Honor, this is another

10        effort at delay.  We've been going on

11        two-and-a-half years with this.  The matter is on

12        appeal.

13             Obviously we've taken a position that we

14        should not have had a dismissal of this case for a

15        variety of reasons - very, very strong grounds for

16        appeal.  The appellate court is going to be hearing

17        it.  They should have the documents in a public

18        context as well.  There is nothing that is any way

19        subject to any confidential designation.

20             As we set forth in a case in a pleading that

21        we filed, of particular relevance, importance, and

22        precedent is Olney v. Job.com, 2014 US Dist LEXIS,

23        ED Cal. Sept. 15, 2014.  That sets forth general

24        law here.

25             Olney also involved improper and overbroad
```

7

1    confidential designation by the defendants and the

2    plaintiffs argued to the court that the defendants

3    were behind, quote, behind a confidentiality

4    designation to shield disclosure of their allegedly

5    illegal behavior in recording telephone

6    conversations without knowledge and consent of the

7    party to the recorded call.  According to

8    plaintiff, a blanket preclusion on plaintiff's

9    right to use the CD would shield Job.com and

10   Windy City from plaintiff's allegations of illegal

11   activity at 13, Page 13.

12        The court in Olney found that the documents at

13   issue were not confidential, but then, importantly,

14   made sure to rule that hiding behind confidential

15   designations to shield evidence of illegal activity

16   was not allowable as a matter of public policy.

17        It went on to state, quote, because the

18   stipulation essentially precludes a party from

19   filing a separate lawsuit based on allegedly

20   wrongful behavior evidenced by discovery marked

21   confidential, it is unclear whether such a

22   provision would be enforceable as a matter of

23   public policy, even had plaintiff breached the

24   stipulation by using confidential discovery

25   material to file.

```
 1            And of course we cite a number of cases about
 2       the fact that in our country we don't have star
 3       chamber proceedings.
 4            THE COURT:  I'll take another look.  If I do
 5       decide that I'm going to do that, Mr. Ferrara, you
 6       can send me an order staying so that you can take
 7       your --
 8            MR. FERRARA:  And how would that work,
 9       Your Honor?  I just want to make sure there's zero
10       issue, like zero confusion here, because, I mean,
11       we can --  Will Your Honor give us a chance to
12       submit that order?  Like will we know?  I just want
13       to make sure there's not even an hour, because I --
14            THE COURT:  Send a proposal right now.
15            MR. KLAYMAN:  Your Honor, are you saying,
16       Your Honor --  You know, I hate to say this, but
17       I'm going to ask you a question.  Why is it that
18       you've delayed this case for two-and-a-half years?
19       Why is it that you've signed orders that are
20       rubber-stamped, in effect?
21            And no lack of due respect, but that's my
22       position.  I hope I can talk to you clearly about
23       this, Your Honor.  Let me go through it for the
24       record, okay, let me go through it for the record.
25            THE COURT:  Sir, sir, I've always treated
```

9

```
 1       everyone with courtesy and your question right now

 2       is disrespectful.

 3            MR. KLAYMAN:  No, I'm just trying to be

 4       honest.  I'm trying to be honest.  I'm trying to be

 5       honest, Your Honor, and let me go through it for

 6       the record.

 7            THE COURT:  Send me an order so that I can

 8       consider it, because that's what I'm going to do.

 9            MR. KLAYMAN:  Let me make a record, please.

10       Let me make a record.

11            THE COURT:  No, I'm done with this case for

12       today.  Plymouth Plaza v. Ferro (phonetic) General

13       Contracting.

14            (The proceedings concluded at 9:55 a.m.)

