UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**LAURA LOOMER,**

    **Plaintiff,**

v.　　　　　　　　　　　　　　　　　　　　　Case No: 5:24-cv-625-JSM-PRL

**BILL MAHER, et al.,**

    **Defendants.**

## ORDER

This matter is before the Court on the parties' dueling motions to compel. (Docs. 71, 78). The motions are fully briefed (Docs. 76, 93), and thus ripe for consideration.

### I. Plaintiff's Motion to Compel (Doc. 71)

Plaintiff's motion to compel turns on the same dispute already addressed by this Court with respect to depositions—i.e., the proper usage of discovery materials in this case. (*See* Doc. 88). At issue here is Plaintiff's First Request for Production of Documents, which was served upon Defendants on January 30, 2025. (Doc. 41). Defendants have refused to produce documents without a confidentiality agreement in place providing that documents and information produced will be used for litigation purposes only, and establishing a process for the parties to designate documents as confidential, subject to the ability of the opposing party to challenge that designation. Plaintiff has refused to negotiate or discuss such an agreement. It appears (like the earlier dispute regarding depositions) that Plaintiff wants the freedom to use discovery materials for purposes wholly unrelated to this litigation. In response to Plaintiff's motion to compel, Defendants ask the Court to enter their proposed protective order. (Docs. 76, 76-9).

As a starting point, and consistent with my previous ruling, I find that documents produced through the discovery process shall be used solely for purposes related to this litigation. This does not mean that these documents are being sealed. (Doc. 88). To the contrary, if and when, any documents produced through discovery are filed in support of a motion for summary judgment (or some other pretrial motion that requires judicial resolution of the merits), they will then be judicial records to which the public has access, subject to any claimed confidentiality.

The Eleventh Circuit has recognized that "[b]ecause parties often resist the exchange of confidential information, 'parties regularly agree, and courts often order, that discovery information will remain private.'" *In re Alexander Grant & Co. Litigation,* 820 F.2d 352, 356 (11th Cir. 1987). To that end, it is well-settled that courts "may issue umbrella protective orders to expedite the flow of discovery material and to protect the confidentiality of documents. *McCarthy v. Barnett Bank of Polk Cnty.*, 876 F.2d 89, 91 (11th Cir. 1989); *Howard v. Hartford Life & Acc. Ins. Co.*, 275 F.R.D. 649, 652 (M.D. Fla. 2011) ("a court may enter a protective order when it is necessary to expedite the flow of discovery material, promote prompt resolution of disputes over confidentiality, or facilitate the preservation of material arguably worthy of protection."); *Gunson v. BMO Harris Bank, N.A.*, 300 F.R.D. 581, 584 (S.D. Fla. 2014) (granting protective order that would "confine the use" of defendants' confidential documents "to the instant litigation"); *Woodward v. Berkery*, 714 So.2d 1027, 1033, 1037-38 (Fla. 4th DCA 1998) (reversing trial court's denial of protective order for confidentiality where the party seeking discovery "made clear her purpose to release to the press . . . information she acquires . . . during discovery" and emphasizing that "the instruments of the civil justice system of the

State of Florida should [not] be used simply to assist in the disclosure and publication" of discovery material to the public).

Here, despite being given repeated opportunities, Plaintiff has not raised any objections to the specific terms and language of the proposed protective order.[1] The Court has reviewed the proposed protective order (Doc. 76-9) and finds good cause for its issuance. Indeed, given the repeated disagreements regarding the proper usage of discovery in this case, I find that the protective order is necessary to expedite the flow of discovery material, promote prompt resolution of disputes over confidentiality, and facilitate the preservation of material arguably worthy of protection.

Accordingly, Plaintiff's motion to compel (Doc. 71) is **denied** except as stated below, and Defendants' cross-motion for protective order (Doc. 76) is **granted.** The Court will enter the attached protective order (Doc. 76-9) by separate docket entry. Within **ten days** of entry of the protective order, Defendants shall produce to Plaintiff all documents responsive to Plaintiff's First Request for Production of Documents. Because the discovery delays were due to Plaintiff's counsel's refusal to enter (or meaningfully discuss) a confidentiality agreement, the Court declines to award attorney's fees and costs.

