## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

LAURA LOOMER

                    Plaintiff,

      v.

BILL MAHER et al

                    Defendants.

**Case No: 5:24-cv-00625-JSM-PRL**

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' TIME SENSITIVE MOTION FOR A PROTECTIVE ORDER REGARDING <u>DEPOSITION OF CASEY BLOYS</u>

Plaintiff Laura Loomer ("Plaintiff") hereby submits the following response in opposition to Defendants' Motion for a Protective Order Regarding Deposition of Casey Bloys ("Mr. Bloys") ("Defendants' Motion"). Mr. Bloys is the CEO of Defendant HBO, and as the CEO, had to have been substantially involved in the Defamatory Statement at issue, which involved not only the Plaintiff, but also President Trump and his wife, Melania Trump, as set forth in detail below. Furthermore, contrary to Defendants' assertions, this deposition was timely noticed and the testimony and documents sought from Mr. Bloys is crucial to Plaintiff's allegations.

### I. Plaintiff Timely Noticed And Scheduled Mr. Bloys' Deposition

Counsel for Plaintiff's office began attempting to schedule a date for Mr. Bloys' deposition as early as June 25, 2025, when his staff emailed counsel for Defendants the following:

> Mr. Klayman wants to get dates for the deposition of Mr. Casey Bloys between July 7th and July 15th. Please advise availability. If no response is received by July 2, Mr. Klayman will unilaterally notice a date. Thank you. <u>Exhibit 1</u>.

Mr. Klayman explained to counsel for Defendants why Mr. Bloys' deposition was necessary on June 30, 2025:

> The CEO of Home Box Office is the person ultimately in charge of HBO's and Maher's use of Laura Loomer as the vehicle to not only defame her, but the ultimate target Donald Trump and his wife Melania Trump in order to try to influence the 2024 presidential elections. Y'all are smart enough to understand why his testimony is relevant on a number of issues, including why our 770 letter was cast aside without a retraction or other means to mitigate the damage to Ms. Loomer.
>
> That you flouted and obstructed the corporate representative deposition by producing only a very limited witness is not an excuse to oppose our deposing HBO's CEO, who was, is and remains ultimately responsible for the malicious defamatory attack meant to harm my client for the above stated reason. Exhibit 1.

On July 30, 2025, Mr. Klayman once again asked for dates for Mr. Bloys' deposition.

> In addition, you have refused to provide dates for the deposition of HBO's CEO. Please finally provide some dates for this to occur within the next two weeks. If you do not do so by cob tomorrow, we will have to set the deposition of a date without your input. His deposition is highly relevant, particularly since he had to be involved at the highest level in the decision to publish and then not retract the defamatory statements at issue, given that they also defamed per se a president of the United States. This is not a minor routine matter to say the [least]. Exhibit 1.

Thus, counsel for Defendants steadfastly refused to provide dates for Mr. Bloys to be deposed, despite counsel for Plaintiff's repeated attempts to coordinate a mutually convenient date and time. It is Defendants' refusal to coordinate in good faith that ultimately forced Plaintiff to unilaterally notice Mr. Bloys' deposition on August 27, 2025. Exhibit 2. Even then, Plaintiff still, in good faith, made it clear that despite counsel for Defendants' refusal to provide a date for

Mr. Bloys to be deposed, that the deposition could occur on "another mutually agreeable location, date and time only by agreement of the parties…." Exhibit 2. And, Plaintiff and her counsel went a step further in noticing the deposition of Mr. Bloys at Davis Wright Tremaine's offices in Los Angeles for the ease and convenience of Mr. Bloys and his counsel.

Given all of this, as a matter of public policy and in the interests of substantial fairness and justice, the Court must exercise its discretion to order that Mr. Bloys' deposition  go forward as it was set prior to the discovery cut-off date. Without counsel for Defendants' refusal to provide a date for Mr. Bloys' deposition, he would have been deposed in July, well before the discovery cut-off, and the Court already had notice of the ongoing difficulty that Plaintiff has had in scheduling Mr. Bloys in Plaintiff's August 6, 2025 Motion for Sanctions.

