UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**LAURA LOOMER,**

    Plaintiff,

v.                                            Case No: 5:24-cv-625-JSM-PRL

**BILL MAHER and HOME BOX OFFICE, INC.,**

    Defendants.

### ORDER

In litigating this defamation action, the parties have had numerous disagreements about the proper scope and usage of discovery materials. Now, Defendant Home Box Office, Inc. ("HBO") has filed a motion seeking a protective order preventing Plaintiff Laura Loomer from taking the deposition of HBO's Chairman and Chief Executive Officer, Casey Bloys. (Doc. 122). Plaintiff has filed a response in opposition. (Doc. 126).

The Court's scheduling order—which "may be modified only for good cause and with the judge's consent"—establishing a discovery deadline of September 2, 2025. Fed. R. Civ. P. 16(b)(4); Doc. 40. While Plaintiff set Mr. Bloys' deposition before the close of discovery (August 27, 2025), it was scheduled to take place on September 25, 2025, three weeks after the close of discovery. The Middle District of Florida's Civil Discovery Handbook clearly states that the discovery completion date "means that all discovery must be completed by that date," and "untimely discovery requests are subject to objection on that basis." Middle District Discovery (2021) §I (F).

Nevertheless, Plaintiff argues that the untimely deposition should be permitted to go forward because Plaintiff was attempting to schedule the deposition for months, but Defendant refused to provide any dates. The record confirms that Plaintiff's counsel began attempting to coordinate a deposition date for Mr. Bloys on June 25, 2025. (Doc. 122-1 at 4-5). However, by July 1, 2025, HBO had clearly stated its position that it would not make Mr. Bloys available for deposition because he had not been involved in the allegedly defamatory statement and Plaintiff could obtain the information through less intrusive means of discovery. (*Id*. at 1, 4). Thus, at that point, Plaintiff was on notice that HBO was not going to coordinate deposition dates for Mr. Bloys. Plaintiff offers no explanation as to why she then waited eight more weeks before noticing the deposition.[1]

Even if the deposition notice was timely, the Court agrees with HBO that it would not be proper to subject Mr. Bloys to a deposition. Under Federal Rule of Civil Procedure 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). However, Rule 26 also protects those from whom discovery is sought from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The party seeking a protective order must show that "good cause" exists for the court to issue such an order. *Id.* "The burden is on the movant to show the necessity of the protective order, and the movant must meet this burden with a 'particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'" *Ekokotu v. Fed. Exp. Corp.*, 408 F.

---

[1] In her response, Plaintiff contends that the Court had notice of the difficulties Plaintiff had in scheduling Mr. Bloys' deposition based on Plaintiff's "August 6, 2025, Motion for Sanctions." (Doc. 126 at 3). However, a review of the docket shows that the motion was filed on August 26, 2025, the day before the deposition notice was filed. (Doc. 115).

App'x 331, 336 (11th Cir. 2011) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

"'Requests to depose high level officials are commonly referred to as 'apex' depositions.'" *Aileron Inv. Mgmt., LLC v. Am. Lending Ctr., LLC*, No. 8:21-cv-146-MSS-AAS, 2021 WL 7448237, at *2 (M.D. Fla. Aug. 13, 2021) (quoting *Chick-Fil-A, Inc. v. CFT Dev., LLC*, Case No. 5:07-cv-501-OC-10GRJ, 2009 WL 928226, at *1 (M.D. Fla. Apr. 3, 2009)). Federal courts in Florida have adopted the apex doctrine and routinely apply it to high-level corporate representatives, such as Mr. Bloys. *Id.* at *3 (citing cases). "'Courts have generally restricted parties from deposing high-ranking officials because (by virtue of their position) they are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts.'" *Id.* (quoting *Brown v. Branch Banking & Trust Co.*, Case No. 13-81192-CIV, 2014 WL 235455, at *2 (S.D. Fla. Jan. 22, 2014) (citation omitted).

