## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

LAURA LOOMER

                    Plaintiff,

     v.

BILL MAHER et al
                                  **Case No: 5:24-cv-00625-JSM-PRL**

                    Defendants.

## PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE PHILIP R. LAMMENS' ORDER OF SEPTEMBER 18, 2025

Plaintiff Laura Loomer ("Plaintiff") hereby objects to Magistrate Judge Philip R. Lammens' ("Magistrate Judge Lammens") September 18, 2025 order granting Defendants' Motion for a Protective Order Regarding Deposition of Casey Bloys ("Mr. Bloys") (the "Order").

Plaintiff respectfully focuses on what the defamatory statement at issue in this case is:

> **I think maybe Laura Loomer's in an arranged relationship to affect the election because she's very close to Trump. She's 31, looks like his type. We did an editorial here a few years ago…it was basically, who's Trump fucking? Because I said, you know, it's not nobody. He's been a dog for too long, and it's not Melania. I think we may have our answer this week. I think it might be Laura Loomer.** Am. Comp. ¶ 18 (the "Defamatory Statement").

The Defamatory Statement is a direct attack on President Trump and his wife, Melania Trump, cynically with actual malice using Plaintiff Laura Loomer as the vehicle. It is therefore inconceivable that Mr. Bloys - the CEO of Defendant HBO – was not personally and substantially involved in the Defamatory Statement. This means that Mr. Bloys should not be treated any differently than any other individual simply because he is the CEO of Defendant HBO. Plaintiff has more

than shown a strong likelihood that Mr. Bloys was personally and substantially involved in the Defamatory Statement as well as the aftermath of the Defamatory Statement. He, therefore, must be required to finally sit for deposition.

## I.    Plaintiff Timely Noticed And Scheduled Mr. Bloys' Deposition

The record shows that counsel for Plaintiff attempted on numerous occasions, months ago, in good faith to schedule a date for Mr. Bloys' deposition. Counsel for Plaintiff's office began attempting this as early as June 25, 2025, when his staff emailed counsel for Defendants the following:

> Mr. Klayman wants to get dates for the deposition of Mr. Casey Bloys between July 7th and July 15th. Please advise availability. If no response is received by July 2, Mr. Klayman will unilaterally notice a date. Thank you. Exhibit 1.

Mr. Klayman explained to counsel for Defendants why Mr. Bloys' deposition was necessary on June 30, 2025:

> The CEO of Home Box Office is the person ultimately in charge of HBO's and Maher's use of Laura Loomer as the vehicle to not only defame her, but the ultimate target Donald Trump and his wife Melania Trump in order to try to influence the 2024 presidential elections. Y'all are smart enough to understand why his testimony is relevant on a number of issues, including why our 770 letter was cast aside without a retraction or other means to mitigate the damage to Ms. Loomer.
>
> That you flouted and obstructed the corporate representative deposition by producing only a very limited witness is not an excuse to oppose our deposing HBO's CEO, who was, is and remains ultimately responsible for the malicious defamatory attack meant to harm my client for the above stated reason. Exhibit 1.

On July 30, 2025, Mr. Klayman once again asked for dates for Mr. Bloys' deposition.

> In addition, you have refused to provide dates for the deposition of HBO's CEO. Please finally provide some dates for this to occur within the next two weeks. If you do not do so by cob tomorrow, we will have to set the deposition of a date without your input. His deposition is highly relevant, particularly since he had to be involved at the highest level in the decision to publish and then not retract the defamatory statements at issue, given that they also defamed per se a president of the United States. This is not a minor routine matter to say the [least]. <u>Exhibit 1</u>.

Counsel for Defendants steadfastly refused to provide dates for Mr. Bloys to be deposed, despite counsel for Plaintiff's repeated attempts to coordinate a mutually convenient date and time. It is Defendants' refusal to coordinate in good faith that ultimately forced Plaintiff to unilaterally notice Mr. Bloys' deposition on August 27, 2025. <u>Exhibit 2</u>. Even then, Plaintiff still, in good faith, made it clear that despite counsel for Defendants' refusal to provide a date for Mr. Bloys to be deposed, that the deposition could occur on "another mutually agreeable location, date and time only by agreement of the parties…." <u>Exhibit 2</u>. And, Plaintiff and her counsel went a step further in noticing the deposition of Mr. Bloys at Davis Wright Tremaine's offices in Los Angeles for the ease and convenience of Mr. Bloys and his counsel.

