UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA, OCALA DIVISION

---

LAURA LOOMER,

    *Plaintiff*,

- against -

BILL MAHER and HOME BOX OFFICE, INC.,

    *Defendants*.

Case No.: 5:24-cv-00625-JSM-PRL

---

### DEFENDANTS' OPPOSITION TO PLAINTIFF'S
### MOTION FOR SANCTIONS AND CROSS-MOTION FOR FEES

This Court should deny Plaintiff Laura Loomer's motion for sanctions and award fees to Defendants Home Box Office, Inc. ("HBO") and Bill Maher for responding to Plaintiff's frivolous motion.

On October 9, 2025, Defendants made available a 30(b)(6) witness to testify as to two remaining topics from Plaintiff's 30(b)(6) deposition notice. That witness, Elias Rosado, who lives in Virginia, *see* Ex. A, had cleared his schedule for two full days and flown to New York for the sole purpose of preparing for and participating in the deposition. Plaintiff's counsel, Larry Klayman, terminated the deposition after only 11 minutes. His purported grounds for terminating the deposition was a privilege objection. If Plaintiff had any good faith interest in obtaining relevant information from the witness, Plaintiff would have reserved rights on the objection and continued other lines of questioning, or even sought the Court's intervention. Instead, he ended the deposition altogether.

Now, not content to needlessly waste only Defendants' time and resources, Plaintiff now burdens the Court with *yet another* frivolous motion for sanctions. *See* ECF Nos. 66, 85, 115.[1] Plaintiff is correct—"enough is enough." ECF No. 144 at 4. Defendants respectfully request that this Court deny Plaintiff's motion for sanctions and award Defendants their costs incurred in responding to it.

## I.  FACTUAL BACKGROUND

### A.  The Lead-Up To The Deposition

Defendants were the driving force behind ensuring that the deposition of Mr. Rosado even occurred. On June 27, 2025, months before the close of discovery in this matter, Defendants wrote to Mr. Klayman offering to "make a deponent available to discuss Topics 9 and 10 in the 30b6 Notice the week of August 18." Ex. B. Defendants raised the issue again on July 1, *id.*, but Plaintiff never responded to either offer.

On September 18, 2025, the Court issued an order granting Defendants' motion for a protective order preventing Plaintiff from deposing Casey Bloys, HBO's Chairman and Chief Executive Officer. ECF No. 127. In that Order, the Court reopened discovery for the "very limited purpose" of allowing Plaintiff to depose HBO's 30(b)(6) witness on the topics of the company's record retention policies and its search for documents pursuant to Plaintiff's requests for production. *See id*. at 5 n.4 & 6. The Court ordered that this deposition take place by October 3, 2025. *See id*.

---

[1] Mr. Rosado's deposition occurred on October 9, 2025. Plaintiff waited until October 27, 2025, over two weeks later, to file a motion for sanctions.

2

That same day, Defendants emailed Plaintiff's counsel to schedule the deposition and offered to host the deposition in New York, where HBO is headquartered, on September 30, 2025. In addition, in order to save Plaintiff from costs associated with the deposition, Defendants offered to make Mr. Rosado available by Zoom. *See* Ex. A. Plaintiff's counsel responded by initially demanding to know where the witness was regularly located and then, without provocation, accused Defendants' counsel of dishonesty, writing "[w]here is the witness based? Be direct not your usual dishonest self." *Id*. Defendants again tried to schedule the deposition, but Plaintiff's counsel did not respond.

On September 22, 2025, having learned that Mr. Klayman would be suspended from the Middle District of Florida bar on September 29, the Court stayed proceedings in this matter for thirty days. *See* ECF No. 130. Plaintiff's counsel moved for and obtained a stay of his suspension from the Middle District of Florida bar. *See* ECF No. 133.[2]

Mr. Klayman's disciplinary troubles caused further difficulties regarding the timing of Mr. Rosado's deposition. On September 26, 2025, Defendants' counsel contacted Mr. Klayman to finalize plans for Mr. Rosado's deposition. Mr. Klayman, for the first time, informed Defendants that he had a scheduling conflict and requested that "[s]ince the case was stayed for awhile the days should be pushed back." *See* Ex.

---

[2] On November 6, 2025, Mr. Klayman was suspended from the Florida Bar by the Florida Supreme Court for a period of two years. *See Florida Bar v. Larry Klayman*, No. SC2023-1219 (Fl.).

