UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

LAURA LOOMER,

    Plaintiff,

v.                                                             Case No: 5:24-cv-625-JSM-PRL

BILL MAHER and HOME BOX
OFFICE, INC.,

    Defendants.

## ORDER

The Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. Indeed, the Court should ensure that civil litigation is resolved both fairly and without undue cost or delay. *Id.*, 1993 Advisory Committee Notes. Trust is essential to just, speedy, and inexpensive litigation: trust that lawyers will conduct themselves professionally, while properly obtaining evidence and advising their clients; and trust that parties, as well as others, will honestly and faithfully answer questions and produce documents that are requested.

Trust is not aspirational. Lawyers practicing in this District are bound to conduct themselves uprightly. The Oath of Admission to the Middle District of Florida requires an attorney to swear "that as an attorney and as a counselor of this court I will conduct myself uprightly and according to law." Oath of General Admission (https://www.flmd.uscourts.gov/form/attorney-oath-admission); Local Rule 2.01(b)(1)(E),

(c)(5).[1] And a lawyer appearing in this District is also bound by the rules governing the professional conduct of a member of The Florida Bar. *Id.* Among other things, those rules require that:

> A lawyer's conduct should conform to the requirements of the law, both in professional service to clients and in the lawyer's business and personal affairs. A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others. A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers, and public officials.

Rules Regulating the Florida Bar (2025), Chapter 4. Rules of Professional Conduct, Preamble: A Lawyer's Responsibilities (https://www.floridabar.org/rules/rrtfb/).

To this end, "[d]iscovery in this district should be practiced with a spirit of cooperation and civility. The district's attorneys and the Court are justifiably proud of the courteous practice that is traditional in the Middle District." MIDDLE DISTRICT DISCOVERY (2021) at § I.A. Cooperation, courtesy, civility—these ideals should be strived for by all parties. Part of being cooperative, courteous, and civil includes being forthcoming and working together to resolve disputes. Of course, being cooperative, courteous, and civil doesn't mean that parties can't be adversarial, or attorneys anything less than zealous advocates.

Generally, as the comments to the 2015 Amendment acknowledge, "discovery will be effectively managed by the parties." *Id.* As the comments also acknowledge, however, "there

---

[1] The Oath of Admission to the Florida Bar requires a lawyer to swear that he or she will "maintain the respect due to courts of justice and judicial officers," "will abstain from all offensive personality and advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which I am charged," and, "to opposing parties and their counsel" they must "pledge fairness, integrity and civility, not only in court, but also in all written and oral communications." https://www.floridabar.org/prof/regulating-professionalism/oath-of-admission/

will be important occasions for judicial management, both when the parties are legitimately unable to resolve important differences and when the parties fall short of effective, cooperative management on their own." *Id.* This is such an occasion. Indeed, we are well past just management. The conduct, which is described below, compels the Court to consider sanctions as to both Plaintiff's and Defendants' counsel, pursuant to Fed. R. Civ. P. 11(c)(3), 28 U.S.C. § 1927, and its inherent authority.

The matter is before the Court initially on Plaintiff Laura Loomer's motion for sanctions against Defendants Bill Maher and Home Box Office, Inc., and their counsel at Davis Wright Tremaine for their conduct during the discovery process. (Docs. 115). Defendants have filed a response. (Doc. 125). However, upon a review of the depositions in question, it is readily apparent that Mr. Klayman's conduct warrants attention that the Court cannot ignore – or use to simply offset the conduct of defense counsel.

