# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF FLORIDA, OCALA DIVISION

-----

LAURA LOOMER,

        *Plaintiff*,

- against -

BILL MAHER and HOME BOX OFFICE, INC.,

        *Defendants*.

-----

Case No.: 5:24-cv-00625-JSM-PRL

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS**

"[W]hen [Plaintiff's counsel, Larry Klayman] receives unfavorable rulings, he often plunges into a tirade against whomever he feels has wronged him." *Klayman v. City Pages*, 2015 WL 1546173, at *17 (M.D. Fla. Apr. 3, 2015). Plaintiff's meritless motion for sanctions is another such tirade and Plaintiff has failed to show she is entitled to the requested relief.

*First*, Plaintiff baselessly and repeatedly contends that Defendants have filed frivolous motions to needlessly drive up costs. But Defendants' motions, far from being frivolous, were all granted by Judge Lammens—and were affirmed by Judge Moody the day after Plaintiff filed this motion. *Second*, Plaintiff contends that Defendants engaged in "obstructionist tactics" by objecting to Plaintiff's efforts to depose HBO's Chief Executive Officer, Casey Bloys.[1] But, as set forth more fully in Defendants' motion for a protective order regarding that deposition, Plaintiff not only failed to notice the deposition to occur before the close of discovery, but also Mr. Bloys

---

[1] Mr. Bloys' full title is Chairman and CEO, HBO and Max Content.

1

has no relevant firsthand knowledge, and Plaintiff cannot satisfy the stringent requirements the law requires to depose an apex witness. *Third*, Plaintiff complains about Defendants designating more than one 30(b)(6) witness. But there is nothing unusual or improper about designating one witness on certain topics and another witness on other topics—indeed, it is routine practice. Moreover, Plaintiff's counsel was expressly informed before the deposition which topics the 30(b)(6) witnesses would be addressing. *Fourth*, Plaintiff contends that Defendants engaged in "vexatious and harassing conduct towards Plaintiff and her counsel," citing an odd smattering of manipulated and out-of-context excerpts from the three depositions in this case. But a full review of the transcripts makes it clear that Defendants' counsel did not engage in any such tactics—in fact, it was Mr. Klayman who was harassing and obstructionist.

Mr. Klayman called Mr. Maher (among other things) a "low class," "sexist, misogynist, and anti-Judeo Christian hating atheist" who is "akin to [a] Batman character." *Infra* at 19. And he called the undersigned a "mean," "vicious, nasty person," and a "mercenary hatchet woman." *Id*. But this lawsuit isn't about Mr. Klayman, Davis Wright Tremaine, or the undersigned. It is a defamation action brought by Plaintiff, and Defendants have provided all requested discovery to Plaintiff. Plaintiff and her counsel are simply upset that the record has not developed the way they wanted it to and that they have not been able to financially exploit it. This frivolous motion is a waste of the Court's resources and should be denied.

I.   **MOTION PRACTICE**

Plaintiff's first argument is that Defendants should be sanctioned because of

2

frivolous motion practice. Plaintiff is wrong. Under Rule 11, sanctions may be imposed, *inter alia*, when an attorney files a motion "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," or makes "[]frivolous" legal arguments. Fed. R. Civ. P. 11(b)-(c). The filing of meritorious motions therefore cannot, as a matter of law, be the basis for sanctions. *See, e.g.*, *Monopoly Hotel Grp., LLC v. Hyatt Hotels Corp.*, 2013 WL 12246988, at *7 (N.D. Ga. June 4, 2013) (motion is necessarily "meritorious and not frivolous" when granted). *See generally Cohen v. World Omni Fin. Corp.*, 457 F. App'x 822, 828 (11th Cir. 2012). Here, the motions that Plaintiff claims are sanctionable were all *granted* by Judge Lammens, and, in most cases, were confirmed by Judge Moody over Plaintiff's objections. There can, therefore, be no sanctions.

Specifically, Plaintiff first unilaterally noticed depositions, and forced Defendants to seek a protective order simply to ensure the depositions took place on a mutually convenient date. *See* ECF Nos. 44–46. In other words, *Plaintiff*, not Defendants, caused unnecessary motion practice by acting in a manner that, as Judge Lammens held in granting the protective order, was "perplexing," "not reasonable," and "well short of the Court's expectation of 'a spirit of cooperation and civility.'" ECF No. 48 at 2.

