# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

LAURA LOOMER,

    Plaintiff,

v.

BILL MAHER and
HOME BOX OFFICE, INC.,

    Defendants.

Case No. 5:24-cv-625-JSM-PRL

## KATHERINE M. BOLGER'S RESPONSE TO
## ORDER TO SHOW CAUSE [DOC. 158]

Katherine M. Bolger, by counsel, respectfully submits this Response to the Court's Order to Show Cause (Doc. 158), and states as follows:

### INTRODUCTION

The Court rightfully raised concerns about the conduct of Ms. Bolger and Larry Klayman during two depositions of parties in this case. Ms. Bolger unequivocally apologizes to the Court, Mr. Klayman, and the parties for the temporary lapse in her otherwise unwavering professional judgment exhibited during her 27-year legal career. Ms. Bolger's apology is unconditional, and she fully acknowledges that her conduct is not excused by Mr. Klayman's and Laura Loomer's behavior during the depositions.

While not an excuse, it is important to put Ms. Bolger's actions in context. This has been a uniquely challenging and hostile case. Ms. Bolger sincerely regrets that, in

1

some circumstances, she responded to Mr. Klayman's and Ms. Loomer's actions by engaging in conduct that fell below the standards expected by this Court and the standards she sets for herself. Nevertheless, Ms. Bolger's actions were not intended to, and did not, obstruct the proceedings in bad faith.

Ms. Bolger has never been sanctioned by any court. She has never been found by any Bar or court to have committed professional misconduct. This is the first time in Ms. Bolger's otherwise-unblemished 27-year legal career that she has been required to respond to a show-cause order for sanctions against her. Based on the facts of this matter, the totality of the circumstances, and the standard established by the Eleventh Circuit, sanctions should not be imposed against Ms. Bolger. The exercise of retaining undersigned counsel and responding to the Court's Show Cause Order has served a valuable purpose because it has caused her to reflect and learn from her errors.

This will not happen again.

## MEMORANDUM OF LAW

### A. Legal Standard for Sanctions

The Court has indicated that there are three potential grounds for sanctions: (1) Rule 11(c)(3); (2) 28 U.S.C. § 1927; and (3) the Court's inherent authority. [Doc. 158, Order, p. 3].

Rule 11 does not apply to Ms. Bolger's deposition-related conduct. Rule 11(c)(3) provides that the Court may "order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." In turn, Rule 11(b) addresses written representations to the Court in

pleadings, motions, or other papers. Fed. R. Civ. P. 11(b); *see also* Fed. R. Civ. P. 11(d) ("This rule does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37."); *Engel v. Experian Info. Sols., Inc.*, No. 04-61380-CIV, 2005 WL 8155375, at *3 (S.D. Fla. June 6, 2005), report and recommendation adopted, No. 04-61380-CIV, 2005 WL 8155374 (S.D. Fla. June 24, 2005) ("Rule 11 sanctions, however, may not be imposed for discovery abuses."). Because the Court is considering deposition-related conduct as it relates to Ms. Bolger, and not representations to the Court in pleadings, motions, or other papers, Rule 11 does not apply.

Regarding 28 U.S.C. § 1927 and the Court's inherent authority, Ms. Bolger should not be sanctioned because the conduct at issue does not constitute "bad faith," which is required for sanctions under both 28 U.S.C. § 1927 and the Court's inherent authority.

Section 1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. To support a sanction under 28 U.S.C. § 1927, a court must find that "(1) the attorney engaged in unreasonable and vexatious conduct; (2) such conduct multiplied the proceedings; and (3) the amount of the award does not exceed the costs, expenses, and attorneys' fees reasonably incurred due to such conduct." *Johnson v. Medigap Life, LLC*, No. 22-CV-81427, 2023 WL 5619305, at

3

\*6 (S.D. Fla. Aug. 31, 2023) (citing *Goode v. Wild Wing Cafe*, 588 F. App'x 870, 874 (11th Cir. 2014)). A sanction rendered pursuant to 28 U.S.C. § 1927 requires a showing of bad faith. *Id.* at \*5 (*citing Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020)). To trigger § 1927, "the party moving for sanctions must show objective bad faith," which means showing the "attorney acted 'knowingly or recklessly.'" *Irish*, 962 F.3d at 1310 (emphasis removed) (citations omitted).

