# Exhibit A

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

LAURA LOOMER,

    Plaintiff,

v.

BILL MAHER and
HOME BOX OFFICE, INC.,

    Defendants.

Case No. 5:24-cv-625-JSM-PRL

## DECLARATION OF KATHERINE M. BOLGER

I, KATHERINE M. BOLGER, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am over the age of 18, and I am otherwise competent to make the statements in this Declaration. The statements made in this Declaration are based upon my personal knowledge.

2. I unequivocally apologize to the Court, Mr. Larry Klayman, and the parties for my temporary lapse in professional judgment during the depositions at issue in the Court's Order to Show Cause (Doc. 158).

3. I should have taken the high road and not engaged in arguments with Mr. Klayman during the depositions. For this, I apologize.

4. Additionally, and without qualification, I apologize for calling Laura Loomer a "coward" during a passionate exchange during the deposition.

1

5.     I fully acknowledge that my conduct is not excused by the behavior of Mr. Klayman and Ms. Loomer during the depositions.

6.     This is the first instance in my legal career in which I have been the subject of a show cause order concerning possible sanctions. I never been sanctioned by any court, and I similarly have never been found by any Bar or court to have committed professional misconduct.

7.     I have been a licensed and practicing attorney since 1999. I graduated with my J.D. from the University of Chicago Law School and was admitted to the New York Bar in 1999. I am currently a partner with the law firm Davis Wright Tremaine LLP.

8.     I am admitted to practice in, and in good standing with, the New York Bar, the United States Supreme Court, and the Second Circuit, Third Circuit, and Fourth Circuit, Fifth Circuit, Seventh Circuit, Eight Circuit, Ninth Circuit, and Eleventh Circuit U.S. Court of Appeals.

9.     I am active in Bar associations, and have served in the following roles: Former Chair, Communications Committee, the Association of the Bar of the City of New York, 2017-2020, Governing Committee, ABA Forum on Communications Law, 2014-2017, ABA First Amendment and Media Litigation Committee, 2014-2017, Former Co-chair, ABA Women in Communications Law Committee, and Former Chair, Media Law Resource Center, Entertainment Law Committee.

10.    I have provided pro bono services focusing on women in difficult situations, and I have received awards from the Brooklyn Bar Association Volunteer

Lawyers Project and Her Justice (then called In Motion) for assisting women living in poverty in New York City.

11. I am also involved in legal education. Since 2015, I have served as an adjunct professor with Fordham University School of Law where I teach Journalism & the Law, and I have served as an instructor for New York University, School of Continuing and Professional Studies.

12. During my career, I have had the honor of receiving several professional recognitions, including:

a. Named as one of "America's Leading Lawyers for Business" by Chambers USA in First Amendment Litigation (Nationwide), 2007-2025; Media and Entertainment: First Amendment Litigation (New York), 2007-2025; Received "Band 1" ranking, 2019-2025
b. Named "Lawyer of the Year" in Media Law (New York), Best Lawyers, 2024
c. Named as one of the "Best Lawyers in America" by Best Lawyers in Media Law, 2013-present; in Copyright Law, 2020-present; in Litigation - First Amendment, 2023-present
d. Selected as a "New York Super Lawyer" in Media & Advertising and Entertainment & Sports, Thomson Reuters, 2014-2024
e. Named as one of "500 Leading Global Entertainment, Sports & Media Lawyers" by Lawdragon, 2025
f. Named a "Client Service All-Star" by The BTI Consulting Group, 2024-2025
g. Named an "MVP of the Year" in Media & Entertainment, Law360, 2019, 2025
h. Selected by Best Lawyers as New York City's "Lawyer of the Year" in Media Law, 2019

13. During my career, I have represented many international and nationwide publishers, across the political spectrum, in high-profile and highly contentious litigation.

3

14. For the last 25 years, my practice has focused on First Amendment and media litigation. My First Amendment practice revolves around defamation litigation, which, routinely, is an emotionally driven personal tort for the litigants wherein plaintiffs commonly believe that they are seeking to vindicate some part of their personhood, while defendants believe they are seeking to protect their fundamental right to free speech. It is common for First Amendment and media litigation to be contentious.

15. I am accustomed to contentious litigation, but this case has proven to be unique in my experience because Plaintiff and her counsel publicly lodged personal attacks against myself and my law firm from the beginning of the case.

16. On several occasions before and after the depositions, Ms. Loomer publicly criticized me and my law firm.[1] In social media posts, with millions of followers, Ms. Loomer referred to my law firm as a "liberal cesspool," opining that "their lawyers are some of the most unethical people practicing law." [2]

17. Before her deposition, Ms. Loomer publicly requested the President and Vice President of the United States to take action against my law firm, stating that my firm should be "sanctioned and should be the subject of an Executive Memorandum."

---

[1] See, e.g., https://x.com/LauraLoomer/status/1904584045155193130 (Mar. 25, 2025); https://x.com/LauraLoomer/status/1907783525387972620 (Apr. 3, 2025); https://x.com/LauraLoomer/status/1908195167993291159 (Apr. 4, 2025);
[2] https://x.com/LauraLoomer/status/1930260660857737385 (June 4, 2025).

4

18. Similarly, Mr. Klayman publicly criticized my law firm on several occasions, including in the pleadings and motions filed in this case.[3] *See*, *e.g.*, (Doc. 1 ¶32; Doc. 21 at p. 2; Docs. 57-3, 57-13; Doc. 85 at p. 6). Throughout the litigation, Mr. Klayman declined to deal civilly with me, and he repeatedly accused me of lying, acting in an unethical matter, and engaging in "illegal attempts and actions." The accusations were without any basis.

19. Ms. Loomer and Mr. Klayman also publicly published, and made privately to me, negative comments concerning my legal representation of other clients in matters unrelated to this case.

20. Due to these negative public statements, my law firm hired a third-party security and risk management vendor to protect my security and conduct an exposure assessment to determine the scope of potential threats.

21. On the morning of her deposition on June 4, 2025, Ms. Loomer posted some of my Federal Election Commission records.[4] The post generated several comments from her social media followers, which included my residential zip code and my photograph from my law firm profile.

22. I was unaware of Mr. Loomer's post until my teenage daughter texted my husband during the first half of the deposition, which he forwarded to me and I reviewed during a break. I spoke with my daughter during the break and she told me she was scared. The effect of Ms. Loomer's actions had on my daughter caused me to

---

[4] https://x.com/LauraLoomer/status/1930258020723781686 (June 4, 2025).

5

worry about my family, which contributed to some of the discourteous exchanges with Ms. Loomer during the deposition.

23. This case has been litigated against the constant drumbeat of public and personal attacks against my law firm and myself. These circumstances created a unique and exceptionally contentious environment to conduct and defend the depositions at issue.

24. Nevertheless, I take full responsibility for my part in the uncharitable comments and discourse during the deposition. My conduct is not excused by Mr. Klayman's and Ms. Loomer's behavior before and during the depositions.

25. With the benefit of hindsight, I should have sought relief from the Court rather than continuing to trade barbs with Ms. Loomer and Mr. Klayman during the depositions.

26. I take pride in my integrity and professionalism, and I am disappointed that I contributed to this situation, which required the Court to expend its valuable time, resources, and attention to address.

[Intentionally left blank]

27. The process of retaining counsel and responding to the Court's Show Cause Order has served as a significant moment of self-reflection and a regrettable learning opportunity. I will not engage in similar conduct again.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 6th day of January, 2026.

_Katherine M. Bolger_
Katherine M. Bolger