UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

LAURA LOOMER,

    Plaintiff,

v.                                                             Case No: 5:24-cv-625-JSM- PRL

BILL MAHER, et al.,

    Defendants.

## ORDER

On December 4, 2025, the Court entered an Order directing counsel for Plaintiff, Larry Klayman, and counsel for Defendants, Kate Bolger, to show cause why they should not be sanctioned for their conduct at the depositions of Bill Maher and Laura Loomer. (Doc. 158). The Court was sincerely shocked by counsel's conduct at those depositions—conduct which fell well below the standards of professionalism that this Court expects and that are mandated by the Florida Bar. In issuing its show cause Order, the Court was focused on explaining why counsel's conduct at the depositions was unacceptable, resetting the tone of this litigation (which has been unusually contentious), and ensuring that counsel would conduct themselves with civility and professionalism moving forward. Mr. Klayman and Ms. Bolger have filed their respective responses. (Docs. 175, 177). The Court will discuss each response in turn.

**A. Ms. Bolger**

Ms. Bolger retained counsel to represent her for the limited purpose of responding to the order to show cause. In addition to her 20-page response, she filed two supporting

declarations—Declaration of Katherine M. Bolger (Doc. 175-1); and Declaration of George S. LeMieux (Doc. 175-2).

Ms. Bolger states that she is remorseful for her behavior and apologizes to the Court, counsel, and the parties. She explains that she:

> takes pride in her integrity and professionalism and is disappointed in herself for contributing to this situation, which required the Court to expend its valuable time, resources, and attention to address. The process of retaining undersigned counsel and responding to the Court's Show Cause Order caused a significant moment of self-reflection and a sufficient warning that any similar future conduct (of which there will be none) will not be tolerated.

(Doc. 175 at 18) (citations omitted). And while Ms. Bolger provides context for her actions, she unequivocally takes full responsibility for her conduct and makes clear that the underlying circumstances do not justify her lapses in professionalism. She also acknowledges that her conduct during the depositions is not excused by the conduct of Mr. Klayman and Ms. Loomer.

Moreover, Ms. Bolger has never been the subject of a show cause order concerning possible sanctions, nor has she ever been sanctioned or found to have committed professional misconduct by any Bar or court. In addition, George S. LeMieux, Esq., a lawyer in good standing with The Florida Bar and admitted to practice in the Middle District, avers that he has known Ms. Bolger for five years and has served as co-counsel on two federal cases. (Doc. 175-2 at ¶¶3-4). According to Mr. LeMieux, Ms. Bolger has "consistently demonstrated the highest level of professionalism, sound judgment, and respect for opposing counsel, the parties, and the judicial process." (Id. at ¶5). He opines that based on his professional experience, Ms. Bolger's "professional conduct reflects a strong commitment to civility and the standards of professionalism expected by The Florida Bar and the Court." (Id. at ¶6).

Based on Ms. Bolger's response, the Court is satisfied that its objectives in issuing the order to show cause were achieved. Ms. Bolger was remorseful and apologetic, she took full responsibility for her behavior, and she re-committed herself to litigating this action with civility and professionalism—standards to which she has held herself over the course of her 25-year career. Accordingly, the order to show cause is discharged as to Ms. Bolger.

### B. Mr. Klayman

In stark contrast, Mr. Klayman fails to acknowledge that he did anything wrong at the depositions. In fact, Mr. Klayman blatantly ignores the countless instances of unprofessional conduct identified by the Court—including name calling, bickering, improper objections, and failing to restrain Ms. Loomer's outrageous conduct—and instead, explains why he was rightfully frustrated by Ms. Bolger's conduct at the depositions, why his improper objections were well-founded, and even appears to shift blame to the Court for not granting his requests for in-person discovery conferences and for (according to Mr. Klayman, who made the suggestion "respectfully") the undersigned's purported bias towards Ms. Bolger and her clients.