15

16

17

18

19

20

21

22

23

24

25
```

1                        CERTIFICATE

2

3

4    STATE OF FLORIDA

5    COUNTY OF ST. LUCIE

6

7              I, Gail Hmielewski, Court Stenographer,

8    certify that I was authorized to and did

9    stenographically report the foregoing remote

10   proceedings, and that the transcript is a true and

11   complete record of my stenographic notes.

12

13

14             Dated this 22nd day of October, 2024.

15

16

17

18

19

20

21   _____

22   Gail Hmielewski, Court Stenographer

23

24

25

**A**

**a.m** 1:18,18 9:14
**activity** 7:11,15
**al** 1:8
**allegations** 7:10
**allegedly** 7:4,19
**allowable** 7:16
**Anderson** 2:19
**anticompetitive** 4:13
**appeal** 5:4 6:6,8 6:12,16
**Appeared** 2:1,2 2:7,13
**appellate** 6:16
**argued** 7:2
**Asher** 2:19
**Assistant** 2:19
**AUSTIN** 2:9
**authorized** 10:8
**Avenue** 2:15

**B**

**based** 7:19
**Bay** 2:10
**BEACH** 1:2
**behavior** 7:5,20
**blanket** 7:8
**Boca** 2:5
**breached** 7:23
**Brickell** 2:10
**briefed** 4:16
**brought** 5:8,9

**C**

**Cal** 6:23
**call** 7:7
**case** 1:3 5:7,9,20 6:2,14,20 8:18 9:11
**cases** 8:1
**CD** 7:9
**CERTIFICATE** 3:5 10:1
**certify** 10:8
**chamber** 8:3
**chance** 8:11

**CIRCUIT** 1:1,1
**cite** 8:1
**City** 7:10
**class** 5:10,12,13
**clearly** 8:22
**come** 5:16
**Commissioner** 4:7
**complete** 10:11
**concluded** 9:14
**conduct** 4:13
**confidential** 6:19 7:1,13,14 7:21,24
**confidentiality** 7:3
**confusion** 8:10
**consent** 7:6
**consider** 9:8
**context** 6:18
**Contracting** 9:13
**conversations** 7:6
**corporate** 4:15
**correctly** 5:13
**country** 8:2
**COUNTY** 1:2 10:5
**course** 8:1
**court** 1:1,24 4:2 4:18,24 5:4,23 6:16 7:2,12 8:4 8:14,25 9:7,11 10:7,22
**courtesy** 9:1

**D**

**D** 2:9
**DATE** 1:18
**Dated** 10:14
**Davis** 2:13
**day** 10:14
**decide** 5:24 8:5
**declassifying** 4:10
**defendants** 1:9

2:7 7:1,2
**delay** 6:10
**delayed** 8:18
**DELGADO** 1:14
**deny** 6:7
**designation** 6:19 7:1,4
**designations** 7:15
**disclosure** 7:4
**discovery** 5:18 5:19 7:20,24
**dismissal** 6:14
**disrespectful** 9:2
**Dist** 6:22
**documentation** 4:19
**documents** 4:10 4:13 5:6 6:17 7:12
**Drive** 2:10
**due** 8:21

**E**

**E** 2:3
**ED** 6:23
**effect** 8:20
**effort** 6:10
**enforceable** 7:22
**ESQUIRE** 2:3,9 2:14
**essentially** 7:18
**et** 1:8
**evidence** 7:15
**evidenced** 7:20

**F**

**fact** 8:2
**Ferrara** 2:14 4:23,25,25 6:4 8:5,8
**Ferro** 9:12
**FIFTEENTH** 1:1
**Fifth** 2:15
**file** 5:17 7:25

**filed** 6:21
**filing** 7:19
**financial** 4:14
**FINK** 2:15
**flattering** 4:21
**Floor** 2:15
**Florida** 1:2 2:5 2:10 10:4
**foregoing** 10:9
**forth** 6:20,23
**found** 7:12
**FREEDOM** 2:4

**G**

**Gail** 1:24 10:7 10:22
**general** 6:23 9:12
**generally** 4:21
**give** 6:8 8:11
**go** 8:23,24 9:5
**going** 6:10,16 8:5,17 9:8
**Good** 4:3,5
**grounds** 6:15

**H**

**hate** 8:16
**heard** 4:23
**hearing** 6:16
**HECKER** 2:15
**Held** 1:13,21
**hiding** 7:14
**Hmielewski** 1:24 10:7,22
**honest** 9:4,4,5
**Honor** 4:3,5,8 4:23 5:2,3,7,11 5:13,23 6:3,9 8:9,11,15,16 8:23 9:5
**HONORABLE** 1:14
**hope** 8:22
**hour** 8:13

**I**

**idea** 5:16
**illegal** 7:5,10,15
**importance** 6:21
**importantly** 7:13
**improper** 5:17 6:25
**inappropriate** 5:11
**INDEX** 3:1
**information** 4:14,15,15
**involved** 6:25
**issue** 4:11 7:13 8:10
**IV** 2:8

**J**

**Job.com** 6:22 7:9
**Joseph** 2:8
**JUDICIAL** 1:1
**jurisdiction** 5:5 5:14,18,24

**K**

**KAPLAN** 2:15
**Klayman** 1:5 2:3 4:2,3,4,8 5:5 6:3,9 8:15 9:3,9
**know** 8:12,16
**knowledge** 7:6

**L**

**lack** 8:21
**Larry** 1:5 2:3 4:2,3,6
**law** 5:21 6:24
**LAWRENCE** 2:9
**lawrence.silve...** 2:11
**lawsuit** 5:17 7:19
**leaning** 5:3 6:4
**Legal** 2:19

leklayman@g... 2:6