Finally, the Court denies Plaintiff's request to reopen the depositions of Mr. Maher and Ms. Rosenstein. Plaintiff's argument that she is severely prejudiced because she did not have responsive documents when she took the depositions is unavailing. Indeed, Plaintiff chose to proceed with the depositions without first resolving the outstanding document

---

[1] In response to Plaintiff's motion to compel, Defendant outlines the repeated efforts taken by defense counsel to discuss the terms of the protective order with Plaintiff's counsel over the course of several months. (Doc. 76 at 2-10). Moreover, despite being afforded additional time to file a response to Defendants' cross-motion for a protective order (Doc. 91), Plaintiff has not done so.

request despite being advised by opposing counsel that neither Mr. Maher nor HBO's 30(b)(6) representative would appear for more than one deposition. (Doc. 76-3). While the Court remains skeptical, Plaintiff may renew her request to reopen the depositions if she can identify specific areas of inquiry relevant to the claims in this case and explain why she was unable to explore those issues at the initial depositions.

## II.     Defendants' Motion to Compel (Doc. 78)

Next, Defendants have filed a motion to compel seeking an Order directing Plaintiff to produce non-privileged documents responsive to Defendants' requests for production, to respond substantively and under oath to Defendants' interrogatories, and to serve initial disclosures containing a good faith estimate of damages and methods of calculation.

First, there is no dispute that Rule 26(a) initial disclosures were not timely produced. In response to the instant motion (which was filed on June 27, 2025), Plaintiff's counsel advised that he would serve the untimely disclosures within ten days (or July 7, 2025). Presumably, that has now occurred. **If, however, Plaintiff still has not yet served her initial disclosures, she shall do so within ten days of this Order.**

As required by Rule 26(a), Plaintiff must include in her initial disclosures:

> A computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

Fed. R. Civ. P. 26(a)(1)(iii). Rule 26(a) further states that, "[a] party must make its initial disclosures based on the information then reasonably available to it. A party is not excused from making its disclosures because it has not fully investigated the case." Fed. R. Civ. P. 26(a)(1)(E).

Courts have acknowledged that "'although estimates are often necessary in lieu of the precise damage calculation, they do not preclude a party from complying with the rule.'" *MS Health, Inc. v. Catholic Charities, Diocese of St. Petersburg, Inc.*, No. 8:20-cv-2118-VMC-AAS, 2021 WL 1338836, at *2 (M.D. Fla. April 9, 2021). In order "to comply with the initial disclosure requirements of Rule 26, parties must perform 'some analysis,' and cannot rely on general statements." *Id*. Simply stated, it is not Defendants' job to "calculate or guess the damages the plaintiff requests; instead, the plaintiff must provide, in the initial disclosures, the plaintiff's computation to support the requested damages, and must supplement those initial disclosures as appropriate." *Id.*

Plaintiff's alleged damages are also central to the disputed interrogatories and requests for production. In her amended complaint, Plaintiff alleges that because of Defendants' defamatory statements, she has been subjected to "unjustified ridicule, embarrassment, loss of reputation and professional opportunity and prospects, as well as being damaged financially." (Doc. 42 at ¶11). She alleges that she suffered "lost economic opportunities and other harm as a direct and proximate result of Defendant Maher's defamatory statements, including but not limited to the fact that she had been a strong and likely candidate for a position in President Trump's administration – and certainly would have been part of it – but after Defendant Maher widely published the defamatory statements representing that Ms. Loomer was having an adulterous sexual relationship with President Trump, . . . she did not receive a position in President Trump's administration, causing a loss of substantial financial compensation and other harm." (*Id*. at ¶¶ 44, 53, 74, 83, 93). She further alleges that she was "severely harmed and damaged . . . financially and in other ways in her profession and business as an investigative journalist . . . and personally" and that she suffered "severe

emotional damage." (*Id.* at ¶¶ 43, 52, 62, 73, 82, 92). Then in the prayer for relief, Plaintiff seeks compensatory, including actual, consequential, and incidental damages in excess of $150 million and punitive damages in excess of $350 million. (*Id.* at 21).