Defendants' purported legal "authority" otherwise is inapplicable to the facts of this case. Ironically, *Lane Constr. Corp. v. Skanska USA Civil Se., Inc.*, 2022 U.S. Dist. LEXIS 238506 (M.D. Fla. Sep. 7, 2022) actually cuts strongly in favor of Plaintiff's position, as the Court granted leave to conduct numerous depositions after the discovery cut-off date. Only in situations where the Court found that "that there has not been a showing of good cause or the necessary diligence to allow either deposition to occur after the discovery deadline," *id*. at 10, was such a request denied. Crucially, the *Lane* Court allowed the deposition of Defendants' former CEO where the Plaintiff had originally requested that he be produced between May 23 and June 17, about three months prior to the discovery cut-off of September 5. *Id*. at 7. Then, Plaintiff unilaterally noticed the former CEO's

deposition on August 9, with the deposition to occur on August 31. *Id*. at 8. Only on August 24, 2022 did the Defendant raise the issue of a lack of control over the former CEO, which caused the Court to find that the Plaintiff had acted with diligence and therefore ordered the parties to meet and confer on a date for the former CEO's deposition after he discovery cut-off. Notably, this timeline aligns almost perfectly with Plaintiff's efforts to depose Mr. Bloys, and importantly, here there is no question of control with Mr. Bloys being the <u>current</u> CEO of Defendant HBO as opposed to *Lane*.

On the other hand, the *Lane* Court rejected leave to take depositions after the discovery cut off only where the Plaintiff did not even begin attempting to coordinate a date until August 11, less than one month before the discovery cut-off. *Id*. at 9. Another party was not served with a deposition subpoena until August 18. Finally, Plaintiff did not approach Defendant about deposing their expert until August 29, one week before the discovery cut-off. *Id*. Only in these circumstances, which are not remotely similar to the facts at issue here, did the Court find that the Plaintiff had not made a "showing of good cause or the required diligence to allow this deposition to occur after the discovery deadline." *Id*. at 11.

## II.    Mr. Bloys Has Crucial Testimony Unique To Only Him That Is Essential To Plaintiff's Claims

Defendants baldly assert that Mr. Bloys does not possess any relevant first-hand knowledge of any facts relevant to Plaintiff's claims. Of course, it is abundantly clear that this self-serving determination is not one that counsel for

Defendants are entitled to decide for themselves. Holding otherwise would allow for any party to litigation to be able to hide and bury material witnesses by having their counsel claim that they do not have any relevant knowledge.

Put simply, Defendants' self-serving claim that Mr. Bloys has no relevant knowledge simply makes no sense given the fact that the Defamatory Statement attacked not just Plaintiff, but also President Trump and his wife. Thus, it more than reasonably follows that the Defamatory Statement at issue almost certainly having to have been reviewed and approved by Mr. Bloys prior to airing, given the severe repercussions that it could have on Defendant HBO as a whole.

This was effectively confirmed in the deposition of Nina Rosenstein, who admitted that all of Defendant Maher's "jokes" are reviewed either before filming or after filming and before airing:

> MS. ROSENSTEIN: Our shows are reviewed by legal, and if there are no legal issues, then the answer is yes, he can say whatever.
> MR. KLAYMAN: So do you have knowledge that the show on September 13, 2024, was reviewed by legal as to content?
> MS. ROSENSTEIN: All our shows are reviewed. The written materials are reviewed prior to the show and the -- once the show is taped, there is a legal sign-off and a programming sign-off.
>
> MR. KLAYMAN: Did legal review the entire show with regard to any of his ad libs -- Bill Maher's ad libs?
> MS. ROSENSTEIN: Yes. The show is taped at about 4:00 in L.A., and then it's -- and then we have a review that comes right after that in the overtime segment. And then legal programming sign off, and that was reviewed in that way.
> MR. KLAYMAN: So legal -- legal reviewed not just the written content but his ad libs?
> MS. ROSENSTEIN: Correct.
>
> MR. KLAYMAN: And how long after that review takes place is the show aired -- on September -- was it aired on September 13th?