"'[A] party seeking to depose a high-ranking corporate officer must first establish that the executive: (1) has unique, non-repetitive, firsthand knowledge of the facts at issue; and (2) that other less intrusive means of discovery, such as interrogatories and depositions of other employees, have been exhausted without success.'" *Id.* (quoting *Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*, 310 F.R.D. 523, 527 (S.D. Fla. 2015). The party seeking the deposition of the high-ranking official must show that the deposition is necessary. *Id.*[2]

---

[2] The Middle District of Florida Discovery Handbook instructs:

> If information is sought from an organization, counsel should not seek in the first instance to take the deposition of the organization's senior management if someone else in the organization can be expected to have more direct and firsthand knowledge or information. Depositions are not properly used as a mechanism to inconvenience or distract

Here, HBO contends that Mr. Bloys has no firsthand knowledge relevant to any claims or defenses in this case. To support this position, HBO points to the deposition transcripts of Mr. Maher and Nina Rosenstein, both of whom testified that Bill Maher has the final say on the content of Real Time with Bill Maher. According to HBO, there is no evidence suggesting that Mr. Bloys had any role in the crafting of the allegedly defamatory statement or the approval of the episode before it aired.[3]

Nevertheless, Plaintiff contends that Mr. Bloys has "crucial testimony unique to only him that is essential to Plaintiff's claims." This assertion, however, appears to be nothing more than speculation. Indeed, Plaintiff explains:

> Defendants' self-serving claim that Mr. Bloys has no relevant knowledge simply makes no sense given the fact that the Defamatory Statement attacked not just Plaintiff, but also President Trump and his wife. Thus, it more than reasonably follows that the Defamatory Statement at issue almost certainly having to have been reviewed and approved by Mr. Bloys prior to airing, given the severe repercussions that it could have on Defendant HBO as a whole.

(Doc. 126 at 5).

Plaintiff argues that this speculation is confirmed by Ms. Rosenstein's testimony that Mr. Maher's "jokes" are reviewed by "legal" before airing. (Doc. 126 at 5-6). However, the fact that the legal department reviewed and signed off on the show before it aired, fails to

---

> senior management who may not be immediately involved in the dispute.

Middle District Discovery (2021) § II(A)(6).

[3] Indeed, according to HBO, "[t]he only document produced in this case on which Mr. Bloys appears in the To, From, or CC line is a newsletter from Bari Weiss' The Free Press, dated September 12, 2024, referencing Loomer flying to the presidential debate with Trump and then appearing with him at a 9/11 commemoration in New York." See Doc. 122 at 7 & n.1.

demonstrate that Mr. Bloys has any "unique, non-repetitive, firsthand knowledge of the facts at issue."

Moreover, Plaintiff has failed to show that she has exhausted less intrusive means of discovery without success. According to HBO—and Plaintiff does not suggest otherwise—Plaintiff has not propounded any interrogatories in this case. Nor has she made any effort to depose Dean Johnson, one of the Executive Producers of Real Time with Bill Maher, who HBO's corporate representative Nina Rosenstein testified, "deal[t] with the content" of the September 13, 2024, episode and is the person "best . . . situated to know about" the show's production materials. (Rosenstein Depo at 42:4-16, 135:18-22). HBO also identified Mr. Johnson in its amended initial disclosures as "likely to have discoverable information" about the "[r]esearch, writing, and publication of the allegedly defamatory statements at issue" and "lack of actual malice." (Doc. 122-2 at 3). And while the parties disagree about the circumstances surrounding the deposition of HBO's corporate representative deposition, it is undisputed that Plaintiff has not taken (or scheduled) the deposition for the second 30(b)(6) witness whom HBO agreed to produce as to the remaining topics.[4] Plaintiff fails to offer any explanation as to why she did not pursue these less intrusive methods of discovery before attempting to depose the highest-ranking executive at HBO.

For these reasons, I find good cause to prevent Plaintiff from taking the deposition of Casey Bloys. The Notice of Taking Deposition of Casey Bloys (Doc. 117) is hereby **stricken.**

---

[4] According to HBO, the second witness was designated to testify regarding Topic No. 9 (record retention policies and practices of HBO) and Topic No. 10 (search of documents pursuant to Plaintiff's request to produce).

- 6 -

With that said, the Court is inclined to grant Plaintiff's request to take the deposition of HBO's corporate representative designated to testify on the remaining topics. The deposition shall be conducted on or before **October 3, 2025**. Given the reopening of discovery for this very limited purpose, the Court will extend the dispositive motion deadline until **October 10, 2025**.

DONE and ORDERED in Ocala, Florida on September 18, 2025.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:
Counsel of Record