Given all of this, as a matter of public policy and in the interests of substantial fairness and justice, the Court must exercise its discretion to order that Mr. Bloys' deposition go forward as it was set prior to the discovery cut-off date. Without counsel for Defendants' refusal to provide a date for Mr. Bloys' deposition, he would have been deposed in July, well before the discovery cut-off, and the Court already had notice of the ongoing difficulty that Plaintiff has had in scheduling Mr. Bloys in Plaintiff's August 26, 2025 Motion for Sanctions,

*Lane Constr. Corp. v. Skanska USA Civil Se., Inc.*, 2022 U.S. Dist. LEXIS 238506 (M.D. Fla. Sep. 7, 2022) – strong precedent of this very Court -- which was ignored by Magistrate Judge Lammens,  strongly supports Plaintiff's position, as the Court granted leave to conduct numerous depositions <u>after</u> the discovery cut-off date. Only in situations where the Court found that "that there has not been a showing of good cause or the necessary diligence to allow either deposition to occur after the discovery deadline," *id*. at 10, was such a request denied. Crucially, the *Lane* Court allowed the deposition of Defendants' former CEO where the Plaintiff had originally requested that he be produced between May 23 and June 17, about three months prior to the discovery cut-off of September 5. *Id*. at 7. Then, Plaintiff unilaterally noticed the former CEO's deposition on August 9, with the deposition to occur on August 31. *Id*. at 8. Only on August 24, 2022 did the Defendant raise the issue of a lack of control over the former CEO, which caused the Court to find that the Plaintiff had acted with diligence and therefore ordered the parties to meet and confer on a date for the former CEO's deposition after he discovery cut-off. Notably, this timeline aligns almost perfectly with Plaintiff's efforts to depose Mr. Bloys, and importantly, here there is no question of control with Mr. Bloys being the <u>current</u> CEO of Defendant HBO as opposed to *Lane*.

On the other hand, the *Lane* Court, which not coincidentally is this very Court,  rejected leave to take depositions after the discovery cut off only where the Plaintiff did not even begin attempting to coordinate a date until August 11, less than one month before the discovery cut-off. *Id*. at 9. Another party was not

served with a deposition subpoena until August 18. Finally, Plaintiff did not approach Defendant about deposing their expert until August 29, one week before the discovery cut-off. *Id*. Only in these circumstances, which are not remotely similar to the facts at issue here, did the Court find that the Plaintiff had not made a "showing of good cause or the required diligence to allow this deposition to occur after the discovery deadline." *Id*. at 11.

## II.   Mr. Bloys Has Crucial Testimony Unique To Only Him That Is Essential To Plaintiff's Claims

Magistrate Lammens' finding that Plaintiff has failed to "demonstrate that Mr. Bloys has any 'unique, non-repetitive, firsthand knowledge of the facts at issue'" is erroneous. As set forth above, Mr. Bloys is the CEO of Defendant HBO and as part of his role as CEO, Mr. Bloys certainly would have had to have signed off and approved a direct defamatory attack on President Trump which could cost his company tens if not hundreds of millions of dollars had Mr. Trump sued and prevailed. Any finding otherwise necessarily means that Mr. Bloys is not competent to perform his position as CEO of Defendant HBO, and there is no evidence that this is true. Thus, Mr. Bloys has unique, and non-repetitive firsthand knowledge is particularly relevant to the facts of this case, and particularly with regard to the issue of actual malice

This was effectively confirmed in the deposition of Nina Rosenstein, who admitted that all of Defendant Maher's "jokes" are reviewed either before filming or after filming and before airing:

> MS. ROSENSTEIN: Our shows are reviewed by legal, and if there are no legal issues, then the answer is yes,  he can say whatever.

MR. KLAYMAN: So do you have knowledge that the show on September 13, 2024, was reviewed by legal as to content?