3

E at 2. Defendants offered new dates, and the parties agreed that the deposition would take place on October 9, 2025.

On October 8, 2025, the day before the deposition was scheduled to take place, Defendants contacted Plaintiff, asking Plaintiff to provide the Zoom link and the court reporter's information for the deposition. Plaintiff then requested for the first time the name and title of the 30(b)(6) witness. ECF No. 144 at 2; *see* Ex. C. Upon receipt, Mr. Klayman immediately responded in all caps "NO COURT REPORTER IS VIRTUAL. THE WITNESS APPEARS TO BE IMPROPER." *Id.* at 2. After Defendants' counsel explained that Mr. Rosado is the "Senior Director E-Discovery & Digital Forensics at Warner Bros. Discovery," Mr. Klayman demanded that Defendants "produc[e] witnesses on other topics that [Nina] Rosenstein," HBO's 30(b)(6) witness on several other noticed topics, "was not competent to testify to [no] later than tomorrow." *Id.* Defendants replied: "The Court reopened discovery for the 'very limited purpose' of deposing a witness on Topic No. 9 and 10. Mr. Rosado will testify as to those topics. Discovery is closed as to all other matters. (Dkt. 127)." *Id.* at 1.

  **B. The Deposition**

On October 9, 2025, Defendants produced Mr. Rosado, Senior Director of E-Discovery and Digital Forensics at HBO's parent company, Warner Bros. Discovery. Ex. D. As part of Mr. Rosado's role, he works at the direction of counsel to "support [counsel]" through facilitating the collection and analysis of documents. ECF No. 144-1 at 11. In the context of this litigation, Mr. Rosado worked with in-house counsel at

4

HBO and Defendants' outside counsel to collect relevant documents in response to Plaintiff's discovery requests.

Mr. Klayman began the deposition by asking Mr. Rosado about his background. Ms. Bolger clarified that "the witness is here as a 30(b)(6), not in his individual capacity. His background is not relevant, but he will answer the question." ECF No. 144-1 at 4–5. Mr. Klayman immediately responded by threatening to file "another motion for sanctions." *Id.*

Mr. Klayman then began to delve into topics that were privileged and beyond the scope of the noticed deposition topics. In particular, Mr. Klayman asked Mr. Rosado whether, in other cases unrelated to this lawsuit, counsel had "ask[ed] you to look for documents in response to document requests in litigation?" ECF No. 144-1 at 11. Ms. Bolger allowed Mr. Rosado to answer, but cautioned that he should not testify "as the specifics of any other litigation." *Id.* Mr. Rosado responded, noting that "[w]e do this every day." *Id.* Mr. Klayman then asked: "So what other litigation has counsel come to you and asked you to look for documents." *Id.* at 12. Ms. Bolger objected and asked why that information was relevant. Contrary to Mr. Klayman's post-hoc rationalization that the information was necessary to "determine if any improper conduct had occurred previously in cases where document searches were at issue," Mr. Klayman stated "[i]t's relevant because it deals with his experience. Please stop it." *Id*. Ms. Bolger, in an effort to compromise, proposed that the witness "tell him the number of litigations you have done," to which Mr. Klayman burst out: "I'm not going to go through this. I'm not going to go through this. I'm tired of it. It runs up the cost

5

for my client and it's inappropriate. That is your intent with virtually everything that you do in this case, is to run up costs and to obstruct. They're simple questions." *Id.* at 12–13. Mr. Klayman then asked again for the same information. Ms. Bolger informed Mr. Klayman that Mr. Rosado's involvement in, and work for, other litigations was not public. Mr. Klayman then terminated the deposition.

Later that morning, Ms. Bolger wrote to Mr. Klayman, explaining that his question "called for attorney-client communications related to other litigations," and that he could have "asked other questions that would have avoided the issue, moved on to other questions relating to his qualification, or questioned him as to the topics for which he had been designated, among other things." Ex. D. Ms. Bolger further explained that any attempt to move for sanctions "would itself be sanctionable and[] yet another unnecessary and wasteful use of the Court's resources." *Id.*

## II.   ARGUMENT

### A.   Plaintiff's Motion for Sanctions Is Frivolous

Plaintiff has not identified any basis for awarding sanctions. Rule 30(d)(2) allows a court to impose sanctions "on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). In evaluating a motion for sanctions for conduct during a deposition, courts in the Middle District of Florida have examined whether the conduct of counsel "rise[s] to the level that [opposing counsel] could not continue with the deposition." *Sorton v. Eidolon Analytic, Inc.*, 2016 WL

6

11817755, at *5 (M.D. Fla. Dec. 19, 2016); *see also Berlinger v. Wells Fargo N.A.*, 2014 WL 6686276, at *1 (M.D. Fla. Nov. 26, 2014).