**A. Sealing of Documents**

As an initial matter, the Court must address some outstanding issues regarding the sealing of material in this case. The district judge previously ruled that Ms. Loomer's deposition transcript should not be kept under seal going forward. (Doc. 116 at 3, n.1). Plaintiff filed the instant motion for sanctions under seal. (Doc. 115). In reviewing the motion and attachments, the Court finds that the only part that is properly sealed is the transcript of Mr. Maher's deposition. (Doc. 115 at 243-470). The Court previously ruled that certain portions from his deposition should be kept confidential. (Doc. 88). While the motion cites excerpts from Mr. Maher's deposition, the quoted excerpts do not appear to include any of

the information that Mr. Maher moved to keep confidential.[2] Accordingly, the Clerk shall unseal Doc. 115 except for the deposition transcript of Bill Maher (Doc. 115 at 243-470), which shall remain under seal. Within **ten days** of this Order, Defendants shall file a redacted version of Mr. Maher's deposition transcript consistent with the redacted version previously filed with the Court. (Doc. 58, Exhibit B). As for Defendants' motion to file their response under seal (Doc. 125), it is granted to the extent that within **ten days** of this Order, Defendants shall file another copy of their response redacting only the cited excerpts from Mr. Maher's deposition for which they originally sought (and the Court granted) protection.

### B. Discovery issues

Turning to the substance of the motion, Plaintiff raises several issues that are unavailing and perhaps verging on frivolous. First, Plaintiff argues that Defendants have submitted "frivolous motions to vexatiously multiply the pleadings and needlessly drive up the time, expense, and costs for Ms. Loomer and her counsel." The Court is well-aware of the prolific motion practice in this case. The Court, however, does not find that Defendants' filings—the majority of which were granted—were frivolous or vexatious. Accordingly, Plaintiff's motion for sanctions on this ground is denied.

Next, Plaintiff argues that Defendants and their counsel have engaged in obstructionist and bad-faith tactics during discovery. Specifically, Plaintiff points to the corporate representative deposition that was taken in New York and argues that she and her lawyer, Larry Klayman, were blind-sided when HBO failed to produce witnesses who could testify to

---

[2] There is one cited excerpt--156-157:18-25, 1-5—that was redacted by Defendants in the transcript filed with the Court. (Doc. 58-2 at 156-57). However, it appears that the excerpt cited by Plaintiff in the motion contains no information that needs to be held confidential.

all topics. This argument seems disingenuous at best. HBO has produced email correspondence showing that their counsel advised Mr. Klayman by email on April 24, 2025, that HBO would produce Ms. Rosenstein as a 30(b)(6) witness as to Topics #1-8, and that HBO would produce another witness as to Topics #9-10. (Doc. 125-1 at 48). And even if there was a misunderstanding, Plaintiff was authorized to take the deposition of HBO's corporate representative on the remaining topics—thus, alleviating any potential prejudice. (Doc. 127).[3] Also unpersuasive is Plaintiff's argument that Defendants should be sanctioned for refusing to make the CEO of HBO, Casey Bloys, available for deposition. Indeed, the undersigned has already issued a protective order preventing Plaintiff from taking Mr. Bloys' deposition. (Doc. 127).

Plaintiff also contends that Defendants assigned a security guard to follow Mr. Klayman around DWT's New York offices as an "intimidation tactic." This unsupported assertion fails to support any claim for sanctions.

### C. Deposition Conduct

This leaves Plaintiff's arguments related to the conduct of Ms. Bolger (Defense counsel) at the depositions of Mr. Maher, Ms. Loomer, and HBO's 30(b)(6) witness, Nina Rosenstein. The Court has reviewed the video depositions of Mr. Maher (3.5+ hours) and Ms. Loomer (almost 6.0 hours) in their entirety, and the deposition excerpts cited by the parties.[4] While the Court is concerned by the lapse in professionalism evidenced by Ms.

---

[3] The events surrounding the second corporate representative deposition are the subject of Plaintiff's motion to compel and for sanctions. (Doc. 144). It will be addressed by separate order.

[4] The Court focuses its discussion on the depositions of Mr. Maher and Ms. Loomer, for which the Court was provided video footage. The footage captures the argumentative and unprofessional tone of the proceedings, in a way that is not conveyed by the written transcripts. Thus, citations to the depositions are to the video recordings.