After that, Plaintiff and her counsel repeatedly publicized the case on social media and later admitted they were seeking to fundraise off discovery materials.[2]

---

[2] "Defendants and their counsel" do *not* "know that Plaintiff has already been brought to her knees financially" as plaintiff alleges ECF No. 115 at 2–3—because Plaintiff has not produced any evidence

3

Defendants were, therefore, forced to seek protective orders to keep the video and limited portions of the deposition of Bill Maher confidential and to ensure that the depositions of Bill Maher, HBO corporate representative Nina Rosenstein, and Laura Loomer would be used solely for litigation purposes. *See* ECF Nos. 57, 73 & 82. Defendants also sought a protective order permitting the parties to designate documents as confidential and directing that discovery materials be used only for litigation purposes—a straightforward matter usually agreed upon by litigants without court intervention. *See* ECF No. 76. The Court granted each of Defendants' motions for a protective order, and Judge Moody has now overruled Plaintiff's meritless objections. *See* ECF Nos. 59, 74, 83, 88, 99 & 116.

Finally, after Plaintiff's deficient discovery responses—including her failure to serve initial disclosures and a damages calculation, as required by Federal Rule of Civil Procedure 26(a)(1)(iii) and by Florida Rule of Civil Procedure 1.280(a)(1)(C)—Defendants moved to compel the production of initial disclosures, documents, and substantive interrogatory responses. *See* ECF No. 78. That motion, too, was granted, *see* ECF No. 98, and affirmed by Judge Moody, *see* ECF No. 116. In short, Defendants have prevailed entirely on the motions that Plaintiff claims are "frivolous," rendering her sanctions motion utterly baseless.

---

of her damages. Plaintiff has also given several interviews stating that she has recently been retained by "five paying clients for her research-consulting firm," including "several billionaires," Michael Scherer, *'Make McCarthy Great Again': Laura Loomer has become the Joseph McCarthy of the Trump Era*, The Atlantic (Aug. 21, 2025), https://www.theatlantic.com/politics/archive/2025/08/laura-loomer-trump-era-joseph-mccarthy/683928/, and has "personally offer[ed] a $10,000 CASH REWARD" to anyone who can provide the list of attendees of the "People's Conference for Palestine," @LauraLoomer, https://x.com/LauraLoomer/status/1963704745073524810 (Sept. 4, 2025).

By contrast, Plaintiff herself has filed repeated frivolous motions, beginning with her inexplicable Motion to Transfer Venue to the Ocala Division, which was moot as the case is already in the Ocala Division. *See* ECF Nos. 5 & 6. She next filed a motion to strike Defendants' affirmative defenses, which the Court denied on the merits, explaining that motions to strike are "disfavor[ed]." ECF No. 55 at 2. Plaintiff then filed a motion to compel Defendants' production of documents, which was denied except insofar as Defendants were directed to produce documents subject to the protective order that was entered, as Defendants had agreed to do from the start. In addition, Plaintiff filed a Motion for Sanctions because she felt Defendants' Local Rule 3.01(g) disclosure was not fulsome enough, which was denied by the Court as "[a]t most . . . a misunderstanding . . . which was of no consequence." ECF Nos. 66, 67 & 69. Plaintiff also filed a Motion for Clarification, ECF No. 90, which was denied, and had to respond to an Order to Show Cause why she should not be sanctioned for ignoring a Court order regarding the use of discovery materials. The record is clear that Defendants' motions have been necessitated only by Plaintiff's failure to be reasonable and professional with regard to anything involving the discovery process, and the only frivolous motions in this case have been Plaintiff's.[3]

---

[3] Similarly, while Plaintiff accuses Defendants of engaging in "dilatory tactics," ECF No. 115 at 2, Plaintiff is the one who has filed *repeated* requests for extensions with the Court. *See* ECF No. 30 (seeking *nunc pro tunc* extension of time to respond to Defendants' motion to stay discovery); ECF No. 52 (seeking *nun pro tunc* extension of time to move to strike Defendants' affirmative defenses); ECF No. 61 (seeking extension of time to respond to motion for protective order regarding Maher deposition); ECF No. 86 (seeking extension of time to respond to motion for protective order regarding Loomer deposition); ECF No. 89 (seeking extension of time to respond to Defendants' motion to compel); ECF No. 108 (seeking *nunc pro tunc* extension of time to inform the Court regarding mediation); ECF No. 114 (seeking extension of time to respond to Defendants' discovery requests).