The Court also has the inherent power to police those appearing before it. *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)). A court's inherent power is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* (citation omitted). "This includes the power to fashion an appropriate sanction for conduct which abuses the judicial process." *Hernandez v. Acosta Tractors Inc.*, 898 F.3d 1301, 1306 (11th Cir. 2018). A court may exercise this power "to sanction the willful disobedience of a court order, and to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Purchasing Power, LLC*, 851 F.3d at 1223 (citation omitted).

"The key to unlocking a court's inherent power is a finding of bad faith." *Id.* at 1223 (citation omitted). Before imposing a sanction under its inherent authority, a court "must make a finding that the sanctioned party acted with subjective bad faith."[1]

---

[1] "In the context of inherent powers, the party moving for sanctions must show subjective bad faith." *Irish*, 962 F.3d at 1310 (emphasis removed); *see also Hernandez*, 898 F.3d at 1306; *see*

4

*Hernandez*, 898 F.3d at 1306. Subjective bad faith requires a showing "intentional and not just reckless behavior." *J.C. Penney Corp., Inc. v. Oxford Mall, LLC*, 100 F.4th 1340, 1346 (11th Cir. 2024) (citation omitted). "This standard can be met either (1) with direct evidence of the attorney's subjective bad faith or (2) with evidence of conduct so egregious that it could only be committed in bad faith." *Irish*, 962 F.3d at 1310. "Bad faith exists when the court finds that a fraud has been practiced upon it, or that the very temple of justice has been defiled, or where a party or attorney knowingly or recklessly raises a frivolous argument."[2] *Action Nissan, Inc. v. Hyundai Motor Am. Corp.*, No. 6:21-CV-2152, 2024 WL 4288047, at *5 (M.D. Fla. Sept. 25, 2024) (citations omitted).

## B. The Depositions at Issue Posed Uniquely Challenging Circumstances

The Eleventh Circuit has established that, "[i]n assessing whether a party should be sanctioned, a court examines the wrongdoing in the context of the case, including the culpability of other parties." *Purchasing Power, LLC*, 851 F.3d at 1225, 1228 (reversing the district court's decision to impose sanctions); *see also Pro Custom Solar LLC v. Blue Raven Solar, LLC*, No. 6:19-CV-1305-CEM-GJK, 2022 WL 2317451, at *2 (M.D. Fla. Mar. 11, 2022) (same).

---

*also Purchasing Power, LLC*, 851 F.3d at 1223. By contrast, under 28 U.S.C. § 1927, the party moving for sanctions must show objective bad faith. *Irish*, 962 at 1310.

[2] "This is not the same as simple recklessness, which can be a starting point but requires something more to constitute bad faith." *Purchasing Power, LLC*, 851 F.3d at 1225; *see also Irish*, 962 F.3d at 1310 (holding that evidence of recklessness alone will not suffice.).

5

Ms. Bolger is highly experienced in contentious litigation. Her First Amendment practice revolves around defamation litigation, which, routinely, is an emotionally driven personal tort for the litigants wherein plaintiffs commonly believe that they are seeking to vindicate some part of their personhood, while defendants believe they are seeking to protect their fundamental right to free speech. [*See* **Exhibit A**, Declaration of Katherine M. Bolger, ¶¶13-15]. It is common for this sort of litigation to be contentious. Ms. Bolger has successfully navigated through the contention for decades. [*Id.*].

This case has proven unique for Ms. Bolger in that Plaintiff and her counsel frequently and publicly lodged personal attacks against her and her law firm from the beginning. [*See, e.g.*, Doc. 42, ¶32; Doc. 21, p. 2]. These unique challenges came to a head during the depositions in this case, including the deposition of Ms. Loomer, where "[o]bjectively, Ms. Loomer was a difficult witness." [Order p. 9]. While the following facts do not serve as an excuse for Ms. Bolger's actions, they are important to place the actions in context when determining whether to impose sanctions under the standards articulated by the Eleventh Circuit.