Unfortunately, this is not an isolated instance of unprofessional conduct for Mr. Klayman. Indeed, over the past thirty years, Mr. Klayman repeatedly has been sanctioned and condemned for violations of court rules and professional standards, both in the Middle District and throughout the United States. *See* e.g., *Robles v. In the Name of Human., We REFUSE to Accept a Fascist Am.,* No. 17-CV-04864, 2018 WL 2329728, at *1 (N.D. Cal. May 23, 2018), aff'd, 1820 Fed.Appx. 529, 531-32 (9th Cir. 2020) (revoking Mr. Klayman's pro hac vice admission and reviewing his history of judicial reprimands and sanctions—"Over the years, numerous courts have sanctioned Klayman, called his behavior into question, or

revoked his pro hac vice admission. Two courts have banned Klayman from their courts for life."); *In re Bundy*, 840 F.3d 1034, 1042-(9th Cir. 2016), *subsequent mandamus proceeding*, 852 F.3d 945 (9th Cir. 2017) (affirming District of Nevada's decision to deny Mr. Klayman's application for pro hac vice, based on pending D.C. disciplinary proceedings, number of other cases in which federal district courts have cited him for inappropriate and unethical behavior, and his pattern of perverting the judicial process with insults and intimidation against judges personally, which show a "total disregard for judicial process."); *Klayman v. City Pages*, No. 5:13-CV-143-OC-22PRL, 2015 WL 1546173, at *8 n.7 (M.D. Fla. Apr. 3, 2015) (noting that Mr. Klayman "has routinely shown a disregard for [the district court's] Local Rules" and "[t]he Court has become quite frustrated with [Mr. Klayman's] various tactics to avoid Court rules throughout the course of this litigation. Unfortunately, the Court learned early on in this case that this approach to litigation is the norm and not the exception for [Mr. Klayman]."); *Klayman v. Jud. Watch, Inc.*, 802 F. Supp. 2d 137, 138-39, 152 (D.D.C. 2011) (after the "patent failure of the Court's use of lesser sanctions in the past to have an discernible effect on Klayman's conduct," Klayman's "consistent pattern of engaging in dilatory tactics, his disobedience of Court-ordered deadlines, and his disregard for the Federal Rules of Civil Procedure and the Local Rules" necessitated further, more severe, sanctions); *Stern v. Burkle*, 2007 WL 2815139 (N.Y. Sup. Ct. Sep. 6, 2007) (denying Mr. Klayman's petition to proceed pro hac vice because his "record demonstrates more than an occasional lapse of judgment, it evinces a total disregard for the judicial process. There is no reason for Mr. Klayman to be involved in this case or appear in this court."); *Macdraw, Inc. v. CIT Grp. Equip. Fin., Inc.,* 994 F. Supp. 447, 460 (S.D.N.Y. 1997), aff'd, 138 F.3d 33, 34 (2d Cir. 1998) (revoking Klayman's ability to appear before the district court pro hac vice in perpetuity and sanctioning Klayman

for "undignified and discourteous conduct that was both degrading to the Court and prejudicial to the administration of justice" by, among other things, making accusations of racial and political bias and acting "abusive[ly] and obnoxious[ly]" at depositions); *Baldwin Hardware Corp. v. FrankSu Enter. Corp.,* 78 F.3d 550, 554 (Fed. Cir. 1996) (affirming district court's order "permanently prohibiting Mr. Klayman from appearing before him pro hac vice in the future[]."). The most recent sanction is Mr. Klayman's two-year suspension by the Florida Supreme Court. *Florida Bar v. Klayman*, No. SC2023-1219, 2025 WL 3096930 (Fla. Nov. 6, 2025).

Given this history, combined with Mr. Klayman's complete refusal to acknowledge his blatantly unacceptable conduct at the depositions, the Court has no reason to believe that Mr. Klayman understands his professional obligations and that he is committed to conducting himself in compliance with the standards of professionalism that this Court expects and that are mandated by the Florida Bar.

Accordingly, the Court refers Mr. Klayman to the grievance committee for the Ocala Division under Local Rule 2.04, to investigate alleged misconduct in this Court, described in Doc. 158, and to provide the Chief Judge a recommended resolution. The Court further refers Mr. Klayman to The Florida Bar for any action considered appropriate in any current investigations involving Mr. Klayman or otherwise.

In addition to this Order, the Clerk shall provide the grievance committee for the Ocala Division and The Florida Bar with the Order to Show Cause (Doc. 158), Mr. Klayman's response (Doc. 177), a copy of the deposition transcript for both depositions, and a thumb drive of the video of each deposition.

- 6 -

DONE and ORDERED in Ocala, Florida on January 15, 2026.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:
Counsel of Record

Renee Thompson, Esquire
Chair, Grievance Committee, M.D. of Fla., Ocala Div.
Upchurch, Watson, White & Max
Thompson Law Center PLLC
7 E. Silver Springs Blvd, Ste 500
Ocala, FL 34470
rthompson@uww-adr.com

Elizabeth Clark Tarbert, Esquire
Director, Lawyer Regulation Division, The Florida Bar
651 E. Jefferson St. Tallahassee, FL 32399
tarbert@floridabar.org