LEXIS 6:22
LLP 2:9,15
look 8:4
Love 2:13
LUCIE 10:5
LUIS 1:14

**M**
marked 7:20
material 7:25
matter 5:5,14,18 6:11 7:16,22
McIlroy 2:13
mean 8:10
mferrara@ka... 2:17
Miami 2:10
Michael 2:14 4:25
Monahan 2:8 4:7
months 4:12
moot 6:6
morning 4:3,5
motion 6:7
motions 4:17

**N**
need 4:16
never 5:6,8,15
New 2:16,16
nonparties 2:13 5:1,22
notes 10:11
noticed 4:8
number 8:1

**O**
Obviously 6:13
October 1:18 10:14
okay 8:24
Olney 6:22,25 7:12
once 5:13 6:5

order 5:4,25 6:5 8:6,12 9:7
orders 8:19
ought 4:21
outstanding 4:11
overbroad 6:25

**P**
Page 3:3 7:11
Pages 1:16
PALM 1:2
Palmetto 2:4
Park 2:4
particular 6:21
PARTIES 2:1
party 7:7,18
PGA 1:8 2:7 4:2 4:6
phonetic 9:12
plaintiff 1:6 2:2 5:16 7:8,23
plaintiff's 7:8,10
plaintiffs 7:2
Plaza 9:12
pleading 6:20
please 9:9
Plymouth 9:12
policy 7:16,23
position 6:13 8:22
possession 5:6
precedent 6:22
precludes 7:18
preclusion 7:8
PRESENT 2:18
privacy 5:21
pro 2:3 4:4 5:12
proceedings 1:12 3:1,4 4:1 8:3 9:14 10:10
proper 6:1
properly 5:6
proposal 8:14
protective 5:25
provision 7:22
public 6:17 7:16

7:23
publicly 5:19
purpose 6:1
putative 5:10

**Q**
question 8:17 9:1
quote 7:3,17

**R**
Raton 2:5
reasons 6:15
reconsider 6:7
record 8:24,24 9:6,9,10 10:11
recorded 7:7
recording 7:5
regard 4:10
release 5:18
released 4:16,22 5:2 6:6
relevance 6:21
relevant 4:19
remote 10:9
remotely 1:21
report 4:9 10:9
Reported 1:24
REPORTER 3:5
represent 5:12
respect 8:21
result 5:25
right 5:9 7:9 8:14 9:1
Road 2:4
Rory 2:13
rubber-stamped 8:20
rule 7:14
ruled 5:11,14

**S**
saying 8:15
se 2:3 4:4 5:12
send 8:6,14 9:7
separate 7:19

Sept 6:23
set 6:20
sets 6:23
shield 7:4,9,15
show 4:13
SIDLEY 2:9
signed 8:19
Silverman 2:9 4:5,6
sir 8:25,25
speaking 4:21
ST 10:5
stand 4:9
star 8:2
state 7:17 10:4
status 4:9
stay 5:3 6:5
staying 8:6
Stenographer 1:24 10:7,22
stenographic 10:11
stenographica... 10:9
stipulation 7:18 7:24
strong 6:15
subject 5:5,14 5:17 6:19
submit 8:12
Suite 2:10
sure 7:14 8:9,13

**T**
take 8:4,6
taken 6:13
talk 8:22
tax 4:14
telephone 7:5
think 4:18,21 5:7,23
Tiger 2:13
time 1:18 5:8 6:8
today 9:12
Tour 1:8 2:7 4:2 4:6
transcript 1:12

10:10
treated 8:25
true 10:10
trying 9:3,4,4
Tuesday 1:18
two-and-a-half 6:11 8:18

**U**
unclear 7:21
use 7:9

**V**
v 1:7 6:22 9:12
variety 6:15
various 4:17
videoconference 1:13,21 2:1
violation 5:21
vs 4:2

**W**
want 8:9,12
WATCH 2:4
way 5:3 6:4,18
we've 4:16 6:10 6:13
went 7:17
West 2:4
whatsoever 6:1
William 2:8
Windy 7:10
Woods 2:13
work 8:8
wrongful 7:20

**X**

**Y**
years 6:11 8:18
York 2:16,16

**Z**
zero 8:9,10

**0**

**1**

Page 13

**1** 1:16
**10** 1:16 3:5
**1001** 2:10
**10118** 2:16
**13** 7:11,11
**15** 6:23
**15-287** 2:4

**2**
**2014** 6:22,23
**2024** 1:18 10:14
**212-763-0883**
  2:16
**22** 1:18
**22nd** 10:14

**3**
**305-391-5100**
  2:11
**33131** 2:10
**33433** 2:5
**350** 2:15

**4**
**4** 3:4

**5**
**50-2022-CA-0...**
  1:3
**561-558-5336**
  2:5

**6**
**63rd** 2:15

**7**
**7050** 2:4

**8**

**9**
**9:50** 1:18
**9:55** 1:18 9:14
**900** 2:10