Turning first to the disputed interrogatories, Defendants have asked Plaintiff to:

- Provide a computation of each category of damages that You allege in this action (Interrogatory No. 1).

- Identify all revenues You have earned for your work as an investigative journalist and the source of such revenues (Interrogatory No. 8).

- Identify all business opportunities You contend You lost as a result of, or were otherwise impacted by, the September 13, 2024, Episode (Interrogatory No. 9).

These discovery requests—which track the allegations in the amended complaint—are both reasonable and directly relevant to Plaintiff's alleged damages in this case.[2] Without such discovery, Defendants are essentially precluded from critically assessing Plaintiff's claimed damages which allegedly exceed $500 million.

In response to Interrogatory Nos. 1, 8, 9, Plaintiff stated:

While damages for defamation per se, which the Court has already found in denying Defendants' motion to dismiss, are presumed, I am currently calculating the financial damages, which are increasing daily. In addition, damages to me included, but are not limited to: loss of reputation, goodwill, standing in the community, humiliation and emotional distress, which the jury will determine based upon evidence presented at trial.

As discussed above, even from the time of initial disclosures (which are contemplated to be exchanged in the early days of discovery), a party cannot hide behind generalized

---

[2] Plaintiff suggests that this discovery is not relevant because damages for defamation per se are presumed. However, even if Plaintiff is correct (and Defendants vehemently argue that she is not), she has also alleged claims for defamation and defamation by implication.

statements, such as Plaintiff's assertion that "I am currently calculating the financial damages, which are increasing daily." *See MS Health, Inc.,* 2021 WL 1338836, at *2; see also, *Essex builders Group, Inc. v. Amerisure Ins. Co.,* 230 F.R.D. 682, 685 (M.D. Fla. 2005) (holding that answer to interrogatory seeking "exact amount of money damages" was not answered sufficiently, where plaintiff responded by stating that it was not yet able to itemize the exact amount of damages, and that the allocation of damages would be the subject of expert testimony, which was not yet due under the court's scheduling order.). Likewise, Plaintiff's laundry list of categories of damages—with no further detail—is woefully deficient.

According to Plaintiff's amended complaint, she has sustained significant financial and reputational damages. Defendants are entitled to understand the basis for these claims. **Accordingly, within ten days of this Order, Plaintiff shall provide full and complete responses to Interrogatory Nos. 1, 8, and 9.**

Defendants have also moved to compel full and complete responses to requests for production regarding Plaintiff's claimed damages. Specifically, Defendants seek:

- All Documents and Communications supporting the Complaint's allegations that the September 13, 2024 Episode "severely harmed and damaged Ms. Loomer financially and in other ways in her profession and business as an investigative journalist." (Request For Production No. 12).

- All Documents and Communications supporting the Complaint's allegations that the September 13, 2024 Episode "subjected Laura Loomer within this circuit to unjustified ridicule, embarrassment, loss of reputation and professional opportunity and prospects, as well as" to "financial[]" "damage[]." (Request For Production No. 13).

- Documents and Communications not heretofore produced sufficient to show that You lost business opportunities and/or lost business income as a result of the September 13, 2024, Episode. (Request For Production No. 14).

- All Documents and Communications supporting Your contention that You "certainly would have been part of" President Trump's administration. (Request For Production No. 18).

- All Documents and Communications reflecting discussion of your fitness for a position in the Trump Administration. (Request For Production No. 20).

Plaintiff raised no objection to these requests and simply stated, "[a]ny and all nonprivileged and relevant documents will be produced at a mutually convenient date, time, and place." (Doc. 78-2 at 3-4). According to Defendants, Plaintiff has only produced her personal tax returns (but not for the year the alleged defamatory statements were made). They note that she has not produced tax returns or other documents relating to her business, Illoominate Media. And because Plaintiff has not yet provided any details about her alleged damages, Defendants do not know if she is seeking damages related to her business.