> MS. ROSENSTEIN: Probably -- so sign-off is usually around, I
> would say, 10 after 8:00, and the show – Eastern Time, and the show
> airs at 10:00.
> MR. KLAYMAN: Ten after 8:00 p.m.?
> MS. ROSENSTEIN: Yes, correct.
> MR. KLAYMAN: So there's a two-hour window?
> MS. BOLGER: Object to the form.
> MS. ROSENSTEIN. Well, it's fed right away. But there is a two-hour
> window between when the show is taped and  when it airs. Exhibit
> 3.

The assertion by Defendants that Mr. Bloys has no relevant knowledge
necessarily means that Defendants are asking the Court to believe that Mr. Bloys
had no knowledge that Defendant Maher would be publishing a Defamatory
Statement to millions of people attacking not only Plaintiff but also President
Trump and his wife, despite there being layers and layers of legal review as set
forth by Ms. Rosenstein before any statement actually makes it to air. This is non-
sensical, as any CEO would certainly have prior knowledge that one of his
employees was about to publicly attack President Trump, especially given that
Defendants and their counsel certainly know first-hand that President Trump is
not one to take false statements made in media about him lying down, with
Davis Wright Tremaine ("DWT") having represented ABC and George
Stephanopoulos in a case where they were defendants in a defamation action
brought by President Trump over false published statements that President
Trump had been "found liable for rape." *Trump v. American Broadcasting
Companies, Inc. et al*, No. 1:2024cv21050 (S.D. Fla. 2024) ("Trump Case"). The
Defendants there paid $15 million dollars and also attorneys' fees to settle the
case, just to avoid being deposed. DWT also represented CBS in another case

6

brought by President Trump, *Trump v. CBS Broadcasting Inc.*, 2:24-cv-00236 (N.D. TX.), where it had doctored media coverage, and there it also threw in the towel by settling to pay $16 million. Thus, even assuming that Mr. Bloys has a completely neutral stance on President Trump and had no political desire to harm President Trump—which in and of itself is difficult to believe given HBO's politicization—he certainly does not have a neutral stance on Defendant HBO's bottom-line, as it is his job to make sure that HBO makes money. Any CEO knows if an employee is about to cost his company tens of millions of dollars, or at a bare minimum, if he truly had no advance knowledge, certainly would have disciplined that employee after the fact, which clearly did not occur to Defendant Maher, as conceded by Ms. Rosenstein:

> MR. KLAYMAN: Were there any internal discussions with Bill Maher with regard to the September 13th show as to whether he should be disciplined by HBO?
> MS. ROSENSTEIN: No. Exhibit 3.

Furthermore, Mr. Bloys certainly would have had to have been involved—upon receiving Plaintiff's Fla. Sta. § 770.01 letter demanding a retraction of the Defamatory Statement, Exhibit 4—in the decision to refuse to retract the Defamatory Statement and, in fact to allow Defendant Maher to "double down" on the next episode of Real Time and further attack Plaintiff. This is particularly true given that once potential litigation is involved, any CEO would certainly have been apprised.

Thus, Defendants' self-serving assertion that Mr. Bloys has no relevant knowledge of Plaintiff's claims is frankly, absurd and not even remotely believable.

## III.    Mr. Bloys Is Not Subject to the Apex Doctrine

Finally, Mr. Bloys' deposition is not precluded by the apex doctrine. An individual is not subject to the apex doctrine where he "has unique, non-repetitive, firsthand knowledge of the facts at issue; and (2) that other less intrusive means of discovery, such as interrogatories and depositions of other employees, have been exhausted without success." *In re in re Pinewood Techs. Asia Pac. Ltd. for Judicial Assistance Pursuant to 28 U.S.C. § 1782*, 2024 U.S. Dist. LEXIS 211317, at *13 (S.D. Fla. Nov. 19, 2024). Both of these conditions are more than satisfied here.