MS. ROSENSTEIN: All our shows are reviewed. The written materials are reviewed prior to the show and the -- once the show is taped, there is a legal sign-off and a programming sign-off.

MR. KLAYMAN: Did legal review the entire show with regard to any of his ad libs -- Bill Maher's ad libs?

MS. ROSENSTEIN: Yes. The show is taped at about 4:00 in L.A., and then it's -- and then we have a review that comes right after that in the overtime segment. And then legal programming sign off, and that was reviewed in that way.

MR. KLAYMAN: So legal -- legal reviewed not just the written content but his ad libs?

MS. ROSENSTEIN: Correct.

MR. KLAYMAN: And how long after that review takes place is the show aired -- on September -- was it aired on September 13th?

MS. ROSENSTEIN: Probably -- so sign-off is usually around, I would say, 10 after 8:00, and the show – Eastern Time, and the show airs at 10:00.

MR. KLAYMAN: Ten after 8:00 p.m.?

MS. ROSENSTEIN: Yes, correct.

MR. KLAYMAN: So there's a two-hour window?

MS. BOLGER: Object to the form.

MS. ROSENSTEIN. Well, it's fed right away. But there is a two-hour window between when the show is taped and  when it airs. <u>Exhibit 3</u>.

The assertion by Defendants, which appears to have been adopted wholesale by

Magistrate Judge Lammens,   that Mr. Bloys has no relevant knowledge

necessarily means that Defendants are asking the Court to believe that Mr. Bloys

had no knowledge that Defendant Maher would be publishing a Defamatory

Statement to millions of people attacking not only Plaintiff but also President

Trump and his wife, despite there being layers and layers of legal review as set

forth by Ms. Rosenstein before any statement actually makes it to air. This is non-

sensical, as any remotely competent CEO would certainly have prior knowledge

that one of his highly paid contract celebrities was about to publicly attack President Trump, especially given that Defendants and their counsel certainly know first-hand that President Trump is not one to take false statements made in media about him lying down, with Davis Wright Tremaine ("DWT"), who also represents Defendants here, having represented ABC and George Stephanopoulos in a case where they were defendants in a defamation action brought by President Trump over false published statements that President Trump had been "found liable for rape." *Trump v. American Broadcasting Companies, Inc. et al*, No. 1:2024cv21050 (S.D. Fla. 2024) ("Trump Case"). The Defendants there paid $15 million dollars and also attorneys' fees to settle the case, just to avoid being deposed. DWT also represented CBS in another case brought by President Trump, *Trump v. CBS Broadcasting Inc.*, 2:24-cv-00236 (N.D. TX.), where it had doctored media coverage, and there it also threw in the towel by settling to pay $16 million. Thus, even assuming that Mr. Bloys has a completely neutral stance on President Trump and had no political desire to harm President Trump—which in and of itself is difficult to believe given HBO's politicization—he certainly does not have a neutral stance on Defendant HBO's bottom-line, as it is his job to make sure that HBO makes and does not lose money. Any CEO knows if the network's talent is about to potentially cost his company tens of millions of dollars, or at a bare minimum, if he truly had no advance knowledge, certainly would have considered whether to discipline that talent after the fact, which clearly did not occur to Defendant Maher, as conceded by Ms. Rosenstein:

MR. KLAYMAN: Were there any internal discussions with Bill
Maher with regard to the September 13th show as to whether he
should be disciplined by HBO?
MS. ROSENSTEIN: No. Exhibit 3.

In the wake of the Charlie Kirk assassination, we have repeatedly seen top

brass at networks step in the discipline their talent, the most notable example

being the indefinite suspension by ABC of Jimmy Kimmel. It is thus

inconceivable that Mr. Bloys was out of the loop as HBO's CEO.

Furthermore, Mr. Bloys certainly would have had to have been involved—

upon  receiving Plaintiff's Fla. Sta. § 770.01 letter demanding a retraction of the

Defamatory Statement, Exhibit 4—in the decision to refuse to retract the

Defamatory Statement and, in fact to allow Defendant Maher to "double down"

on the next episode of Real Time and further attack Plaintiff. Am. Comp. ¶ 30.