Plaintiff contends that a "review of the brief transcript . . . shows that Ms. Bolger objected [to] virtually every single even benign question posed by counsel for Plaintiff, which left him no choice but to terminate the deposition after just eleven (11) minutes." ECF No. 144 at 2. A review of the transcript shows just the opposite—that Ms. Bolger's objections were proper and that Mr. Klayman's premature termination of the deposition was not only his "choice," but a patently unreasonable one.

Ms. Bolger's objections to Plaintiff's questions were standard and did not "rise to the level that [opposing counsel] could not continue with the deposition." *Sorton*, 2016 WL 11817755, at *5. To the contrary, Ms. Bolger permitted Mr. Rosado to answer almost every question that Mr. Klayman asked, and, when met with a question that called for Mr. Rosado to reveal irrelevant and potentially privileged information, Ms. Bolger provided a reasonable and workable solution. Despite this, Mr. Klayman terminated the deposition after just 11 minutes, without ever asking a single question about either HBO's record retention policies *or* the document collection process in this case—the two topics for which he had been noticed. Any failure to obtain answers from Mr. Rosado is entirely a problem of Mr. Klayman's own making.

The Court should deny Plaintiff's motion for sanctions.

### B. Plaintiff Should Bear The Costs Of Defendants' Response To Plaintiff's Motion

Under Rule 11, a court may impose sanctions when an attorney files a motion

7

for "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," or makes "[]frivolous" legal arguments. Fed. R. Civ. P. 11(b)-(c). The purpose of Rule 11 is to "(1) deter the filing of claims, defenses, or motions with no factual or legal basis; (2) expedite the administration and procedure of claims within the federal courts; and (3) punish improper conduct of litigants and their representatives." *Kaplan v. Daimlerchrysler*, 2002 WL 32151668, at *3 (M.D. Fla. Mar. 27, 2002) (citations omitted) (imposing sanctions on attorney who made an excessive number of frivolous motions). Courts in this district have imposed sanctions, including awarding attorneys' fees, when a party files frivolous sanctions motions as "as an improper combative tool." *Smith v. Psychiatric Solutions, Inc.*, 750 F.3d 1253, 1261 (11th Cir. 2014).

Plaintiff cannot continue to bring frivolous sanctions motion as "an improper combative tool." *Id*. Defendants expended considerable time and costs to prepare Mr. Rosado to testify about the noticed topics and sit for a day-long for deposition. Mr. Klayman strung everyone along, only to terminate the deposition after a mere 11 minutes.[3] Despite all this, Defendants are not even seeking to recover their costs associated with preparing for and attending Mr. Rosado's deposition, but only to recoup their fees incurred in responding to Plaintiff's latest meritless filing.

---

[3] Instead of focusing on completing discovery, Mr. Klayman has been making videos asking President Trump to contact Bill Maher and tell Bill Maher to settle this lawsuit. *See* @Freedom Watch USA, *President Trump, Help Laura Loomer Settle Her Case vs. Bill Maher & HBO*, available at https://www.youtube.com/watch?v=JmWi8EvcW80 (last visited Nov. 10, 2025).

8

### III. CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion for sanctions, order Plaintiff to pay Defendants' attorneys' fees associated with responding to that motion, and order Plaintiff to seek leave before filing additional sanctions motions.

Dated: November 10, 2025

Respectfully submitted,

*/s/ Rachel E. Fugate*

Rachel E. Fugate (FL Bar No. 144029)
Yelan Escalona (FL Bar No. 1031564)
Shullman Fugate PLLC
100 South Ashley Drive, Suite 600
Tampa, FL 33602
Tel: (561) 429-3619
rfugate@shullmanfugate.com
yescalona@shullmanfugate.com

Katherine M. Bolger (*pro hac vice*)
Alexandra Perloff-Giles (*pro hac vice*)
Davis Wright Tremaine LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Tel: (212) 489-8230
katebolger@dwt.com
alexandraperloffgiles@dwt.com