Bolger, it is equally, if not more troubled, by Mr. Klayman's conduct. It appears that both attorneys allowed personal distaste (for the deponent and opposing counsel) to replace dispassionate legal representation. As Mr. Maher asked at his deposition, "Is this the way the law works?" (Maher Depo. at 3:13:04-06). Simply stated—no, it is not. The Court demands better from counsel.

As officers of the Court, Ms. Bolger and Mr. Klayman are expected to conduct themselves in a professional manner during depositions. A deposition is intended to permit discovery of information in the possession of the deponent or perpetuate the testimony of the deponent, and thus, it must be conducted in a manner that simulates the dignified and serious atmosphere of the courtroom. *See* Fed. R. Civ.P. 30(c). For that reason, the witness is placed under oath, and a court reporter is present to record the testimony. *Id.* Conduct that is not permissible in the courtroom during the questioning of a witness is generally not permissible at a deposition.

Because depositions are typically conducted extra-judicially, attorneys "are entrusted with the responsibility of conducting depositions efficiently, orderly, and courteously." *Noshirvan v. Couture*, No. 2:23-cv-1218-JES-KCD, 2025 WL 2322740, at *12 (M.D. Fla. Aug 12, 2025) (*quoting Mitnor Corp. v. Club Condominiums*, 339 F.R.D. 312, 316 (N.D. Fla. 2021). Attorneys must not allow bad behavior by opposing counsel to goad them into violating the Federal Rules. When an attorney "engages in improper conduct, such as hurling accusations, arguing, or lecturing witnesses or attorneys, it is not proper for opposing counsel to respond in kind." *Ethicon Endo-Surgery v. United States Surgical Corp.,* 160 F.R.D. 98, 100 (S.D. Ohio 1995). Here, it is readily apparent from the more than nine hours of video footage—replete

with arguments, yelling, name-calling, taunting, and harassing questions—that Ms. Bolger and Mr. Klayman both failed in their professional obligations.

Turning first to Mr. Maher's deposition, it was taken by Mr. Klayman on April 4, 2025, with Ms. Loomer in attendance. There is no question that Ms. Bolger was frustrated by Mr. Klayman's conduct. Mr. Klayman improperly made statements without asking Mr. Maher a question (*see e.g.,* Maher Depo at 3:05:19-3:06:00), asked harassing questions about Mr. Maher's religious beliefs and his private life, and spent considerable time questioning Mr. Maher about tweets from up to ten years ago that had nothing to do with Ms. Loomer or the litigation. At times, Mr. Klayman mischaracterized statements by Mr. Maher or interpreted them in ways that strained credulity. (*See e.g.,* Maher Depo. at 3:10:22-3:11:55). And Mr. Klayman even insinuated that Mr. Maher could not get an impartial trial in Ocala, asking if Mr. Maher knew that it was "the heart of the Bible Belt," that the jury would be composed of "very religious people," and that jurors and judges "reach decisions based upon their own personal experience [ ] and beliefs." (Maher Depo. at 1:30:30-1:33:15).

While Ms. Bolger made many legitimate and proper objections, at times she failed to state them concisely in a nonargumentative and nonsuggestive manner as required by Rule 30(c), Fed. R. Civ. P. Indeed, Ms. Bolger's objections often devolved into arguments with Mr. Klayman in which they bickered (with each other) in discourteous tones, made sarcastic comments, hurled insults, spoke over each other in raised voices, and offered inappropriate editorial commentary and legal arguments. (*See e.g.,* Maher Depo. at 1:07:51-1:08:12, 1:32:00-1:32-33; 1:41:53-1:42:24; 1:42:46-1:43:10; 2:08:06-2:08:47; 2:22:09-2:22:35; 3:06:32-3:07:05; 3:21:04-3:22:33; 3:59:26-4:34:42; 4:34:47-4:35:25). At one point, while disagreeing with Mr. Klayman about defamation law in Florida, Ms. Bolger taunted Mr. Klayman with a comment

about his ongoing disciplinary issues—"You're about not to be [a lawyer], Mr. Klayman." (Maher Depo. at 1:42:14-16). Despite the ongoing conflict and inappropriate conduct throughout the entirety of the deposition, neither party sought to suspend the deposition or seek relief from the Court.