## II. DEPOSITION OF HBO'S CHIEF EXECUTIVE OFFICER

Plaintiff's next grievance is that "Defendants have refused to make the CEO of Defendant HBO, Casey Bloys . . . available for deposition." ECF No. 115 at 12. As set forth more fully in Defendants' motion for a protective order, *see* ECF No. 122, Plaintiff is not entitled to depose Mr. Bloys, and Defendants' objection to Plaintiff's improper notice is meritorious and not a basis for sanctions.

By way of background, on June 25, 2025, Plaintiff's counsel emailed a request for dates to depose Mr. Bloys between July 7 and July 15. *See* Ex. A. Defendants responded by asking the basis for deposing Mr. Bloys, stating that he had no unique knowledge of the facts related to this litigation. *Id.* at 3. Mr. Klayman responded that the HBO CEO "is the person ultimately in charge of HBO's and Maher's use of Laura Loomer as the vehicle to not only defame her, but the ultimate target Donald Trump and his wife Melania Trump. . . ." *Id.* at 2. On July 1, Defendants responded at length, explaining that: (1) "Mr. Bloys had no involvement in the allegedly defamatory statement" and (2) Plaintiff could not make the required showing to depose an apex witness. *Id.* at 1. Plaintiff did not respond. Nearly two months later, on August 27—the day before the parties' scheduled mediation and just days before the September 2 close of discovery, *see* ECF No. 40—Plaintiff *for the first time* filed a notice of deposition, purporting to set the deposition for Mr. Bloys on September 28 (nearly a month after discovery is over), *see* ECF No. 117.

Defendants cannot be sanctioned for objecting to Mr. Bloys' deposition. To start, Plaintiff did not notice Mr. Bloys for a deposition within the discovery period—

6

and she improperly sought sanctions even before the deadline for Defendants to respond to her untimely deposition notice. And, as set forth more fully in Defendants' motion for a protective order, *see* ECF No. 122, Plaintiff is not entitled to depose Mr. Bloys. In defamation actions, the only witnesses relevant to actual malice are those who were involved in the publication of the statement at issue. *See, e.g.*, *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964); *Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*, 811 So.2d 841, 847 (Fla. 4th DCA 2002). Both Mr. Maher and Ms. Rosenstein testified— contrary to Plaintiff's baseless speculation that Mr. Bloys "almost certainly . . . approved" the September 13, 2024 episode of *Real Time* "prior to airing," ECF No. 115 at 12—that Mr. Maher has the final say on the content of *Real Time with Bill Maher*. *See* ECF No. 115 at 354 (Maher); *id.* at 511 (Rosenstein). As Mr. Bloys was not responsible for the publication of the statement at issue, his testimony is irrelevant.

Finally, even a procedurally proper request to depose a "high-ranking" executive like Mr. Bloys would be subject to the apex doctrine. *See, e.g.*, *Brown v. Branch Banking & Tr. Co.*, 2014 WL 235455, at *2 (S.D. Fla. Jan. 22, 2014). A party seeking to depose an apex witness must prove (1) that the executive "has unique, non-repetitive, firsthand knowledge of the facts at issue; and (2) that other less intrusive means of discovery, such as interrogatories and depositions of other employees, have been exhausted without success." *Id.* (citation omitted). Plaintiff does neither. She does not even try to identify any "unique" knowledge possessed by Mr. Bloys, and Plaintiff—who never propounded a single interrogatory in this case, for example— cannot show she exhausted less intrusive means of discovery. Thus, far from providing

a basis for sanctions, Defendants have meritorious grounds for objecting to Plaintiff's improper deposition notice for Mr. Bloys.

### III.   30(B)(6) DEPOSITION(S)

Next, Plaintiff contends that Defendants should be sanctioned because her counsel "was brought to DWT's . . . offices in New York City under false pretenses that he would be deposing Defendant HBO's corporate representative who would be capable of providing answers to the topics enumerated by Plaintiff," "[b]ut when he arrived, he was met with Nina Rosenstein, who was only able to testify" as to certain topics, and "[n]o other witnesses who could . . . testify to the remaining topics were produced" on that day." ECF No. 115 at 4–5. Plaintiff is being misleading. Everything Mr. Klayman now complains about, he knew before he arrived in New York.