Before the depositions, Ms. Loomer and Mr. Klayman issued a press release and public statements advertising the depositions.[3] On several occasions before and after the depositions, Ms. Loomer publicly criticized Ms. Bolger and her law firm, by

---

[3] See, e.g., https://x.com/LauraLoomer/status/1904584045155193130 (Mar. 25, 2025); https://x.com/LauraLoomer/status/1907783525387972620 (Apr. 3, 2025); https://x.com/LauraLoomer/status/1908195167993291159 (Apr. 4, 2025).

name, to her more than 1.8 million social media followers and referred to Ms. Bolger's firm as a "liberal cesspool," opining that "their lawyers are some of the most unethical people practicing law."[4] Before her deposition, Ms. Loomer publicly requested the President and Vice President of the United States to take action against Ms. Bolger's law firm; she stated that Ms. Bolger's firm should be "sanctioned and should be the subject of an Executive Memorandum."[5] Similarly, Mr. Klayman publicly criticized Ms. Bolger's law firm on several occasions.[6] As a result of these negative public statements, Ms. Bolger and her law firm took steps to hire a third-party security and risk management vendor to protect Ms. Bolger's security and conduct an exposure assessment to determine the scope of potential threats. [Ex. A, ¶20].

During the first half of her deposition, on June 4, 2025, Ms. Loomer posted to her more than one million followers some of Ms. Bolger's Federal Election Commission records to X (formerly known as Twitter).[7] Ms Loomer's post generated several comments from her social media followers concerning Ms. Bolger's residential zip code and included a photograph identifying Ms. Bolger. Ms. Bolger learned about this when her teenage daughter texted Ms. Bolger's husband, who forwarded the texts to Ms. Bolger during the morning portion of the deposition. [Ex. A, ¶22]. When Ms.

---

[4] Mr. Klayman and Ms. Loomer discussed the deposition, Ms. Bolger, and the Court on Ms. Loomer's social media account.
https://www.youtube.com/watch?v=KgNs3V7DdbI (June 24, 2025).
[5] https://x.com/LauraLoomer/status/1911168898759893184 (April 12, 2025).
[6] https://x.com/LarryEKlayman/status/1934259504574791844 (June 15, 2025); https://www.youtube.com/watch?v=KgNs3V7DdbI.
[7] https://x.com/LauraLoomer/status/1930258020723781686 (June 4, 2025).

Bolger spoke with her daughter during a break in the deposition, her daughter told Ms. Bolger that she was scared. Her daughter's texts and fears caused Ms. Bolger to worry about her family during the deposition, which contributed to some of the discourteous exchanges with Ms. Loomer during the deposition. [*Id.*, ¶22].

Mr. Klayman's background and conduct further compounded the uniquely difficult circumstances of this matter. Again, the following facts do not serve as an excuse for Ms. Bolger's behavior, but because the Eleventh Circuit has held that courts examine "the wrongdoing in the context of the case, including the culpability of other parties," they are provided so that the Court has the benefit of a full record. *See Purchasing Power, LLC*, 851 F.3d at 1225.

Mr. Klayman has been previously sanctioned and other courts have condemned his violations of court rules and professional standards. "Over the years, numerous courts have sanctioned Klayman, called his behavior into question, or revoked his pro hac vice admission. Two courts have banned Klayman from their courts for life." *Robles v. In the Name of Human., We REFUSE to Accept a Fascist Am.*, No. 17-CV-04864, 2018 WL 2329728, at *1 (N.D. Cal. May 23, 2018). In a prior case before this Court, the Honorable Judge Anne C. Conway noted: "The Court has become quite frustrated with [Mr. Klayman's] various tactics to avoid Court rules throughout the course of this litigation. Unfortunately, the Court learned early on in this case that this approach to litigation is the norm and not the exception for [Mr. Klayman]." *Klayman v. City Pages*, No. 5:13-CV-143-OC-22PRL, 2015 WL 1546173, at *8 n.7 (M.D. Fla. Apr. 3,

2015).[8] The most recent sanction was Mr. Klayman's two-year suspension by the Florida Supreme Court. *Florida Bar v. Klayman*, No. SC2023-1219, 2025 WL 3096930, at *1 (Fla. Nov. 6, 2025).