In response, Plaintiff claims that she has produced all documents responsive to these requests which are currently in her possession and control –i.e., her tax returns and documentation "showing her attempts to gain employment in the Trump administration." (Doc. 93 at 2, 3). Defendants are entitled to know what documents support Plaintiff's claimed damages. **Accordingly, within ten days of this Order, Plaintiff shall produce all responsive documents to Requests for Production Nos. 12, 13, 14, 18, and 20, and if there are no responsive documents, she shall say so.**

Defendants have also sought discovery related to Plaintiff's communications with Susie Wiles, President Trump's Chief of Staff. Interrogatory No. 7 asks Plaintiff to "[d]escribe all meetings you have had with Susie Wiles, including the date of each meeting, the subject matter of the meeting, and the identities of other persons present at the meeting." Similarly, Request for Production No. 19 seeks "[a]ll Communications between You and Susie Wiles." Attached email correspondence reflects that Defendants agreed to limit these discovery requests to meetings or communications Ms. Loomer had with Ms. Wiles about either (a) Ms. Loomer meeting with President Trump or (b) Ms. Loomer seeking a job in the Trump Administration. (Doc. 78-10 at 4, 5).

Certainly, any such meetings or communications are relevant to Plaintiff's allegations that "she had been a strong and likely candidate for a position in President Trump's administration–and certainly would have been part of it" but for Mr. Maher's statements. Given the clear relevance and Defendants' agreement to narrow the scope, Plaintiff's objections on the grounds of relevance, and because the interrogatory was broad, vague, ambiguous, vexatious, and harassing are overruled. **Within ten days of this Order, Plaintiff shall provide full and complete responses to Interrogatory No. 7 and Request for Production No. 19 as limited above.**

Interrogatory No. 10 is also disputed. It asks Plaintiff to "[i]dentify all social relationships You contend You lost as a result of, or were otherwise impacted by, the September 13, 2024, Episode." Plaintiff objected that this request was overly broad, vague, and ambiguous, vexatious, and harassing. Then without waiving these objections she stated, "social relationships were obviously damaged and impacted by the 9/13/2024 episode and compounded by 9/20/2024 episode." (Doc. 78-1 at 4). Defendants are entitled to know the

factual basis for Plaintiff's allegation that she was personally damaged by Mr. Maher's statements and that he knew that his statements would damage her social relationships. **Accordingly, Plaintiff's objections are overruled, and Plaintiff shall provide and full and complete response to Interrogatory No. 10 within ten days of this Order.**

Turning to Interrogatory Nos. 11 and 13, Defendants argue that Plaintiff's vague responses are deficient. Interrogatory No. 11 asks Plaintiff to "[i]dentify any persons who You contend were led to mistakenly believe, based on the September 13, 2024 Episode, that You and President Trump had engaged in a sexual relationship." Plaintiff responded "Objection as overly broad, vague, and ambiguous, vexatious, and harassing. Subject to and without waiving these objections, obviously, viewers of Bill Maher and Real Time who did not know me personally were led to mistakenly believe that President Trump and I engaged in a sexual relationship in addition to committing adultery behind the back of Melania Trump." Likewise, Interrogatory No. 13 requests Plaintiff to, "[i]dentify all persons with knowledge of your alleged damages." Plaintiff responded, "Myself, and those heard and/or learned of the defamation per se and other forms of defamation of the Defendants." The Court agrees that pointing to an unspecified group of people who were "mistakenly misled" or who "heard and/or learned of the defamation" without identifying any specific witnesses for Defendants to question, is not a substantive response. If Plaintiff is unaware of the identity of a single person who was "led to mistakenly believe" that she and President Trump had engaged in a sexual relationship or who has knowledge of her alleged damages, she must say so. **Within ten days of this Order, Plaintiff shall provide full and complete responses to Interrogatory Nos. 11 and 13.**

Accordingly, for the reasons discussed above, Defendants' motion to compel (Doc. 78) is **granted.** Within **ten days** of this Order, Plaintiff shall serve her initial disclosures or serve amended initial disclosures that provide sufficient detail regarding each category of damages; provide full and complete responses to Interrogatory Nos. 1, 7 (as limited by this Order), 8, 9, 10, 11, and 13; and produce all responsive documents to Request for Production Nos. 12, 13, 14, 18, 19 (as limited by this Order), and 20, or state that she has none.

**DONE** and **ORDERED** in Ocala, Florida on July 17, 2025.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

C: Counsel of Record
Unrepresented Parties