As set forth in the prior section, Mr. Bloys has "unique, non-repetitive, firsthand knowledge" of the facts given his unique position as CEO of Defendant HBO. Only Mr. Bloys can testify as to his having approved the Defamatory Statement on behalf of Defendant HBO and his refusing to comply with Plaintiff's Fla. Stat. § 770.01 letter. <u>Exhibit 4</u>. B Plaintiff has more than sufficiently shown above that Mr. Bloys certainly would have had to have signed off and approved an attack which could cost his company tens if not hundreds of millions of dollars on not only Plaintiff, but also President Trump and his wife. Thus, his unique, and non-repetitive firsthand knowledge is particularly relevant to the facts of this case, and particularly with regard to the issue of actual malice.

Furthermore, Plaintiff has sought other less intrusive means of discovery, having deposed Defendant Maher and having attempted to depose Defendant HBO's corporate representative but instead having been deceived under false pretenses to travel to New York to depose only Ms. Rosenstein, who had extremely limited knowledge and was not competent to testify of many of the topics delineated by Plaintiff. This, among other instances of misconduct, is currently the subject of Plaintiff's pending Motion for Sanctions. Plaintiff has also sought documents from Mr. Bloys as well, as shown in Exhibit 2. Thus, both of the conditions nullifying the apex doctrine are met and Mr. Bloys' deposition must be ordered.

Finally, Mr. Bloys was not the first HBO witness to be deposed, or who Plaintiff sought to be deposed, and his testimony now is of necessity for Plaintiff to fully oppose Defendants' promised soon to be filed summary judgment motion. There is good cause to depose Mr. Bloys after months of trying in vain with Defendants' counsel to get their cooperation. That they would now file this motion, underscores what Plaintiff has asserted with cause in her Motion for Sanctions; namely that Defendants and their counsel will continue to delay and obstruct in bad faith to run up the costs of litigation for a small individual client who has been severely harmed financially and in terms of her good will and reputation.

## *Conclusion*

WHEREFORE, based on the foregoing, the Court must deny the Defendants' Motion and order that they meet and confer immediately and

provide a time and date for Mr. Bloys to be deposed, which is what Plaintiff has been attempting to do since June, 2025, going on four months ago. This is the only deposition, in addition to Defendant HBO's producing an adequate corporate representative as set forth in Plaintiff's Motion for Sanctions, that Plaintiff is seeking at this time.

And finally, this is regrettably another example of DWT's *modus operandi* throughout this case of needlessly running up time, expense and cost.

Dated:    September 12, 2025    Respectfully Submitted,

By: /s/ Larry Klayman
Larry Klayman, Esq.
Klayman Law Group P.A.
7050 W. Palmetto Park Rd
Boca Raton, FL, 33433
leklayman@gmail.com

Counsel for Plaintiff

# EXHIBIT 1

 Gmail

**Oliver Peer <oliver.peerfw@gmail.com>**

---

## Loomer v HBO

**Oliver Peer** <oliver.peerfw@gmail.com>                                                    Wed, Jun 25, 2025 at 1:24 PM
To: "Bolger, Kate" <KateBolger@dwt.com>
Cc: Larry Klayman <leklayman@gmail.com>, "Rachel E. Fugate" <rfugate@shullmanfugate.com>

Good afternoon:

Mr. Klayman wants to get dates for the deposition of Mr. Casey Bloys between July 7th and July 15th. Please advise
availability. If no response is received by July 2, Mr. Klayman will unilaterally notice a date. Thank you.

Regards,
Oliver Peer
Klayman Law Group P.A.
[Quoted text hidden]

 Gmail

**Oliver Peer <oliver.peerfw@gmail.com>**

---

## Loomer v HBO

---

**Larry Klayman** <leklayman@gmail.com>                                    Mon, Jun 30, 2025 at 3:36 PM
To: "Bolger, Kate" <KateBolger@dwt.com>
Cc: Oliver Peer <oliver.peerfw@gmail.com>, "Rachel E. Fugate" <rfugate@shullmanfugate.com>

   The CEO of Home Box Office is the person ultimately in charge of HBO's and Maher's use of Laura Loomer as the vehicle
   to not only defame her, but the ultimate target Donald Trump and his wife Melania Trump in order to try to influence the
   2024 presidential elections.  Y'all are smart enough to understand why his testimony is  relevant on a number of issues,
   including why our 770 letter was cast aside without a retraction or other means to mitigate the damage to Ms. Loomer.