This is particularly true given that once potential litigation is involved, any CEO

would certainly have been apprised.

Finally, Plaintiff has sought other less intrusive means of discovery, having

deposed Defendant Maher and having attempted to depose Defendant HBO's

corporate representative, which reasonably would have been its executive

producer, but instead having been deceived under false pretenses to travel to

New York to depose only Ms. Rosenstein, who had extremely limited knowledge

and was not competent to testify of many of the topics delineated by Plaintiff.

Plaintiff has also sought documents from Defendants and Mr. Bloys as well, as

shown in Exhibit 2. Magistrate Judge Lammens' finding that Plaintiff failed to

exhaust less intrusive means of discovery simply because she has not

propounded interrogatories or attempted to depose Dean Johnson, one of the Executive Producers of Real Time, is erroneous.

Mr. Bloys was not the first HBO witness to be deposed, or who Plaintiff sought to be deposed, and his testimony now is of necessity for Plaintiff to fully oppose Defendants' promised soon to be filed summary judgment motion. There is good cause to depose Mr. Bloys after months of trying in vain with Defendants' counsel to get their cooperation. That they would now  attempt to block the deposition of Mr. Bloys underscores what Plaintiff has asserted with cause in her Motion for Sanctions; namely that Defendants and their counsel will continue to delay and obstruct in bad faith.

Unfortunately, the Magistrate Judge ruled in favor of the Defendants and attempts to shield Mr. Bloys from simply being deposed, suggesting he is too important to provide testimony. In our system of justice, no one is above the law, much less the CEO of HBO.

For all of these compelling reasons, Magistrate Judge's order  must respectfully be reversed in the interest of fundamental fairness, particularly since there is no prejudice to anyone to have him testify in the interest of justice. Indeed, CEO Bloys will be treated with respect as  he must respect legal process.

### Conclusion

WHEREFORE, based on the foregoing, the Court must grant this good faith objection and order that Mr. Bloys  be deposed, which is what Plaintiff has been attempting to do since June, 2025, going on four months ago.

Dated:        September 22, 2025                Respectfully Submitted,

By: /s/ Larry Klayman
Larry Klayman, Esq.
Klayman Law Group P.A.
7050 W. Palmetto Park Rd
Boca Raton, FL, 33433
leklayman@gmail.com

Counsel for Plaintiff

EXHIBIT 1

 Gmail

**Oliver Peer <oliver.peerfw@gmail.com>**

___

## Loomer v HBO

**Oliver Peer** <oliver.peerfw@gmail.com>                                          Wed, Jun 25, 2025 at 1:24 PM
To: "Bolger, Kate" <KateBolger@dwt.com>
Cc: Larry Klayman <leklayman@gmail.com>, "Rachel E. Fugate" <rfugate@shullmanfugate.com>

Good afternoon:

Mr. Klayman wants to get dates for the deposition of Mr. Casey Bloys between July 7th and July 15th. Please advise availability. If no response is received by July 2, Mr. Klayman will unilaterally notice a date. Thank you.

<span style="color:purple">Regards,
Oliver Peer
Klayman Law Group P.A.</span>
[Quoted text hidden]



Oliver Peer <oliver.peerfw@gmail.com>

---

**Loomer v HBO**

---

**Larry Klayman** <leklayman@gmail.com>                    Mon, Jun 30, 2025 at 3:36 PM
To: "Bolger, Kate" <KateBolger@dwt.com>
Cc: Oliver Peer <oliver.peerfw@gmail.com>, "Rachel E. Fugate" <rfugate@shullmanfugate.com>

The CEO of Home Box Office is the person ultimately in charge of HBO's and Maher's use of Laura Loomer as the vehicle
to not only defame her, but the ultimate target Donald Trump and his wife Melania Trump in order to try to influence the
2024 presidential elections.  Y'all are smart enough to understand why his testimony is  relevant on a number of issues,
including why our 770 letter was cast aside without a retraction or other means to mitigate the damage to Ms. Loomer.