These same issues plagued Ms. Loomer's deposition, which was taken by Ms. Bolger on June 4, 2025. Counsel argued, made sardonic comments, hurled accusations, and spoke over each other in raised voices (*see e.g.,* Loomer Depo. at 2:22.51-2:23:40; 2:32:20-2:33:51; 2:36:14-53: 2:54:00-15).

At times, Mr. Klayman resorted to name-calling. He called Ms. Bolger disrespectful and a "disgrace" (Loomer Depo. at 2:36:44-2:36:53), a "very mean, nasty individual" (Loomer Depo. at 3:58:45-48), and a "vicious nasty person." (Loomer Depo. at 5:09:25). He asked how, as a woman, she could badger another woman. (Loomer Depo. at 2:36:44-2:36:53). And he spoke to Ms. Bolger in a disdainful manner, saying things like "get off my back" (Loomer Depo.at 2:37:45-50), and "[t]hank you, Your Honor. I didn't know that you were the judge." (Loomer Depo. at 3:45:59-3:46:01).

In addition, Mr. Klayman raised improper objections. For example, when Ms. Bolger was asking questions about an AP article about Ms. Loomer dated September 11, 2024, Mr. Klayman stated the following:

> Mr. Klayman: Objection. What's the relevancy of this? It's written by Associated Press. . . a Trump-hating organization, which the Israelis even had to bomb their building in Gaza because they were supporting Hamas.

(Loomer Depo. at 3:24:49-3:25:01).

As Ms. Bolger questioned Ms. Loomer about additional articles, Mr. Klayman improperly commented that the articles were from "leftist Trump-hating publications"

(Loomer Depo. at 3:28:55-57; 3:29:01-03); and "ultra-leftist rags . . . [w]hich have no credibility at all." (Loomer Depo. at 3:29:59-3:30:03). Mr. Klayman accused Ms. Bolger of "pull[ing] out all your friends in the leftist media to try to smear [Loomer] on a public record?" (Loomer Depo. at 3:30:50-55). And he told Ms. Bolger that the articles "will never come into evidence. You can have your fun right now, but that will be the last fun you have." (Loomer Depo. at 3:32:43-47).

Mr. Klayman also improperly advised Ms. Loomer not to answer questions about whether the First Amendment protects her right to give her opinion or make jokes. (Loomer Depo. at 5:01:05-5:05:10; 5:07:51-5:11:18). Rule 30(c)(2) provides only three justifications for instructing a deponent not to answer a question—i.e., to preserve a privilege; to enforce a limitation imposed by the court; or to present a Rule 30(d)(3) motion. *Mitnor Corp. v. Club Condominiums*, 339 F.R.D. 312, 319 (2021). Here, Mr. Klayman did not raise any of these objections, nor did he move for a protective order. *Id.* at 319-20 (explaining that counsel violates Rule 30(d)(3) by instructing a deponent not to answer questions but never moving for a protective order).

Moreover, Mr. Klayman violated his professional responsibility when he declined to restrain Ms. Loomer's patently improper conduct at her deposition. Objectively, Ms. Loomer was a difficult witness. She repeatedly argued with Ms. Bolger and went on tangents unrelated to any pending question (*see e.g., Loomer Depo.* at 2:34:55-2:36:15; 3:37:33-3:39:10; 3:46:28-3:46:55; 3:48:00-3:49:15; 3:57:48-3:58:14:). At one point, she told Ms. Bolger: "I know what you're doing. I know what type of people you are. You're fucking Democrats: okay? You represent the filthiest fucking people in our country—Democrats scumbags." (Loomer Depo.