Plaintiff first unilaterally noticed a deposition of an HBO corporate representative on March 6, 2025, *see* ECF No. 45, but was instructed to "confer and schedule these depositions at a mutually convenient time," ECF No. 48 at 3. On April 16, 2025, Plaintiff filed an oddly drafted 30(b)(6) deposition notice covering a range of topics. *See* ECF No. 56. On April 24, HBO served responses and objections to Plaintiff's Rule 30(b)(6) notice, *see* Ex. B, and informed Plaintiff that: "On May 7, HBO will produce Nina Rosenstein as a 30(b)(6) witness as to Topics #1–8. . . . HBO will produce another witness as to Topics #9–10. HBO's responses and objections to your notice are annexed hereto." Ex. C. Plaintiff did not respond to that email.[4]

---

[4] The parties initially agreed on April 30 as the date for Ms. Rosenstein's deposition, *see* ECF No. 56, before agreeing instead to May 7.

8

Defendants understood the parties would schedule another deposition with the witness for Topics #9-10 (who does not live in New York), permitting Plaintiff to depose each witness for up to seven hours. *See* Fed. R. Civ. P. 30(d) advisory committee's notes.

At Ms. Rosenstein's deposition, and despite Defendants' email, Mr. Klayman asked Ms. Rosenstein, HBO's Executive Vice President of Programming, questions related to Topics #9 and #10, about document preservation. Defendants' counsel noted that Ms. Rosenstein was not prepared to talk about those topics and reminded Plaintiff's counsel of her April 24th email. ECF No. 115 at 535, 537. Mr. Klayman responded that "This is so sanctionable" and "You don't get to decide. . . . [I]t is so objectionable. It's so arrogant. It's unbelievable." *Id.* at 537.

Despite Mr. Klayman's on-the-record outburst, he made no effort to schedule a deposition—whether in person or by Zoom—with the appropriate representative for those topics. In fact, Defendants wrote on June 27 to proactively offer to "make a deponent available to discuss Topics 9 and 10 in the 30b6 Notice the week of August 18." Ex. A at 3. Defendants raised the issue again on July 1, *id.*, but Plaintiff never even responded to those offers.

Nothing in Defendants' conduct in designating different witnesses to testify as to different topics is even remotely sanctionable. Federal Rule of Civil Procedure 30(b)(6) provides that, when a party names a corporation as a deponent and "describe[s] with reasonable particularity the matters for examination," "[t]he named organization must designate *one or more* officers, directors, or managing agents, or designate other persons who consent on its behalf; and it may set out the matters on

9

which each person designated will testify." Fed. R. Civ. P. 30(b)(6) (emphasis added). Further, the advisory committee's notes provide that "the deposition *of each person designated under Rule 30(b)(6) should be considered a separate deposition*" for purposes of the seven-hour durational limit for depositions. Fed. R. Civ. P. 30(d) advisory committee's notes, 2000 Amendment (emphasis added). In short, the Federal Rules plainly allow a corporation like HBO to designate more than one witness to testify in response to a 30(b)(6) notice and contemplate that those depositions may take place on separate days. Here, HBO appropriately determined that Topics #9 and #10, which asked about HBO's "record retention policies and practices" and HBO's "search of documents pursuant to Plaintiff's request to produce," ECF No. 60 at 3, were better addressed by a witness familiar with HBO's e-discovery practices and involved with the document collections in this case, rather than a programming executive.

Moreover, the case law is clear that, when one corporate representative is asked a question about a topic as to which "another representative was designated," the corporation's attorney may instruct the representative being asked the question not to answer, *Adventist Health Sys./Sunbelt Inc. v. Med. Savings Ins. Co.*, 2005 WL 8159879, at *2 (M.D. Fla. May 6, 2005), and certainly may object to a question as outside the scope. It was Plaintiff's choice not to seek to depose another witness on Topics #9 and #10—even after Defendants proactively offered proposed dates. Her failure to take them up on the offer provides no basis for sanctions.[5]

---

[5] Plaintiff describes Ms. Rosenstein as having "limited knowledge on just a few of the thirteen (13) relevant topics sought." ECF No. 115 at 5. This is not accurate, and in fact, Mr. Klayman's

10

Finally, as to the comments about the Davis Wright Tremaine office where Ms. Rosenstein's deposition was held, it goes without saying that no one threatened Mr. Klayman, and neither a gender-neutral bathroom nor the presence of a security guard in a Midtown Manhattan office building (blocks from where the recent Park Avenue shooting occurred) is sanctionable. (To the extent he complains about his travel expenses, Plaintiff would have been welcome to conduct these depositions via Zoom and avoid these purported costs; Mr. Klayman never made any such request.)