To be clear, these facts do not excuse Ms. Bolger's own conduct during the depositions. Ms. Bolger holds herself to a higher standard and the Court rightly expects better of members of the Bar. She should not have allowed herself to be drawn into tit-for-tat exchanges with Mr. Klayman. These facts are offered only to help explain why Ms. Bolger said things that she regrets and should not have said. Ms. Bolger hopes that the Court will consider the context when determining whether she intentionally acted in bad faith.

---

[8] The following is a non-exhaustive list of other courts addressing Mr. Klayman's conduct.
- *Macdraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 994 F. Supp. 447, 460 (S.D.N.Y. 1997) (finding that Mr. Klayman "engaged in significant abuse, unreasonable conduct, and acts of bad faith[,]" and his "conduct has degraded the legal profession and disserved justice[]" before ordering that Mr. Klayman's future applications to appear before the Court on a pro hac vice basis will be "denied"), *aff'd*, 138 F.3d 33, 34 (2d Cir. 1998).
- *Klayman v. Jud. Watch, Inc.*, 802 F. Supp. 2d 137, 152 (D.D.C. 2011) (stating that Mr. Klayman's "flagrant disregard of this Court's orders, in the face of the Court's patient efforts to secure his compliance, is an affront to the authority of this Court and the federal judiciary as a whole[]").
- *Stern v. Burkle*, 2007 WL 2815139 (N.Y. Sup. Ct. Sep. 6, 2007) ("Mr. Klayman's record demonstrates more than an occasional lapse of judgment, it evinces a total disregard for the judicial process. There is no reason for Mr. Klayman to be involved in this case or appear in this court.").
- *Baldwin Hardware Corp. v. FrankSu Enter. Corp.*, 78 F.3d 550, 554 (Fed. Cir. 1996) (affirming district court's order "permanently prohibiting Mr. Klayman from appearing before him pro hac vice in the future[]" (italics removed)).
- *Klayman v. Obama*, No. 3:16-cv-02010-L, at 2 (N.D. Tex. Apr. 13, 2017) (Doc. 133) (stating that Mr. Klayman's conduct was "degrading to the legal profession" before threatening to "personally sanction him monetarily" for future "frivolous or nonsensical documents").

9

### C. <u>Ms. Loomer's Deposition</u>

The Court rightfully has raised concerns about conduct during Ms. Loomer's deposition. First and foremost, Ms. Bolger, without qualification, apologizes for calling Ms. Loomer a "coward" during a passionate exchange in a difficult line of questioning. [Ex. A, ¶4; Loomer Depo. at 4:40:45-4:47:20].[9] Ms. Bolger agrees with the Court that, regardless of the personal attacks and outrageous conduct exhibited by Ms. Loomer, there is no excuse for name-calling. [Order p. 10]. While regrettable, this incident objectively did not obstruct or impede Ms. Loomer's ability to sit for a deposition. She continued her deposition without any apparent problem, and then waited months to bring this issue before the Court. [Doc. 115]. *See Pendlebury v. Starbucks Coffee Co.*, No. 04-80521-CIV, 2006 WL 8433925, at *3 (S.D. Fla. Dec. 27, 2006) (finding that bad faith requires a showing that counsel's comments are "so outrageous as to prevent the deposition's completion or render it useless."); *see Hales v. Preston*, No. 1:24CV45, 2024 WL 5690280, at *1 (N.D. Fla. Dec. 9, 2024) (declining to impose sanctions despite a finding that "the only person who behaved appropriately during the deposition was the court reporter. The behavior of counsel for both parties as well as that of Plaintiff was improper[]."). This incident did not delay the case, multiply the proceedings, cause additional fees, prejudice any party, or abuse the judicial process, and did not constitute bad faith. It was a momentary emotional

---

[9] The citations to the deposition are to the video record timestamps.

reaction caused by the totality of the circumstances, including Ms. Bolger's concerns for the safety of her family.