   That you flouted and obstructed the corporate representative deposition by producing only a very limited witness is not an
   excuse to oppose our deposing HBO's CEO, who was, is and remains ultimately responsible for the malicious defamatory
   attack meant to harm my client for the above stated reason.


   Larry Klayman


   [Quoted text hidden]

 Gmail

**Oliver Peer <oliver.peerfw@gmail.com>**

---

## Re: Loomer v. HBO

**Larry Klayman** <leklayman@gmail.com>                                   Wed, Jul 30, 2025 at 10:51 AM
To: "Bolger, Kate" <KateBolger@dwt.com>
Cc: Oliver Peer <oliverpeerfw@gmail.com>, "Rachel E. Fugate" <rfugate@shullmanfugate.com>

Ms. Bolger:

Your threats are non-meritorious and  meant to drive up the cost of litigation for Ms. Loomer also illogical that she would
have to produce documents before her objections are heard by the judge. This would moot out the objections before they
are considered by the judge.  We will be making this point with the judge later today and notwithstanding that you miscited
a case from another district court, not the Middle District, your threats are transparent.

If we go that route without allowing for Ms. Loomer's objections to be heard, we will move for cross sanctions and take
other appropriate actions. It would be merely vindictive and  pure harassment. You already browbeat and harassed Ms.
Loomer at depositions, and this is unethical, particularly for a lawyer who is in this case pro hac vice and is not licensed in
Florida. It is also unethical in New York state. You and your firm are very partisan and recognized Trump haters, and Ms.
Loomer is a Trump supporter. She is thus rich target for you and your clients, who have the same rabid political and
ideological bent as you and your anti-Trump law firm.

In addition, you have refused to provide dates for the deposition of HBO's CEO. Please finally provide some dates for this
to occur within the next two weeks. If you do not do so by cob tomorrow, we will have to set the deposition of a date
without your input. His deposition is highly relevant, particularly since he had to be involved at the highest level in the
decision to publish and then not retract the defamatory statements at issue, given that they also defamed per se a
president of the United States. This is not a minor routine matter to say the lease.

Please govern yourself accordingly.

Larry Klayman, Esq.

[Quoted text hidden]

# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF

LAURA LOOMER

                        Plaintiff,

            v.                                  **Case No: 5:24-cv-00625-JSM-PRL**

BILL MAHER et al

                        Defendants.

## <u>NOTICE OF TAKING DEPOSITION DUCES TECUM</u>

TO:    CASEY BLOYS
       350 South Grand Ave
       27th Floor
       Los Angeles, CA, 90071

PLEASE TAKE NOTICE that pursuant to Rule 30 of the Federal Rules of Civil Procedure, Plaintiff will take the deposition of the Casey Bloys, the Chief Executive Officer of Defendant Home Box Office Inc. ("HBO"). This deposition will take place at Davis Wright Tremaine LLP, 350 South Grand Ave, 27th Floor, Los Angeles, CA, 90071 on September 25, 2025 at 10:00 a.m. or another mutually agreeable location, date and time only by agreement of the parties, given that Defendants' counsel has thus far refused on several occasions to provide suggested dates, times and places so this deposition may timely proceed.. Otherwise, the date, time and place of this notice will stand. This deposition will be taken by stenographic and video means before an officer authorized to administer oaths and will continue from day to day until completed. The deposition will be taken for the purposes of discovery, for use at trial in this

matter, and for any other purpose permitted under the Federal Rules of Civil Procedure.

Pursuant to Federal Rule of Civil Procedure 30(b)(2), the deponent shall produce the documents specified in the <u>Attachment</u> below.

Dated:      August 27, 2025                    Respectfully Submitted,


                                               By:<u>/s/ Larry Klayman</u>
                                               Larry Klayman, Esq.
                                               Florida Bar No.: 246220
                                               Klayman Law Group P.A.
                                               7050 W. Palmetto Park Rd
                                               Boca Raton, FL, 33433
                                               Tel: 561-558-5536
                                               leklayman@gmail.com

                                               *Counsel for Plaintiffs*

## ATTACHMENT

## DEFINITIONS

1.1.    As used herein, "you" or "your" shall mean **CASEY BLOYS** and/or
anyone acting on your behalf.

1.2.    The singular shall include the plural and vice versa; the terms "and"
and "or" shall be both conjunctive and disjunctive; and the term "including"
means "including without limitation."