That you flouted and obstructed the corporate representative deposition by producing only a very limited witness is not an
excuse to oppose our deposing HBO's CEO, who was, is and remains ultimately responsible for the malicious defamatory
attack meant to harm my client for the above stated reason.


Larry Klayman


[Quoted text hidden]

 Gmail

**Oliver Peer <oliver.peerfw@gmail.com>**

---

## Re: Loomer v. HBO

**Larry Klayman** <leklayman@gmail.com>                                  Wed, Jul 30, 2025 at 10:51 AM
To: "Bolger, Kate" <KateBolger@dwt.com>
Cc: Oliver Peer <oliverpeerfw@gmail.com>, "Rachel E. Fugate" <rfugate@shullmanfugate.com>

Ms. Bolger:

Your threats are non-meritorious and  meant to drive up the cost of litigation for Ms. Loomer also illogical that she would
have to produce documents before her objections are heard by the judge. This would moot out the objections before they
are considered by the judge.  We will be making this point with the judge later today and notwithstanding that you miscited
a case from another district court, not the Middle District, your threats are transparent.

If we go that route without allowing for Ms. Loomer's objections to be heard, we will move for cross sanctions and take
other appropriate actions. It would be merely vindictive and  pure harassment. You already browbeat and harassed Ms.
Loomer at depositions, and this is unethical, particularly for a lawyer who is in this case pro hac vice and is not licensed in
Florida. It is also unethical in New York state. You and your firm are very partisan and recognized Trump haters, and Ms.
Loomer is a Trump supporter. She is thus rich target for you and your clients, who have the same rabid political and
ideological bent as you and your anti-Trump law firm.

In addition, you have refused to provide dates for the deposition of HBO's CEO. Please finally provide some dates for this
to occur within the next two weeks. If you do not do so by cob tomorrow, we will have to set the deposition of a date
without your input. His deposition is highly relevant, particularly since he had to be involved at the highest level in the
decision to publish and then not retract the defamatory statements at issue, given that they also defamed per se a
president of the United States. This is not a minor routine matter to say the lease.

Please govern yourself accordingly.

Larry Klayman, Esq.

[Quoted text hidden]

EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF

LAURA LOOMER

                    Plaintiff,

                v.                              **Case No: 5:24-cv-00625-JSM-PRL**

BILL MAHER et al

                    Defendants.

## NOTICE OF TAKING DEPOSITION DUCES TECUM

TO:    CASEY BLOYS
       350 South Grand Ave
       27th Floor
       Los Angeles, CA, 90071

PLEASE TAKE NOTICE that pursuant to Rule 30 of the Federal Rules of Civil Procedure, Plaintiff will take the deposition of the Casey Bloys, the Chief Executive Officer of Defendant Home Box Office Inc. ("HBO"). This deposition will take place at Davis Wright Tremaine LLP, 350 South Grand Ave, 27th Floor, Los Angeles, CA, 90071 on September 25, 2025 at 10:00 a.m. or another mutually agreeable location, date and time only by agreement of the parties, given that Defendants' counsel has thus far refused on several occasions to provide suggested dates, times and places so this deposition may timely proceed.. Otherwise, the date, time and place of this notice will stand. This deposition will be taken by stenographic and video means before an officer authorized to administer oaths and will continue from day to day until completed. The deposition will be taken for the purposes of discovery, for use at trial in this

1

matter, and for any other purpose permitted under the Federal Rules of Civil Procedure.

Pursuant to Federal Rule of Civil Procedure 30(b)(2), the deponent shall produce the documents specified in the <u>Attachment</u> below.

Dated:        August 27, 2025              Respectfully Submitted,

                                          By:/s/ Larry Klayman_____
                                          Larry Klayman, Esq.
                                          Florida Bar No.: 246220
                                          Klayman Law Group P.A.
                                          7050 W. Palmetto Park Rd
                                          Boca Raton, FL, 33433
                                          Tel: 561-558-5536
                                          leklayman@gmail.com

                                          *Counsel for Plaintiffs*

## ATTACHMENT

## DEFINITIONS

1.1.    As used herein, "you" or "your" shall mean **CASEY BLOYS** and/or anyone acting on your behalf.

1.2.    The singular shall include the plural and vice versa; the terms "and" and "or" shall be both conjunctive and disjunctive; and the term "including" means "including without limitation."