- 9 -

at 2:46:13-24).[5] Ms. Loomer accused Ms. Bolger of "hat[ing] America." (Loomer Depo. at 2:47:15-25). Incredulously, Mr. Klayman took no action to rein in this outrageous conduct. And on at least one occasion, he appeared to egg Ms. Loomer on when she was refusing to directly answer what she meant by her own tweet about Marjorie Taylor Green and the meaning of the phrase "Arby's in your pants." Mr. Klayman asked, "[w]here's the meat?" and Ms. Loomer, who was laughing, quipped, "[i]t's in her pants." (Loomer Depo. at 4:02:56-4:03:02). As an officer of the Court, Mr. Klayman's complete failure to check Ms. Loomer's wildly inappropriate behavior was inexcusable.

Ms. Bolger was clearly frustrated by Ms. Loomer's failure to directly answer questions, some of which were bordering on the absurd.[6] Unfortunately, in a few instances, Ms. Bolger lost her cool and took the bait. For example, when Ms. Loomer obfuscated about the meaning of a previous tweet she had made about Kamala Harris,[7] Ms. Bolger taunted Ms. Loomer to answer with statements like, "I thought you were a First Amendment warrior who was fearless in what you say" and called her a "coward." (Loomer Depo at 361:4-374:12). There is simply no excuse for this name-calling.

Likewise, when Ms. Loomer wouldn't directly respond to questions about whether the First Amendment protects her right to give her opinion or make jokes—and Mr. Klayman

---

[5] The Court was also concerned by Ms. Bolger's response—which was in a taunting, patronizing tone—"I thought you didn't like the word, "fuck," Ms. Loomer? I thought you were offended by the word fuck." (Loomer Depo. at 2:46:21-24).

[6] For example, Ms. Loomer's testimony surrounding her own tweet about Marjorie Taylor Green and the meaning of the phrase "Arby's in your pants" is objectively ridiculous. (Loomer Depo. at 3:59:36-4:03:00).

[7] The tweet stated: "I guess you would know a thing or two about trashy Montel Williams, given the fact that you dated and stuck your cock inside Kamala Harris many years ago. I've heard everything her infested snatch touches also dies a miserable, painful death." (Loomer Depo. at 361:4-15).

improperly instructed her not to answer—Ms. Bolger lapsed into unprofessional conduct. (Loomer Depo. at 5:01:05-5:05:10; 5:07:51-5:11:18). Rather than seeking assistance from the Court, Ms. Bolger continued to repeatedly ask the same (or similar) question, and as she grew more exasperated even asked, "Isn't it the case that, in the United States of America, the First Amendment express[es] a right to have opinions; and isn't that fucking fantastic?" (Loomer Depo. at 5:03:10-18). She repeatedly asked Ms. Loomer if she was going to take her lawyer's instruction and attempted to goad her into a response with jabs about being a "free speech warrior." At one point, Ms. Bolger even stated, "God. It's embarrassing that you, the free speech warrior, won't answer a simple question like that." (Loomer Depo. at 5:11:14-17).

Sadly, the deposition transcripts are replete with countless other instances of unprofessional conduct. Rather than taking personal responsibility for their own misconduct, counsel largely points to the misdeeds of opposing counsel to somehow offset their behavior.[8] However, "[m]utual enmity does not excuse the breakdown of decorum" that occurred at the depositions. *Redwood v. Dobson*, 476 F.3d 462, 469 (7th Cir. 2007). The Court cannot, and will not, ignore counsel's unacceptable conduct.

Accordingly, on or before **December 18, 2025**, Mr. Klayman and Ms. Bolger must show cause why, for the conduct described, they should not be sanctioned under the Court's authority to maintain standards of civility and professionalism. Sanctions may include, but by no means limited to: nonmonetary directives; an order to pay a penalty to the Court; an

---

[8] For example, in response to the motion for sanctions, Ms. Bolger argues that her statement that Ms. Loomer was being a "coward," "pales in comparison" to the many attacks Mr. Klayman (and his client) leveled at Mr. Maher and Ms. Bolger. (Doc. 125-1 at 19).

- 12 -

order revoking special admission; a Local Rule 2.04 referral to a grievance committee; or some combination of these sanctions.

DONE and ORDERED in Ocala, Florida on December 4, 2025.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:
Counsel of Record