## IV.  DEPOSITION CONDUCT

Finally, Plaintiff's overwrought and misleading request that Defendants be sanctioned for the undersigned's conduct in the three depositions taken in this matter should be denied.

### A.  Mr. Klayman Made Each Deposition Unnecessarily Contentious

To begin, Plaintiff's counsel has repeatedly tried to turn the three depositions in this matter into public spectacles for improper use outside of the litigation. Before the depositions of Mr. Maher and Ms. Loomer, Plaintiff and her counsel took the extraordinary step of issuing press releases, making statements on X about the depositions,[6] and seeking to fundraise off them to support Plaintiff's legal fund and

---

dissatisfaction with Ms. Rosenstein's testimony stems solely from the disconnect between the format of his notice and the questions he asked, which were focused on the day-to-day production processes of the show rather than HBO's involvement with the show. Ms. Rosenstein offered the name of a producer on the show who would be an appropriate deponent to answer the questions not covered by the notice, and Mr. Klayman never bothered to request his deposition or follow up.

[6] *See, e.g.*, @LauraLoomer, https://x.com/LauraLoomer/status/1904584045155193130 (Mar. 25, 2025); @LauraLoomer, https://x.com/LauraLoomer/status/1907783525387972620 (Apr. 3, 2025); @LauraLoomer, https://x.com/LauraLoomer/status/1908195167993291159 (Apr. 4, 2025).

11

Mr. Klayman's "lawfare fund." *See* ECF No. 57 at 8–9 & ECF No. 57-3 (press release issued by Larry Klayman shortly before the deposition of Mr. Maher). As a result of that publicity, paparazzi were present outside the building at Mr. Maher's deposition.

Mr. Klayman's conduct during the deposition of Mr. Maher was abhorrent.[7] Once the deposition began, Mr. Klayman asked invasive and harassing questions about Mr. Maher's religious beliefs ("███████████████", ECF No. 115 at 367), and his private life (*e.g.*, "████████████████████████████?, *id.* at 282). Mr. Klayman even asked Mr. Maher questions about Ocala, whose only purpose appeared to be to intimidate and threaten Mr. Maher (*e.g.*, "Do you know anything about Ocala, Florida?," "Do you know that it's the heart of the Bible Belt? . . . Well, you'll learn about it," "[D]o you know the makeup of the likely jury in Ocala, Florida? They're very religious people. . . . You think they are going to like your humor?," *id.* at 317–18; "[Y]ou see what's going on with judges, whether it's left or right, correct? . . . [Y]ou're aware that whether it's judges or human beings, . . . they frequently reach decisions based upon their own personal experience? . . . And beliefs?," *id.* at 319–20). But Mr. Klayman did not stop there—he accused Mr. Maher of "████████████████," *id.* at 367, and of "████████████ ████████," *id.* at 364, and told Mr. Maher he found his "████████" " ████████████," *id.* at 267. Plaintiff seemed to revel in Mr. Klayman's harassment of Mr. Maher. After Mr. Klayman baselessly asked Mr. Maher "████████

---

[7] Attached as Exhibit D is a chart that contains examples of Mr. Klayman's most outrageous, on-the-record questions and statements made during depositions.

███████████████████████████████████████████████

█████," Ms. Loomer began laughing and then stated on the record to Mr. Maher: "████████████████████████████████████████████████████" *Id.* at 416–17.

Mr. Klayman also engaged in absurd lines of questioning (*e.g.*, "You are aware that [President Obama's] birth certificate is published by the White House, said he was African-American?," "You're aware that he himself filed documents with the passport office that said he wasn't . . . born in this country. Are you aware of that?," *id.* at 355), and repeatedly asked Mr. Maher whether he was "████████████████ ███████████████████████," *e.g.*, *id.* at 366, even though Mr. Maher "████████ ████████████████████████████████████████████████," *id.* at 369. (emphasis added). Finally, Mr. Klayman delivered speeches in lieu of questions (*e.g.*, "I'll lay this as a foundation. You've had little to no contact with your attorneys about this case, that they made all the decisions here. And actually, I'm trying to do you a service in many ways.", *id.* at 320–21; "████████████████████████████ ████████████████████████████████," *id.* at 397; "████████████████████ ████████████████████████████████████," *id.* at 414).