As to the remaining concerns raised by the Court, the context of those exchanges helps to explain them. *See Purchasing Power, LLC*, 851 F.3d at 1225. Ms. Loomer's disdain for Ms. Bolger, her law firm, and her clients was apparent during her deposition, which included personal attacks accusing Ms. Bolger (an attorney who has spent her entire professional career defending constitutional rights) of "hat[ing] America" and "represent[ing] the filthiest f*cking people in our country—Democrat scumbags." [Loomer Depo. at 3:22:05-10; 3:23:04-13]. Many of Ms. Loomer's responses to direct questions spiraled into unrestrained tangents, or contained offensive statements, which appeared to be intended for a public audience outside the scope of this case. [Order, p. 9; *see e.g.*, Loomer Depo. at 2:34:55-2:36:15; 3:57:48-3:58:14; 4:02:56-4:03:02]. Mr. Klayman made no efforts to restrain, and in certain instances encouraged, Ms. Loomer's conduct during the deposition. [Order, pp. 9-10; Loomer Depo. at 4:02:56-4:03:13; 4:25:31-40]—even calling Ms. Bolger names and continuing his prior *ad hominem* attacks. [Order, p. 8; Loomer Depo. at 3:59:50-4:00:07; 4:21:23-27; 5:08:37-41].

These circumstances created an exceptionally contentious environment to conduct Ms. Loomer's deposition. Importantly, for a vast majority of the almost six-hour deposition, Ms. Bolger properly and professionally conducted the deposition while fending off the personal attacks, interruptions, and evasive conduct. Regrettably,

11

in a few instances, Ms. Bolger, as noted by the Court, took the bait and lost her temper, which she should not have done.

The Court first raised concern with Ms. Bolger's response to Ms. Loomer: "I thought you didn't like the word, "f*ck" . . . I thought you were offended by the word f*ck." [Order, p.10 n. 5; Loomer Depo. at 3:22:10-15]. Ms. Bolger's question was prompted by Ms. Loomer's tangent in which she declared "I'm not a f*cking Nazi," "I'm not going to let you f*cking twist this," "You're f*cking Democrats," and "you represent the filthiest f*cking people . . . ." [Loomer Depo. at 3:21:46-3:22:10]. While the uncouth question in hindsight should have been avoided, the question was in direct response to Ms. Loomer's repeated use of the word "f*ck."

Next, the Court raised concerns regarding a tense exchange between Ms. Bolger, Ms. Loomer, and Mr. Klayman. [Order, p. 11; Loomer Depo. at 5:04:07-5:09:10]. This exchange included Ms. Loomer's refusal to answer questions about whether she believed the First Amendment protects her right to give an opinion or make a joke, and Mr. Klayman's improper and repeated instructions to Ms. Loomer to not answer relevant questions. [*Id.*]. Ms. Bolger's frustration with this conduct, coupled with her decades-long advocacy and respect for the First Amendment, caused her to ask Ms. Loomer "Isn't it the case, that in the United States of America, the First Amendment express[es] a right to have opinions; and isn't that f*cking fantastic?" [Loomer Depo. at 5:07:15]. Continuing to be met with avoidance, Ms. Bolger commented that it was "embarrassing" that Ms. Loomer would not answer the question. [*Id.* at 5:15:13].