1.3.    "Agent" shall mean: any person or entity acting at the direction of or
on behalf of another.

1.4.    "Person" shall mean any individual, corporation, proprietorship,
partnership, trust, association or any other entity.

1.5.    The words "pertain to" or "pertaining to" mean: relates to, refers to,
contains, concerns, describes, embodies, mentions, constitutes, constituting,
supports, corroborates, demonstrates, proves, evidences, shows, refutes,
disputes, rebuts, controverts or contradicts.

1.6.    As used herein, "relevant time period" shall mean from **January 1,
2024** to the present.

1.7.    The word "identify" when used in reference to a document, means
and includes the name and address of the custodian of the document, the

location of the document, land a general description including (1) the type of document (i.e. correspondence, memorandum, facsimile etc.; (2) the general subject matter of the document; (3) the date of the document; (4) the author of the document; (5) the addressee of the document; and (6) the relationship of the author and addressee to each other.

1.8.    The terms "document" or "documents" shall mean any and all information in tangible form and shall include, without limiting the generality of the foregoing, all letters, telegrams, telexes, teletypes, correspondences, telephone billing records, e-mails, contracts, drafts, agreements, notes to file, reports, memoranda, mechanical or electronic recordings or transcripts of such recordings, audio, video, blueprints, flow sheets, flow charts, calendar or diary entries, memoranda or telephone or personal conversations, text messages, signal messages, memoranda of meetings or conferences, studies, reports, interoffice and intra-office communications, quotations, offers, inquiries, bulletins, circulars, statements, manuals, summaries, newsletters, compilations, maps, charts, graphs, propositions, articles, announcements, newspaper clippings, books, records, tables, books of account, ledgers, vouchers, canceled checks, invoices, bills, opinions, certificates, promissory notes and other evidence of indebtedness and all drafts and copies of documents as hereinabove defined by whatever means made. If multiple copies of a document exist, each copy which is in any way not completely identical to a copy which is being produced should also be produced.

**INSTRUCTIONS**

4

1.9.    If you object to fully identifying a document or oral communication because of an alleged privilege, you must nevertheless provide the following information:

  a)    the nature of the privilege claimed (including work product);

  b)    if the privilege is being asserted in connection with a claim or defense governed by state law, the state privilege rule being invoked;

  c)    the date of the document or oral communication;

  d)    if a document: its type, custodian, location, and such other information sufficient to identify the document for a subpoena *duces tecum* or a document request;

  e)    if an oral communication, the place where it was made, the names of the persons present while it was made, and, if not apparent, the relationship of the persons present to the declarant; and

  f)    the general subject matter of the document or oral communication.

## SPECIFIC DOCUMENTS REQUESTED

1.    Any and all documents that refer or relate to Laura Loomer and the September 13, 2025 broadcast of Real Time With Bill Maher

2.    Any and all documents that refer or relate to your knowledge of the alleged defamatory publication on September 13, 2024:

> I think maybe Laura Loomer's in an arranged relationship to affect the election because she's very close to Trump. She's 31, looks like his type. We did an editorial here a few years ago…it was basically, who's Trump fucking? Because I said, you know, it's not nobody.

He's been a dog for too long, and it's not Melania. I think we may have our answer this week. I think it might be Laura Loomer. Am. Comp. ¶ 18.

3.      Any and all documents that refer or relate to your knowledge of whether the defamatory publication should have been retracted and whether you had decision-making input or authority into this.

4.      Any and all documents that refer or relate to the decision to not allow Laura Loomer to appear as a guest on Real Time to address the alleged defamatory publication.

5.      Any and all documents that refer or relate to the net worth of Home Box Office for each of the last five years (2020– 2025), including but not limited to federal and state tax returns.

6.      Any and all documents that refer or relate to communications with Bill Maher and/or his writers, producers and/or staff over the alleged defamatory publication.