1.3.    "Agent" shall mean: any person or entity acting at the direction of or on behalf of another.

1.4.    "Person" shall mean any individual, corporation, proprietorship, partnership, trust, association or any other entity.

1.5.    The words "pertain to" or "pertaining to" mean: relates to, refers to, contains, concerns, describes, embodies, mentions, constitutes, constituting, supports, corroborates, demonstrates, proves, evidences, shows, refutes, disputes, rebuts, controverts or contradicts.

1.6.    As used herein, "relevant time period" shall mean from **January 1, 2024** to the present.

1.7.    The word "identify" when used in reference to a document, means and includes the name and address of the custodian of the document, the

location of the document, land a general description including (1) the type of document (i.e. correspondence, memorandum, facsimile etc.; (2) the general subject matter of the document; (3) the date of the document; (4) the author of the document; (5) the addressee of the document; and (6) the relationship of the author and addressee to each other.

1.8.    The terms "document" or "documents" shall mean any and all information in tangible form and shall include, without limiting the generality of the foregoing, all letters, telegrams, telexes, teletypes, correspondences, telephone billing records, e-mails, contracts, drafts, agreements, notes to file, reports, memoranda, mechanical or electronic recordings or transcripts of such recordings, audio, video, blueprints, flow sheets, flow charts, calendar or diary entries, memoranda or telephone or personal conversations, text messages, signal messages, memoranda of meetings or conferences, studies, reports, interoffice and intra-office communications, quotations, offers, inquiries, bulletins, circulars, statements, manuals, summaries, newsletters, compilations, maps, charts, graphs, propositions, articles, announcements, newspaper clippings, books, records, tables, books of account, ledgers, vouchers, canceled checks, invoices, bills, opinions, certificates, promissory notes and other evidence of indebtedness and all drafts and copies of documents as hereinabove defined by whatever means made. If multiple copies of a document exist, each copy which is in any way not completely identical to a copy which is being produced should also be produced.

## **INSTRUCTIONS**

4

1.9.    If you object to fully identifying a document or oral communication because of an alleged privilege, you must nevertheless provide the following information:

a)    the nature of the privilege claimed (including work product);

b)    if the privilege is being asserted in connection with a claim or defense governed by state law, the state privilege rule being invoked;

c)    the date of the document or oral communication;

d)    if a document: its type, custodian, location, and such other information sufficient to identify the document for a subpoena *duces tecum* or a document request;

e)    if an oral communication, the place where it was made, the names of the persons present while it was made, and, if not apparent, the relationship of the persons present to the declarant; and

f)    the general subject matter of the document or oral communication.

## SPECIFIC DOCUMENTS REQUESTED

1.    Any and all documents that refer or relate to Laura Loomer and the September 13, 2025 broadcast of Real Time With Bill Maher

2.    Any and all documents that refer or relate to your knowledge of the alleged defamatory publication on September 13, 2024:

> I think maybe Laura Loomer's in an arranged relationship to affect the election because she's very close to Trump. She's 31, looks like his type. We did an editorial here a few years ago…it was basically, who's Trump fucking? Because I said, you know, it's not nobody.

He's been a dog for too long, and it's not Melania. I think we may
have our answer this week. I think it might be Laura Loomer. Am.
Comp. ¶ 18.

3.      Any and all documents that refer or relate to your knowledge of
whether the defamatory publication should have been retracted and whether
you had decision-making input or authority into this.

4.      Any and all documents that refer or relate to the decision to not
allow Laura Loomer to appear as a guest on Real Time to address the alleged
defamatory publication.

5.      Any and all documents that refer or relate to the net worth of Home
Box Office for each of the last five years (2020– 2025), including but not limited to
federal and state tax returns.

6.      Any and all documents that refer or relate to communications with
Bill Maher and/or his writers, producers and/or staff over the alleged
defamatory publication.