Likewise, in the deposition of HBO 30(b)(6) witness Nina Rosenstein, Mr. Klayman, devoted significant time to questions about Ms. Rosenstein's background that were plainly outside the scope of the 30(b)(6) notice, delivered argumentative speeches in the middle of questioning (*e.g.*, "You know, great time. Ms. Loomer is not wealthy. In fact, she's near bankrupt thanks in large part to Bill Maher and HBO. And then you complain that we're seeking to have costs paid, and that's the reason for you

13

not to produce documents. All of this is so sanctionable. It would make The Exorcist's head swim," *id.* at 562), and made comments or questions intended to demean the witness like "One of the considerations to have you testify today was to have the person with the least knowledge possible to testify at this deposition, correct?" *id.* at 530, and "I know how you presented this very limited witness," *id.* at 548. Ms. Rosenstein, an executive vice-president of programming at HBO, is far from a "limited witness."

In the deposition of Ms. Loomer, Mr. Klayman's antics continued. He repeatedly instructed Ms. Loomer not to answer a plainly relevant question ("Is it a First Amendment right for you to express your opinion?," *id.* at 198), and threatened to end the deposition over a variant of that question (Q: "Do you believe . . . that your free speech rights, as you say here, allow you to make a joke about a public figure? Because that's what you say in this tweet; isn't it? MR. KLAYMAN: Do not answer the question. All right. This deposition is over. It's over. Let's get out of here. We'll get your sanctions. MS. BOLGER: I'm sorry. What are you doing? MR. KLAYMAN: It's over. The deposition is over. Come on," *id.* at 203). In fact, he instructed Ms. Loomer not to answer relevant, non-privileged questions a staggering *twenty-three* times, and one time told Ms. Loomer "Just answer the question you want -- the way you want to answer the question." *Id.* at 124. When the undersigned reminded Ms. Loomer "No. You have to answer the question I'm asking," Mr. Klayman protested "Not – neither – you're not the judge. You're not the judge." *Id.*

14

Throughout the depositions, Mr. Klayman also took repeated swipes at counsel for Defendants, telling Ms. Bolger at the deposition of Ms. Rosenstein that she was "just not a truthful person" and not "representative of" "the Catholic faith," ECF No. 115 at 564–65, and, at the deposition of Ms. Loomer, that "you are a very mean, nasty individual," *id.* at 171, and "You are a vicious, nasty person," *id.* at 200. In light of Mr. Klayman's outrageous behavior, that *Plaintiff* seeks to sanction Defendants' counsel is absurd.[8]

### B. Plaintiff Is Not Entitled To Sanctions As A Matter Of Law Because Defendants' Counsel Did Not Obstruct Discovery

In any event, there is no legal basis to award sanctions. As Defendants noted in their opposition to Plaintiff's last frivolous sanctions motion, *see* ECF No. 94, Rule 30(d)(2) allows a court to impose sanctions "on a person who impedes, delays, or frustrates the fair examination of the deponent." *See* Fed. R. Civ. P. 30(d)(2). In evaluating a motion for sanctions for conduct during a deposition, courts in the Middle District of Florida have examined whether the conduct of counsel "rise[s] to the level that [opposing counsel] could not continue with the deposition." *Sorton v. Eidolon Analytic, Inc.,* 2016 WL 11817755, at *5 (M.D. Fla. Dec. 19, 2016); *see also Berlinger v. Wells Fargo,* 2014 WL 6686276, at *1 (M.D. Fla. Nov. 26, 2014). Plaintiff has pointed to no conduct by Defendants' counsel that rises to that level—nor could she. Counsel for Defendants certainly did not obstruct Mr. Klayman from getting any answers.

---

[8] If any deposition-related conduct is sanctionable, it is Mr. Klayman's abusive and harassing questioning of Mr. Maher and wholly inappropriate instruction to Ms. Loomer not to answer a series of questions for reasons unrelated to the attorney-client privilege. *See supra*.

Plaintiff has not carried her burden to obtain sanctions—in fact, she does not even quote the standard—and this Court need look no further to deny the motion.

### C. Plaintiff's Cherry-Picked Quotations Do Not Provide A Basis For Sanctions

Plaintiff spends much of her brief cherry picking out-of-context quotes from depositions[9] and asks the Court to sanction Defendants without citing any relevant law or explaining why the quoted language is sanctionable. This Court need not engage with these examples, because Plaintiff does not even argue, as she must, that her manipulated examples amount to obstruction. And in any event, what Plaintiff complains of are Defendants' counsel's efforts to protect Defendants' witnesses from Mr. Klayman's harassment or to obtain information over Mr. Klayman's improper objections. There is no sanctionable conduct—not by Defendants' counsel, at least.