12

In hindsight, Ms. Bolger acknowledges her question was phrased inappropriately and acknowledges that she should have stopped the deposition and sought relief from the Court rather than continuing to trade barbs with Ms. Loomer and Mr. Klayman. [Ex. A, ¶25]. Ms. Bolger takes full responsibility for her part in the uncharitable discourse during the deposition. [*Id.*, ¶24]. While unfortunate, Ms. Bolger's comments were not intended to—and did not—delay the case, multiply the proceedings, prejudice any party, abuse the judicial process, or otherwise constitute bad faith tactics by Ms. Bolger. Rather, the comments reflect an uncharacteristic show of frustration, for which Ms. Bolger apologizes to the Court, counsel, and the parties—and fully understands, accepts, and appreciates the Court's admonition and reminder that such behavior is inappropriate.

### D. Mr. Bill Maher's Deposition

The deposition of Mr. Maher taken by Mr. Klayman, which occurred before Ms. Loomer's deposition, was plagued by similarly unnecessary and contentious behavior. As the Court observed, Ms. Bolger became frustrated with Mr. Klayman's conduct during the deposition. [Order, p. 7; Maher Depo. at 1:30:30-1:33:15; 3:05:19-3:06:00]. A majority of the deposition reflects legitimate and proper objections by Ms. Bolger. However, Ms. Bolger's frustration manifested itself in some objections to Mr. Klayman's questions that were not stated in a nonargumentative and concise manner. [Order p. 7]. *See, e.g.*, *Gov't Emps. Ins. Co. v. Gomez-Cortes*, No. 20-21558-CIV, 2022 WL 1719317, at *2 (S.D. Fla. May 27, 2022) (examining the "illuminating context about the questions that preceded each objection, as well as the full contents

of the exchanges" between counsel as a necessary part of determining where deposition behavior was in bad faith).

Arguments between counsel unfortunately ensued on several occasions. [Order, p. 7]. In one instance, during a disagreement about Mr. Klayman's representations concerning Florida law to the witness, and in response to Mr. Klayman's patronizing question to Ms. Bolger: "You're not a Florida lawyer, are you?," she reciprocated with "You're about not to be" a Florida lawyer (referring to Mr. Klayman's then-pending Florida Bar disciplinary action). [Order, pp. 7-8; Maher Depo. 1:41:53-1:42:24].

With the benefit of reflection, Ms. Bolger acknowledges she should have taken the high road and not exchanged countering blows with Mr. Klayman. For this, Ms. Bolger apologizes to the Court, counsel, and the parties. [Ex. A, ¶¶2, 3].

Importantly, Mr. Klayman did not suspend the deposition to seek a protective order from the Court. Rather, he continued and completed the deposition of Mr. Maher. Mr. Klayman then waited almost five months to bring his motion for sanctions. [Doc. 115]. Mr. Klayman's delay in seeking relief is reflective of the fact that Ms. Bolger's conduct did not negatively impact the Plaintiff's prosecution of this case or constitute bad faith. *See Regions Bank v. Legal Outsource PA*, No. 214CV476FTM29MRM, 2016 WL 11644387, at *3 (M.D. Fla. May 9, 2016) (declining to impose harsh sanctions when objections "were not stated in a concise, non-argumentative, or non-suggestive manner[]" because "Plaintiff's counsel's objections were not so frequent, pervasive, or obstructionist as to impede the progress of the deposition or a fair inquiry into the designated deposition topics" and holding

14

that "the relatively severe sanctions requested by Defendants are not warranted at this time[].").

### E. Ms. Bolger Has an Exemplary Record of Professionalism

To the extent the Court is considering imposing a sanction, the Court should consider the following mitigating facts. While not binding on this Court's determination, The Florida Bar's Standards for Imposing Lawyer Sanctions[10] is instructive and provides, in part:

> These standards are not grounds for discipline but constitute a model to follow in deciding what sanction to impose for proven lawyer misconduct. While these standards set forth a comprehensive model to be used in imposing sanctions, they also recognize that sanctions imposed must reflect the circumstances of each individual lawyer, and therefore provide for consideration of aggravating and mitigating circumstances in each case.