7.      Any and all documents that refer or relate to and constitute Bill Maher's employment and/or contract file.

8.      Any and all documents that refer or relate to whether Bill Maher was considered for discipline, should be disciplined and/or was disciplined regarding the alleged defamatory publication.

9.      Any and all documents that refer or relate to whether any insurance carrier has been put on notice of Plaintiff's claims and communications with the same.

10.     A copy of any insurance policy that are alleged to cover any liability

resulting from the alleged defamation.

11.    Any and all documents concerning allegations of defamation concerning Bill Maher by others.

12.    Any and all documents which refer or relate in any way to the Real Time Show of September 20, 20234 and Laura Loomer.

13.    Any and all documents that refer or relate to Donald Trump and/or Melania Trump and the alleged defamatory publication.

EXHIBIT 3

Laura Loomer v.                  FINAL                    May 7, 2025
Bill Maher                  [CONFIDENTIAL]              Nina Rosenstein

```
                                                      Page 47
 1   that segment as they were for the prior segment on
 2   September 13th?
 3              MS. BOLGER:  Object to the form.
 4          That question is unclear.  She's not going
 5          to answer that question.  Ask a better
 6          question.
 7   Q.    All right.  Well, let me break it down.
 8          Was there any direction by HBO after the
 9   September 13th broadcast which allegedly defamed my
10   client, Laura Loomer, to not discuss her further on
11   the Real Time show?
12   A.    No.
13   Q.    Were there any internal discussions with
14   Bill Maher with regard to the September 13th show
15   as to whether he should be disciplined by HBO?
16   A.    No.
17   Q.    So HBO had no concern about what Bill Maher
18   said about my client, Laura Loomer, on
19   September 13, 2024?
20              MS. BOLGER:  Object to the form.
21          You may answer that question.
22   A.    No.  Bill Maher speaks about public figures
23   all the time, so no.
24   Q.    So is it HBO's position that Bill Maher can
25   say anything he wants without consequence?
```

Laura Loomer v.          FINAL            May 7, 2025
Bill Maher          [CONFIDENTIAL]      Nina Rosenstein

Page 48

```
 1            MS. BOLGER:  Object to the form.
 2        You can answer that question.
 3   A.    Our shows are reviewed by legal, and if
 4   there are no legal issues, then the answer is yes,
 5   he can say whatever.
 6   Q.    So do you have knowledge that the show on
 7   September 13, 2024, was reviewed by legal as to
 8   content?
 9   A.    All our shows are reviewed.  The written
10   materials are reviewed prior to the show and the --
11   once the show is taped, there is a legal sign-off
12   and a programming sign-off.
13   Q.    And who at legal handles that?
14   A.    There's a rotating group.  On that
15   particular night it was Daniel Nemet-Nejat and a
16   woman named Vianni Luhrsen from programming.
17   Q.    Can you please spell their names?
18   A.    Sure.  Daniel Nemet-Nejat,
19   N-E-M-E-T-dash-N-E-J-A-T, and Vianni Luhrsen is
20   L-U-H-R-S-E-N.
21   Q.    So before the September 13th show was
22   aired, legal reviewed it and cleared it?
23            MS. BOLGER:  Object to the form.
24   A.    Legal reviewed the written elements which
25   would be the monologue, the desk piece, the new
```

JANE ROSE REPORTING       National Court-Reporting Coverage
1-800-825-3341           janerose@janerosereporting.com

Laura Loomer v.                   FINAL                        May 7, 2025
Bill Maher                  [CONFIDENTIAL]                 Nina Rosenstein

Page 49

1   rules, and the editorial.

2   Q.      Did legal review the entire show with

3   regard to any of his ad libs -- Bill Maher's ad

4   libs?

5   A.      Yes.  The show is taped at about 4:00 in

6   L.A., and then it's -- and then we have a review

7   that comes right after that in the overtime

8   segment.  And then legal programming sign off, and

9   that was reviewed in that way.

10  Q.      So legal -- legal reviewed not just the

11  written content but his ad libs?

12  A.      Correct.

13          MS. BOLGER:  Object -- object to

14      the form.