7.      Any and all documents that refer or relate to and constitute Bill
Maher's employment and/or contract file.

8.      Any and all documents that refer or relate to whether Bill Maher
was considered for discipline, should be disciplined and/or was disciplined
regarding the alleged defamatory publication.

9.      Any and all documents that refer or relate to whether any insurance
carrier has been put on notice of Plaintiff's claims and communications with the
same.

10.     A copy of any insurance policy that are alleged to cover any liability

resulting from the alleged defamation.

11.    Any and all documents concerning allegations of defamation concerning Bill Maher by others.

12.    Any and all documents which refer or relate in any way to the Real Time Show of September 20, 20234 and Laura Loomer.

13.    Any and all documents that refer or relate to Donald Trump and/or Melania Trump and the alleged defamatory publication.

# EXHIBIT 3

Laura Loomer v.                  FINAL                      May 7, 2025
Bill Maher                    [CONFIDENTIAL]                Nina Rosenstein

```
                                                            Page 47
 1    that segment as they were for the prior segment on
 2    September 13th?
 3                 MS. BOLGER:  Object to the form.
 4            That question is unclear.  She's not going
 5            to answer that question.  Ask a better
 6            question.
 7    Q.    All right.  Well, let me break it down.
 8            Was there any direction by HBO after the
 9    September 13th broadcast which allegedly defamed my
10    client, Laura Loomer, to not discuss her further on
11    the Real Time show?
12    A.    No.
13    Q.    Were there any internal discussions with
14    Bill Maher with regard to the September 13th show
15    as to whether he should be disciplined by HBO?
16    A.    No.
17    Q.    So HBO had no concern about what Bill Maher
18    said about my client, Laura Loomer, on
19    September 13, 2024?
20                 MS. BOLGER:  Object to the form.
21            You may answer that question.
22    A.    No.  Bill Maher speaks about public figures
23    all the time, so no.
24    Q.    So is it HBO's position that Bill Maher can
25    say anything he wants without consequence?
```

JANE ROSE REPORTING              National Court-Reporting Coverage
1-800-825-3341                   janerose@janerosereporting.com

Laura Loomer v.              FINAL                      May 7, 2025
Bill Maher                [CONFIDENTIAL]              Nina Rosenstein

Page 48

1              MS. BOLGER:  Object to the form.

2         You can answer that question.

3    A.    Our shows are reviewed by legal, and if

4    there are no legal issues, then the answer is yes,

5    he can say whatever.

6    Q.    So do you have knowledge that the show on

7    September 13, 2024, was reviewed by legal as to

8    content?

9    A.    All our shows are reviewed.  The written

10   materials are reviewed prior to the show and the --

11   once the show is taped, there is a legal sign-off

12   and a programming sign-off.

13   Q.    And who at legal handles that?

14   A.    There's a rotating group.  On that

15   particular night it was Daniel Nemet-Nejat and a

16   woman named Vianni Luhrsen from programming.

17   Q.    Can you please spell their names?

18   A.    Sure.  Daniel Nemet-Nejat,

19   N-E-M-E-T-dash-N-E-J-A-T, and Vianni Luhrsen is

20   L-U-H-R-S-E-N.

21   Q.    So before the September 13th show was

22   aired, legal reviewed it and cleared it?

23              MS. BOLGER:  Object to the form.

24   A.    Legal reviewed the written elements which

25   would be the monologue, the desk piece, the new

Laura Loomer v.              FINAL                    May 7, 2025
Bill Maher               [CONFIDENTIAL]            Nina Rosenstein

```
                                              Page 49
 1   rules, and the editorial.
 2   Q.      Did legal review the entire show with
 3   regard to any of his ad libs -- Bill Maher's ad
 4   libs?
 5   A.      Yes.  The show is taped at about 4:00 in
 6   L.A., and then it's -- and then we have a review
 7   that comes right after that in the overtime
 8   segment.  And then legal programming sign off, and
 9   that was reviewed in that way.
10   Q.      So legal -- legal reviewed not just the
11   written content but his ad libs?
12   A.      Correct.
13           MS. BOLGER:  Object -- object to
14       the form.
15           THE WITNESS:  I'm sorry.
16   A.      Yes.
17   Q.      Okay.
18   A.      Correct.
19   Q.      And how long after that review takes place
20   is the show aired -- on September -- was it aired
21   on September 13th?
22   A.      Probably -- so sign-off is usually around,
23   I would say, 10 after 8:00, and the show -- Eastern
24   Time, and the show airs at 10:00.
25   Q.      Ten after 8:00 p.m.?
```