First, Plaintiff claims that Defendants' counsel used "suggestive language" to tell the witness how to answer. But the comments she highlights do no such thing. They include routine comments like "is there a question?," "[i]f you understand the question, you can answer it," "please don't guess," and "you may answer if you remember" to irrelevant questions. *See* ECF No. 115 at 3–81. So too, the instructions like "I'm lost. You can answer" or "you've not asked a question. So why don't you ask a question?," *id.* at 6–7, are routine. And each time such an objection was made, Defendants' counsel instructed the witness to answer.

---

[9] Exhibit E to this brief is a chart reflecting the full context of several of these cherry-picked quotes.

16

Mr. Klayman's complaints are particularly misplaced given that he made similar (and worse) comments during Ms. Loomer's deposition.[10] *See, e.g.*, ECF No. 115 at 110 ("MR. KLAYMAN: Don't guess."); *id.* at 127 ("MR. KLAYMAN: Objection. Do not speculate."); *id.* at 165 (MR. KLAYMAN: "Don't guess; okay?"); *id.* at 166 ("MR. KLAYMAN: Don't speculate. Don't speculate."); *id.* at 235 ("MR. KLAYMAN: Don't speculate."); *id.* at 167 ("MR. KLAYMAN: Wait, wait, wait. Wait, wait, wait. Lacks foundation, You didn't remember the tweet."); *id.* at 208–09 ("Q Okay. What did Mr. Maher say precisely that is the basis of this claim? MR. KLAYMAN: The complaint speaks for itself. Show her the complaint. . . . BY MS. BOLGER Q: No. I want to know what you remember, Ms. Loomer. Please tell me. MR. KLAYMAN: What she remembers is irrelevant."). Of course, Mr. Klayman also often instructed Loomer not to answer relevant questions on multiple occasions.

Second, Plaintiff's claim that Defendants threatened Mr. Klayman's legal career or questioned his skills as a lawyer is not accurate. For example, in response to Mr. Klayman saying to the undersigned "You're not a Florida lawyer, are you?," Ms. Bolger referenced his disciplinary proceedings. That isn't a threat to Mr. Klayman's legal career. It is simply a fact that Mr. Klayman is already the subject of existing disciplinary proceedings in Florida and has been suspended from the practice of law

---

[10] Mr. Klayman's interruptions during Ms. Loomer's deposition were far more "obstructionist." *See* ECF No. 115 at 128 ("[C]an you name a single human being on Planet Earth who believes what Bill Maher said is true? MR. KLAYMAN: Calls for speculation. THE WITNESS: It's just – it's like just kind of a ridiculous question because the reality is -- is it doesn't matter. The fact -- what matters is that he said it. He said it, and so there are people that believe it is true. BY MS. BOLGER: Q: Name one. MR. KLAYMAN: Why don't you name one?").

17

in the District of Columbia. *See The Florida Bar v. Larry Klayman*, SC2023-1219 (Fla. 2023) (noting that the Florida Supreme Court is considering whether to impose reciprocal discipline on Mr. Klayman); *see also In Re Larry Klayman*, 24-BG-0689, ECF No. 51 (D.C. App. Ct. 2025) (imposing 18-month suspension based, *inter alia*, on his "lack of candor," his "continuing to file baseless and repetitive pleadings" containing "ad hominem attacks," and his "failure to 'take[] responsibility for his actions'").[11] Nor did Ms. Bolger "insult[] Mr. Klayman's legal knowledge." ECF No. 115 at 11. In fact, the quote about Mr. Klayman needing an assistant that Plaintiff attributes to Ms. Bolger was actually made by Mr. Maher, who was joking good-naturedly about Mr. Klayman's administrative, not legal, abilities, after Mr. Klayman repeatedly struggled to find copies of the exhibits he wanted to introduce. Mr. Klayman responded "Yeah, I think you need assistance." ECF No. 57-1 at 90. There is nothing to see here.