Fla. Stds. Imposing Law. Sancs. 1.3, Commentary. The Standards provide that "[m]itigation is any factor that justifies a reduction in the degree of discipline to be imposed[]" and the factors, among others, that may be considered include: (1) character or reputation; (2) absence of a prior disciplinary record; and (3) remorse. Fla. Stds. Imposing Law. Sancs. 3.3.

Regarding her character and reputation, after graduating from the University of Chicago Law School, Ms. Bolger has established herself as a well-respected, dedicated, and accomplished attorney with more than 25 years of experience as a First Amendment and media litigator. [Ex. A, ¶¶13, 14; **Exhibit B**, Declaration of George

---

[10] Florida's Standards for Imposing Lawyer Sanctions – The Florida Bar

S. LeMieux]. Ms. Bolger is considered by her peers to be one of the preeminent First Amendment attorneys,[11] and she has represented many international and nationwide publishers, across the political spectrum, in high-profile and highly contentious litigation. [*Id.*, ¶¶12, 13]. Ms. Bolger is also active in Bar associations, serving in the following roles: Former Chair, Communications Committee, the Association of the Bar of the City of New York, 2017-2020, Governing Committee, ABA Forum on Communications Law, 2014-2017, ABA First Amendment and Media Litigation Committee, 2014-2017, Former Co-chair, ABA Women in Communications Law Committee, and Former Chair, Media Law Resource Center, Entertainment Law Committee. [*Id.*, ¶9]. Ms. Bolger has also dedicated her time on a pro bono basis to work focusing on women in difficult situations. She has won awards from the Brooklyn Bar Association Volunteer Lawyers Project and Her Justice (then called In Motion) for assisting women living in poverty in New York City. [*Id.*, ¶10].

Since 2015, Ms. Bolger has served as an adjunct professor with Fordham University School of Law where she teaches Journalism & the Law, and she has served as an instructor for New York University, School of Continuing and Professional Studies. [*Id.*, ¶11].

---

[11] By way of example, Ms. Bolger is one of the current Law360 MVP in media and entertainment law, and she is recognized as an attorney who had extraordinary wins and contributed most to her practice area in the past year. *See* https://www.law360.com/articles/2404836/mvp-davis-wright-s-katherine-bolger. Ms. Bolger is also listed among the Nation's most respected First Amendment attorneys by Chambers USA, a leading legal reference source whose rankings depend heavily on peer and client reviews. *See* https://chambers.com/legal-rankings/first-amendment-litigation-usa-nationwide-5:857:12788:1?l=en-GB.

Regarding the absence of a prior disciplinary record, Ms. Bolger is admitted to practice in, and is in good standing with, the New York Bar, the United States Supreme Court, and the Second Circuit, Third Circuit, Fourth Circuit, Fifth Circuit, Seventh Circuit, Eight Circuit, Ninth Circuit, and Eleventh Circuit U.S. Court of Appeals. [*Id.*, ¶8]. Her more than two decades of practice is unblemished. This is the first instance in Ms. Bolger's legal career in which she has been the subject to a show cause order concerning possible sanctions against her. [*Id.*, ¶6].

Finally, Ms. Bolger is remorseful for her behavior. She unequivocally apologizes to the Court, counsel, and the parties. [*Id.*, ¶¶ 2-5, 24-26]. Ms. Bolger fully acknowledges that her conduct is not excused by the conduct of Mr. Klayman and Laura Loomer during the depositions. [*Id.*, ¶¶ 5, 24].

### F. **Ms. Bolger Should Not Be Sanctioned for the Conduct at Issue**

Ms. Bolger apologizes to the Court for her participation in the conduct raised by the Court. [*Id.*, ¶¶ 2-5, 24-26]. Ms. Bolger should not have allowed her conduct to fall below the standards expected by this Court. And if her response contributed in any way to triggering more inappropriate conduct by her litigation adversaries, she regrets that as well. However, Ms. Bolger's conduct occurred in the heat of the moment and did not delay the case, multiply the proceedings, cause any additional fees or costs, abuse the judicial process, or prejudice Plaintiff. Evidencing this fact, Ms. Loomer waited more than three months after her deposition, and five months after Mr. Maher's deposition, to raise any of these concerns with the Court. [Doc. 115]. The case has proceeded as scheduled under the Court's Case Management and Scheduling Order