15          THE WITNESS:  I'm sorry.

16  A.      Yes.

17  Q.      Okay.

18  A.      Correct.

19  Q.      And how long after that review takes place

20  is the show aired -- on September -- was it aired

21  on September 13th?

22  A.      Probably -- so sign-off is usually around,

23  I would say, 10 after 8:00, and the show -- Eastern

24  Time, and the show airs at 10:00.

25  Q.      Ten after 8:00 p.m.?

Laura Loomer v.                  FINAL                May 7, 2025
Bill Maher                  [CONFIDENTIAL]         Nina Rosenstein

Page 50

1   A.      Yes, correct.

2   Q.      So there's a two-hour window?

3           MS. BOLGER:  Object to the form.

4   A.      Well, it's fed right away.  But there is a

5   two-hour window between when the show is taped and

6   when it airs.

7   Q.      So legal reviewed the ad lib that -- well,

8   let's -- let me back up.

9           You're aware that Bill Maher claimed in

10  his -- let me back that up even further.

11          Have you reviewed Bill Maher's deposition

12  before today, the transcript or -- or the video?

13  A.      No.

14  Q.      Okay.  You are aware that he claimed at his

15  deposition otherwise, that he ad-libbed the

16  statement, which is the subject of the complaint.

17          "I think maybe Laura Loomer's in an

18  arranged relationship to affect the election

19  because she's very close to Trump.  She's 31, looks

20  like his type.  We did an editorial here a few

21  years ago.  It was basically 'Who's Trump fucking?'

22  because I said, you know, it's not nobody.  He's

23  been a dog for too long, and it's not Melania.  I

24  think we may have our answer this week.  I think it

25  might be Laura Loomer."

# EXHIBIT 4

# KLAYMAN LAW GROUP
## A PROFESSIONAL ASSOCIATION

Larry Klayman, Esq.                    7050 W. Palmetto Park Rd                    Tel: 561-558-5336
                                        Boca Raton, FL, 33433

Via Federal Express

September 16, 2024

Home Box Office, Inc.
30 Hudson Yards
New York, NY, 10001

Bill Maher
c/o William Morris Endeavor
9601 Wilshire Blvd
Beverly Hills, California, 90210

**Re: Cease and Desist Letter and Demand for Retraction Pursuant to Fla. Stat. § 770.01**

Attn: Bill Maher and Home Box Office, Inc.

This letter is to put you on notice of false, malicious, and defamatory statements of and concerning my client, Laura Loomer ("Ms. Loomer"), made by Bill Maher ("Maher") on the September 13, 2024 episode of Real Time With Bill Maher, which was broadcasted by Home Box Office, Inc. ("HBO") and to demand a correction or retraction of these statements along with a published apology on an episode of Real Time With Bill Maher featuring Ms. Loomer as a guest. These false, malicious, and defamatory statements are set forth below.

> I think maybe Laura Loomer's in an arranged relationship to affect the election because she's very close to Trump. She's 31, looks like his type. We did an editorial here a few years ago…it was basically, who's Trump fucking? Because I said, you know, it's not nobody. He's been a dog for too long, and it's not Melania. I think we may have our answer this week. I think it might be Laura Loomer.

Maher has falsely, and without any factual basis, accused Ms. Loomer of having committed adultery with Mr. Trump, who is married to Melania Trump. These statements are highly damaging to Ms. Loomer's reputation and goodwill and are, in fact, defamatory *per se*. "…words which falsely accuse a woman of adultery are libelous per se and that a plaintiff need not allege or prove general or special damages." *Bobenhausen v. Cassat Ave. Mobile Homes, Inc.*, 344 So. 2d 279, 281 (Fla. Dist. Ct. App. 1977).

Accordingly, with full reservation of all rights to pursue legal remedies including but not limited to filing suit, Ms. Loomer demands correction or retraction of these false, malicious, and

defamatory statements within five (5) days pursuant to Fla. Stat. § 770.01 along with a public apology on an episode of Real Time With Bill Maher featuring Ms. Loomer as a guest.


Dated: September 16, 2024

_____
Larry Klayman, Esq.
leklayman@gmail.com

Counsel for Laura Loomer