Laura Loomer v.                    FINAL                    May 7, 2025
Bill Maher                   [CONFIDENTIAL]               Nina Rosenstein

---

Page 50

1  A.      Yes, correct.

2  Q.      So there's a two-hour window?

3          MS. BOLGER:  Object to the form.

4  A.      Well, it's fed right away.  But there is a

5  two-hour window between when the show is taped and

6  when it airs.

7  Q.      So legal reviewed the ad lib that -- well,

8  let's -- let me back up.

9          You're aware that Bill Maher claimed in

10 his -- let me back that up even further.

11         Have you reviewed Bill Maher's deposition

12 before today, the transcript or -- or the video?

13 A.      No.

14 Q.      Okay.  You are aware that he claimed at his

15 deposition otherwise, that he ad-libbed the

16 statement, which is the subject of the complaint.

17         "I think maybe Laura Loomer's in an

18 arranged relationship to affect the election

19 because she's very close to Trump.  She's 31, looks

20 like his type.  We did an editorial here a few

21 years ago.  It was basically 'Who's Trump fucking?'

22 because I said, you know, it's not nobody.  He's

23 been a dog for too long, and it's not Melania.  I

24 think we may have our answer this week.  I think it

25 might be Laura Loomer."

---

# EXHIBIT 4

# KLAYMAN LAW GROUP

### A PROFESSIONAL ASSOCIATION

Larry Klayman, Esq.

7050 W. Palmetto Park Rd
Boca Raton, FL, 33433

Tel: 561-558-5336

Via Federal Express

September 16, 2024

Home Box Office, Inc.
30 Hudson Yards
New York, NY, 10001

Bill Maher
c/o William Morris Endeavor
9601 Wilshire Blvd
Beverly Hills, California, 90210

**Re: Cease and Desist Letter and Demand for Retraction Pursuant to Fla. Stat. § 770.01**

Attn: Bill Maher and Home Box Office, Inc.

This letter is to put you on notice of false, malicious, and defamatory statements of and concerning my client, Laura Loomer ("Ms. Loomer"), made by Bill Maher ("Maher") on the September 13, 2024 episode of Real Time With Bill Maher, which was broadcasted by Home Box Office, Inc. ("HBO") and to demand a correction or retraction of these statements along with a published apology on an episode of Real Time With Bill Maher featuring Ms. Loomer as a guest. These false, malicious, and defamatory statements are set forth below.

> I think maybe Laura Loomer's in an arranged relationship to affect the election because she's very close to Trump. She's 31, looks like his type. We did an editorial here a few years ago…it was basically, who's Trump fucking? Because I said, you know, it's not nobody. He's been a dog for too long, and it's not Melania. I think we may have our answer this week. I think it might be Laura Loomer.

Maher has falsely, and without any factual basis, accused Ms. Loomer of having committed adultery with Mr. Trump, who is married to Melania Trump. These statements are highly damaging to Ms. Loomer's reputation and goodwill and are, in fact, defamatory *per se*. "…words which falsely accuse a woman of adultery are libelous per se and that a plaintiff need not allege or prove general or special damages." *Bobenhausen v. Cassat Ave. Mobile Homes, Inc.*, 344 So. 2d 279, 281 (Fla. Dist. Ct. App. 1977).

Accordingly, with full reservation of all rights to pursue legal remedies including but not limited to filing suit, Ms. Loomer demands correction or retraction of these false, malicious, and

defamatory statements within five (5) days pursuant to Fla. Stat. § 770.01 along with a public apology on an episode of Real Time With Bill Maher featuring Ms. Loomer as a guest.


Dated: September 16, 2024

_____
Larry Klayman, Esq.
leklayman@gmail.com

Counsel for Laura Loomer