Third, Plaintiff complains about Defendants' counsel's warnings that Ms. Loomer "may not speak on the record when there is not a pending question," give non-responsive monologues, or defy court orders regarding the confidentiality of the Maher deposition, and that Defendants could seek sanctions if she did so. There is nothing unusual or improper about explaining the rules of depositions and warning about potential consequences, including, for example, that a witness who is giving lengthy non-responsive answers that they may get called "back for a second day of

---

[11] It is unclear whether Mr. Klayman has reported this recent suspension to the Middle District of Florida clerk as required by Local Rule 2.04(b), but the suspension was notably not mentioned in Mr. Klayman's August 29, 2025 status report to the court. *See In re Larry Klayman*, 3:22-mc-00014-JRK, ECF No. 17 (M.D. Fla. Aug. 29, 2025).

deposition." *See* ECF No. 115 at 8. Ms. Bolger also never "scream[ed]" at Ms. Loomer as the video of the deposition conclusively shows. ECF No. 115 at 8–9. Nor was Ms. Bolger's statement that Ms. Loomer was being a "coward," *id.* at 10, by repeatedly and baselessly refusing to answer a relevant question, anything more than a harmless rhetorical flourish directed at a hostile and evasive witness. In fact, Mr. Klayman himself has publicly called Bill Maher and HBO "cowards." *See* ECF No. 57-13 at 3. This mild turn of phrase pales in comparison to the many personal *ad hominem* attacks Ms. Loomer and Mr. Klayman have levelled at both Mr. Maher (*e.g.*, a "low class," "sexist, misogynist, and anti-Judeo Christian hating atheist" "who disrespects any woman," "understandably never married," and is "akin to [a] Batman character," ECF No. 85 at 4–5, 10) and Ms. Bolger (a "vicious" and "nasty" "mercenary hatchet woman" who lies and whom Ms. Loomer and Mr. Klayman were "laughing at . . ., not with," *id.* at 6, 8, 171, 416; ECF No. 115 at 171, 185, 200, 416).

Finally, Mr. Klayman claims the undersigned should be sanctioned for "threatening" to report Mr. Klayman's conduct to the Court. The quoted portion of the transcript came after Mr. Klayman baselessly claimed Defendants' "modus operandi is delay" and began to insult Ms. Bolger, saying "you're –." Before Mr. Klayman could get out his insult, Ms. Bolger told him that any further personal comments about her would be brought to the Court's attention. ECF No. 115 at 412. Hypocritically, Mr. Klayman has similarly "threaten[ed]" to take matters to the Court, *id.* at 11, on several occasions during depositions, *see id.* at 515, 522, 535, 538, 558–59, 561–62, 565 (Rosenstein Deposition); *id.* 164, 168, 197–99, 203 (Loomer Deposition),

19

including one time when Mr. Klayman told Ms. Bolger to "Make our day. Make our day," *id.* at 82.

In sum, Plaintiff has identified no relevant question to which she could not obtain an answer or otherwise explained how any of the challenged statements are sanctionable. Counsel for Defendants did nothing other than act professionally in representing her clients (and defending herself) against Plaintiff and her counsel's overt hostility, evasiveness, and improper conduct. *See, e.g.*, *Sprague v. Indep. Bank*, 2016 WL 6778931, at *4 (M.D. Fla. Nov. 16, 2016) (no sanctions where "the parties are equally at fault"); *Kaplan v. Lappin*, 2011 WL 13225149, at *2 (S.D. Fla. Feb. 10, 2011) ("less than exemplary behavior . . . did not rise to the level requiring . . . sanctions, and in any event was counter-balanced by what may be viewed as less than sterling behavior exhibited on the part of opposing counsel"); *Rahmings v. Essary*, 2011 WL 13141665, at *3 (M.D. Fla. Aug. 29, 2011) (no sanctions where both counsel were "equally argumentative"). Her motion for sanctions should be denied, and she and her counsel instructed not to file any further motions for sanctions without leave of the Court.

Respectfully submitted,                                                      Dated: September 9, 2025

*/s/ Rachel E. Fugate*

Rachel E. Fugate (FL Bar No. 144029)
Yelan Escalona (FL Bar No. 1031564)
Shullman Fugate PLLC
100 South Ashley Drive, Suite 600
Tampa, FL 33602
Tel: (561) 429-3619
rfugate@shullmanfugate.com
yescalona@shullmanfugate.com

Katherine M. Bolger (*pro hac vice*)
Alexandra Perloff-Giles (*pro hac vice*)
Davis Wright Tremaine LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Tel: (212) 489-8230
katebolger@dwt.com
alexandraperloffgiles@dwt.com