[Doc. 40], and summary judgment briefing is pending. Discovery in this matter is now closed and, therefore, there is no ongoing concern for similar discovery-related conduct between the parties. [*Id.*]. *See Pendlebury*, 2006 WL 8433925, at *3 ("[S]anctions are appropriate only where the deposition conduct at issue is egregious and repetitive"); *Ossman v. Meredith Corp.*, No. 1:19-CV-3200-SDG-JKL, 2021 WL 12224179, at *4 (N.D. Ga. Mar. 29, 2021) ("Although the [court] cannot condone Plaintiff's counsel's conduct during the depositions in question … I also cannot conclude that the sanctions are warranted in this instance" because "sanctions are appropriate only where the deposition conduct at issue is egregious and repetitive."); *Schwarz v. City of Treasure Island*, No. 8:05-CV-1696-T-30MAP, 2010 WL 11474625, at *2 (M.D. Fla. Oct. 13, 2010) (declining sanctions over lack of civility by attorney that was "was far from exemplary").

Ms. Bolger takes pride in her integrity and professionalism and is disappointed in herself for contributing to this situation, which required the Court to expend its valuable time, resources, and attention to address. [Ex. A, ¶26]. The process of retaining undersigned counsel and responding to the Court's Show Cause Order caused a significant moment of self-reflection and a sufficient warning that any similar future conduct (of which there will be none) will not be tolerated. [*Id.*, ¶27]. *See e.g.*, *Purchasing Power, LLC*, 851 F.3d at 1228 (reversing sanctions and noting that "[w]e trust that the damage done to the parties' credibility, finances, and time is enough of a sanction to curb their conduct and to serve as a warning to future diversity jurisdiction litigants."); *compare Noshirvan v. Couture*, No. 2:23-CV-1218, 2025 WL 2322740, at *11-

13 (M.D. Fla. Aug. 12, 2025) (finding a party's interruptions and repeated expletives "hurled" at counsel during a deposition was sanctionable, and sanctioned the offending party "with the imposition of [] attorney's fees and costs in connection with bringing the matter to the Court's attention, and a warning against future conduct.").

Based on the facts of this matter, the totality of the circumstances, the mitigating factors including Ms. Bolger's decades-long career with no history of sanctions and sincere remorse, and the standard established by the Eleventh Circuit, sanctions should not be imposed against Ms. Bolger because her actions did not amount to bad faith because the conduct did not delay the case, multiply the proceedings, cause additional fees, or abuse the judicial process. This matter should not sully Ms. Bolger's exemplary 27-year record of professionalism. The conduct at issue here will never be repeated. Accordingly, Ms. Bolger has shown good cause for the Court to decline to impose sanctions.

Dated: January 6, 2026.

/s/ *William J. Schifino, Jr.*
William J. Schifino, Jr., Esq.
Florida Bar No. 564338
Justin P. Bennett, Esq.
Florida Bar No. 112833
**GUNSTER, YOAKLEY & STEWART, P.A.**
401 E. Jackson Street, Suite 1500
Tampa, Florida 33602
Telephone: (813) 228-9080
Facsimile: (813) 228-6739
wschifino@gunster.com
jbennett@gunster.com


> George S. LeMieux, Esq.
> Florida Bar No. 16403
> **GUNSTER, YOAKLEY & STEWART, P.A.**
> 450 East Las Olas Blvd., Suite 1400
> Fort Lauderdale, Florida 33301
> Telephone: (561) 650-0577
> Facsimile: (561) 655-5677
>
> *Attorneys for Katherine M. Bolger*

## CERTIFICATE OF SERVICE

I certify that on January 6, 2026, a true and correct copy of the foregoing was filed with the Court via CM/ECF which will send a notice of electronic filing to the parties of record.

> */s/ William J. Schifino, Jr.*
> William J. Schifino, Jr.